| | |
|---|---|
| JANET TAYLOR and JAMES NEWLANDS, individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>      v.<br><br>WALTER KIDDE PORTABLE EQUIPMENT, INC.<br><br>                 Defendant. | Case No.<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Janet Taylor and James Newlands (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Walter Kidde Portable Equipment, Inc. ("Kidde") for the manufacture, marketing, and sale of plastic handle fire extinguishers and push-button Pindicator fire extinguishers as identified below. Plaintiffs make the following allegations based upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1. In *McDaniel v. Kidde Residential & Fire & Com.*, the court determined that "punitive damages may be appropriate as a reasonable jury could find that Kidde

was recklessly indifferent as to the safety of its customers." 2015 WL 1326332, at *1 (W.D. Pa. Mar. 24, 2015). The court's decision was based on that fact that the "Plaintiffs ha[d] introduced evidence raising a genuine issue of material fact that [Kidde's] conduct was <u>intentional, willful, wanton, or reckless</u>." *Id.* at *2 (emphasis added). The court described "the evidence of record" which "reveal[ed] the failures of Kidde's quality control department," including "Kidde's Quality Control Manager, Stuart Jones, [who] testified that he was unaware of . . . complaints of fire extinguishers failing to discharge, even though it was his responsibility to oversee customer complaints and examine returned products." *Id.* at *2. The court's determination was also based on the fact that "Theresa Farrell, Kidde's corporate designee as to the customer call logs, testified that she had the most knowledge of anyone in her department about the customer call and complaint processes . . . [y]et, her testimony demonstrated that she was unaware of what follow-up procedures occurred after Kidde received complaints of defective, non-, or malfunctioning devices." *Id.*

2.      Indeed, according to the United States Department of Justice, "Kidde knowingly failed to immediately report to the Consumer Product Safety Commission ("CPSC") upon obtaining information which reasonably supported the conclusion that fire extinguishers with plastic handles manufactured by Kidde, eventually recalled on November 2, 2017, <u>contained a defect which would create a 'substantial</u>

product hazard.'" *United States of America v. Walter Kidde Portable Equipment Inc.*, 1:20-cv-01172, ECF No. 1 ¶ 16 (Dec. 30, 2020) (emphasis added).

3.     The U.S. Department of Justice further determined that "Kidde also failed to immediately report information that its fire extinguishers created an unreasonable risk of serious injury or death" and that Kidde "made material misrepresentations to the CPSC and knowingly used a registered safety certification mark in an unauthorized manner in the sale of fire extinguishers affected by defects." *Id.*, ¶¶ 2-3 (emphasis added).     The U.S. Department of Justice found that "[b]eginning as early as 2005 and continuing until August 2017, Kidde . . . failed to immediately report to the CPSC that it possessed information concerning nozzle detachment from fire extinguishers with plastic handles that it manufactured." *Id.*, ¶ 22 (emphasis added).

4.     The U.S. Department of Justice based these allegations on the following relevant facts revealed during its investigation of Kidde: (1) "[d]espite test reports showing discharge failures across many models of fire extinguishers sold over decades, and an acknowledgement from its engineers that they had 'not found any components out of specification,' in its November 2014 Section 15(b) report, Kidde reported to the CPSC that the defect involved out-of-specification valve components for a more limited set of models sold for only 15 months;" (2) "[d]espite test reports throughout December 2014 showing consistent failures across Kidde fire

3

extinguishers models, Kidde informed the CPSC in January 2015 that 100% of its repaired fire extinguishers since November 2014 had passed performance tests. Kidde failed to disclose that the repaired units were tested by a machine, as opposed to a manual test that would more accurately reflect how consumers actually used the fire extinguishers. Kidde knew that manual testing showed <u>high failure rates</u> across many models of fire extinguishers; and (3) "in connection with its 2014 reports to the CPSC and 2015 recall, Kidde reported 12 incidents of fire extinguishers failing to discharge to the CPSC, but Kidde had actually received reports of <u>at least 100 incidents</u> of fire extinguishers failing to discharge." *Id.*, ¶ 18 (emphasis added).

5.      In turn, on January 4, 2021, The Honorable Loretta C. Biggs issued a Consent Decree of Civil Penalty and Permanent Injunction. *United States of America v. Walter Kidde Portable Equipment Inc.*, 1:20-cv-01172, ECF No. 3 (Jan. 4, 2021). The court ordered that "Kidde shall pay twelve million dollars ($12,000,000.00) to the United States as a civil penalty, pursuant to 15 U.S.C. § 2069." *Id.* at 3. This payment of civil penalty thereafter ended the U.S. Department of Justice's investigation into Kidde's conduct of knowingly manufacturing and selling defective fire extinguishers for over a decade.

6.      However, consumers who relied on Kidde's legacy as a pioneer of fire and safety equipment and its affirmative representations and omissions that its fire extinguishers would properly function as such, have not been made whole.

4

Accordingly, this class action seeks to remedy their injuries against Kidde for its manufacture and sale of over 40 million plastic handle fire extinguishers and push-button Pindicator fire extinguishers (collectively, the "Fire Extinguishers"), all of which suffered from the following defect in design: nozzles frequently becoming detached, becoming clogged, or requiring excessive force to discharge causing a failure to activate during a fire emergency (the "Fire Extinguisher Defect" or "Defect"). A fire extinguisher that fails to function properly during an emergency poses a threat to the life, safety, and property of the user and those in their immediate surroundings. This Defect rendered the Fire Extinguishers unsuitable for their principal and intended purpose.

7. Thus, Plaintiffs bring their claims against Kidde individually and on behalf of a class of all other similarly situated purchasers of the Fire Extinguishers for (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq*.; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; (3) Breach of Implied Warranty under California's Song-Beverly Act, Cal. Civ. Code § 1790, *et seq*.; (4) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (5) violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.; (6) Breach of Implied Warranty under Florida Law, Fla. Stat. Ann. § 672.314; (7) violation of North Carolina's Unfair and Deceptive Trade Practices

Act, N.C. Gen. Stat. §§ 75-1.1, *et seq*.; (8) Breach of Implied Warranty under North Carolina Law, N.C. Gen. Stat. § 25-2-314; (9) Fraud; (10) Constructive Fraud; (11) Fraudulent Inducement; (12) Money Had and Received; (13) Fraudulent Omission or Concealment; (14) Fraudulent Misrepresentation; (15) Negligent Misrepresentation; (16) Quasi-Contract / Unjust Enrichment; (17) Negligent Failure to Warn or to Instruct; (18) Negligent Design Defect; (19) Violation of the Magnuson-Moss Warranty Act.

## PARTIES

8.     Plaintiff Janet Taylor is, and at all times relevant to this action has been, a resident of Elverta, California.  In or around September 2016, Plaintiff Taylor purchased a Kidde model H110G fire extinguisher with a plastic handle for approximately $30.00 from a brick-and-mortar Walmart located in Antelope, California. Plaintiff purchased the Fire Extinguisher because she believed it was fit for use as a fire extinguisher.  Numerous of the materials Plaintiff Taylor reviewed and relied upon prior to purchase are identified below and include the labeling, packaging, and marketing materials for the H110G fire extinguisher, including statements on Kidde's website as also identified below.  Plaintiff Taylor reasonably relied on these representations and warranties in deciding to purchase her Fire Extinguisher, and these representations and warranties were part of the basis of the bargain in that she would not have purchased it on the same terms if the true facts

6

had been known.  But Plaintiff Taylor's Fire Extinguisher did not operate as marketed.  Instead, Plaintiff Taylor's Fire Extinguisher suffered from a Defect, rendering the Device inoperable for its principal and intended uses.

9.     In the spring of 2021, for example, the Fire Extinguishers Plaintiff Taylor purchased failed to activate when needed.  As Plaintiff Taylor's son was working on his motorcycle in the family garage, a fire broke out.  Plaintiff Taylor's son yelled for Plaintiff, asking her to bring a fire extinguisher.  Plaintiff Taylor grabbed her Kidde model H110G and ran to the garage.  When she pulled the pin to unlock the extinguisher and squeezed the handle to activate the flame-retardant spray, as the instructions directed, a small drizzle came out and otherwise stopped.  As the flames continued to rise, Plaintiff Taylor grabbed baking soda and a water hose and successfully suppressed the flames.  <u>Plaintiff Taylor is still in possession of the Defective Extinguisher</u>.  As a direct result of Kidde's material misrepresentations and omissions, Plaintiff Taylor has suffered, and continues to suffer, economic injuries.  Plaintiff Taylor would not have purchased the Fire Extinguishers had there been a disclosure informing her that the Fire Extinguisher was useless and unfit to perform its intended purpose.  Plaintiff Taylor did not hear of Kidde's recall for the defective fire extinguishers until 2021.  In light of Kidde's pioneering legacy in fire and safety equipment, Plaintiff Taylor hopes to eventually trust Kidde's marketing, and hopes that an injunction that requires Kidde to more

effectively alert consumers that they are at risk due to their fire extinguishers, will contribute to this goal.

10. Plaintiff James Newlands is, and at all times relevant to this action has been, a resident of Port Orange, Florida. In 2012, Plaintiff Newlands purchased two Kidde model H110G fire extinguishers with plastic handles from a brick-and-mortar Lowe's located in Orlando, Florida. Plaintiff Newlands purchased the Fire Extinguisher because he believed it was fit for use as a fire extinguisher. Numerous of the materials Plaintiff Newlands reviewed and relied upon prior to purchase are identified below and include the labeling, packaging, and marketing materials for the H110G fire extinguisher. Plaintiff Newlands reasonably relied on these representations and warranties in deciding to purchase his Fire Extinguisher, and these representations and warranties were part of the basis of the bargain in that he would not have purchased it on the same terms if the true facts had been known. But Plaintiff Newland's Fire Extinguisher did not operate as marketed. Instead, Plaintiff Newland's Fire Extinguisher suffered from a Defect, rendering the Device inoperable for its principal and intended uses. As a direct result of Kidde's material misrepresentations and omissions, Plaintiff Newlands has suffered, and continues to suffer, economic injuries. Plaintiff Newlands would not have purchased the Fire Extinguisher had there been a disclosure informing him that the Fire Extinguisher was useless and unfit to perform its intended purpose. Plaintiff Newlands did not

8

hear of Kidde's recall for the defective fire extinguishers until 2021. In light of Kidde's pioneering legacy in fire and safety equipment, Plaintiff Newlands hopes to eventually trust Kidde's marketing, and hopes that an injunction that requires Kidde to more effectively alert consumers that they are at risk due to their fire extinguishers, will contribute to this goal.

11.     Defendant Walter Kidde Portable Equipment, Inc. is a brand of Carrier Global Corporation. Kidde is a Delaware corporation with its headquarters located at 1016 Corporate Park Drive in Mebane, North Carolina. Kidde manufactures, markets, and distributes the Fire Extinguishers throughout the United States. Kidde sells the Fire Extinguishers on its website and through third-party retailers such as Walmart, The Home Depot, and Amazon. North Carolina is the nerve center of Kidde's business activities. That is, North Carolina is the place where its high-level officers direct, control, and coordinate the corporation's activities, including account and major policy, financial, and legal decisions related to Kidde's fire extinguishers.

## **JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question). This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367.

13.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interests and costs, exceeds

9

the sum or value of $5,000,000 and is a class action in which there are more than 100 Class members, members of the Classes (as defined below) are citizens of states different from Kidde, and greater than two-thirds of the members of the Classes reside in states other than the states in which Kidde is a citizen.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Kidde resides in and is headquartered in this District, regularly transacts substantial business in this District, is subject to personal jurisdiction in this District, and therefore is deemed to be a citizen of this District.

## **FACTUAL ALLEGATIONS**

I.     **An Overview Of Kidde And Its Fire Extinguishers**

A.     **Kidde Leverages Its Legacy To Drive Sales**

15.     Kidde is a Carrier Global Brand.  As advertised, Carrier Global's "fire business encompasses a wide range of residential, commercial and industrial systems, including . . . fire, gas and water mist suppression and fire and gas safety solutions."[1]  Carrier Global's fire business is led by Kidde which describes itself as "one of the world's largest manufacturers of fire safety products . . . to protect people and property from fire and related hazards."[2]  Kidde claims to be "committed to

---

[1] Carrier Global Corporation, "Carrier Fire Solutions: Protecting What Matters Most," *Fire & Security*, Available at https://www.carrier.com/fire-security/en/north-america/Fire Extinguishers-services/product-category-solutions/fire-solutions/ (last visited Oct. 27, 2021).

[2] Walter Kidde Portable Equipment Inc., "About Kidde," Available at https://www.kidde.com/home-safety/en/us/about/ (last visited Oct. 27, 2021).

ensuring [its] products are safe and dependable, especially those related to life safety such as . . . fire extinguishers."[3]  To that end, Kidde proclaims that values such as quality, performance, and responsibility are among "the pillars of [its] business."[4]

16.    Relevantly, Kidde defined "responsibility," in part, as "we act with integrity and maintain the highest ethical standards" and "we care for the health and safety of our employees and customers."  Kidde proceeded to describe its commitment to innovation, noting that "we are a company of ideas, committed to research and development."  Kidde also stated that "we listen to our customers and respond to their needs" and "we are committed to excellence in customer satisfaction."

17.    Indeed, Kidde has long worked to create a context in the minds of reasonable consumers that it produces safe, reliable, and high-quality fire extinguishers.  For example, Kidde touted that "Walter Kidde patented the first portable fire extinguisher in 1917, and we have been committed to developing a wide selection of extinguishers for all applications ever since."[5]  Connecting this history

---

[3] Walter Kidde Portable Equipment, Inc., "Product Safety," Available at https://www.kidde.com/home-safety/en/us/about/product-safety/ (last visited Oct. 27, 2021).

[4] Walter Kidde Portable Equipment, Inc., "Kidde Core Values," Available at https://www.kidde.com/home-safety/en/us/about/corevalues/ (last visited Oct. 27,, 2021).

[5] Walter Kidde Portable Equipment, "Fire Extinguishers," Available at https://web.archive.org/web/20150320232805/http://www.kidde.com/home-safety/en/us/products/fire-safety/fire-extinguishers/ (last accessed Feb. 3, 2022).

of innovation to its manufacturing, Kidde stated that, "***Fire Extinguisher types may change, but our commitment to safety will never flame out***."[6]

18. Kidde then stated that, "[f]rom controlling a small home fire before it becomes a big one to selecting the correct model for your business, ***having an extinguisher within reach can be the difference between minor damage and catastrophe, or in extreme cases, life and death***. We're here to help you choose, properly install and maintain the right solution whether it's for a home, business or almost anywhere in between."[7] Kidde prominently featured this and like material on its website at all times during the relevant Class Period, including when Plaintiffs Taylor and Newlands made their purchases.

19. When Plaintiff Taylor, for example, purchased her fire extinguisher in or around September 2016, Kidde had prominently featured this material on its website:[8]

# Fire Extinguishers



Fire Extinguisher types may change, but our commitment to safety will never flame out.

Walter Kidde patented the first portable fire extinguisher in 1917, and we have been committed to developing a wide selection of extinguishers for all applications ever since. From controlling a small home fire before it becomes a big one to selecting the correct model for your business, having an extinguisher within reach can be the difference between minor damage and catastrophe, or in extreme cases, life and death. We're here to help you choose the right types of fire extinguishers, and properly install and maintain the right solution whether it's for a home, business or almost anywhere in between.

---

[6] *Id.* (emphasis added).

[7] *Id.* (emphasis added).

[8] Walter Kidde Portable Equipment, "Fire Extinguishers," Available at https://web.archive.org/web/20160529015714/http://www.kidde.com/home-safety/en/us/products/fire-safety/fire-extinguishers/ (last accessed Feb. 3, 2022).

20.     Kidde continued to invoke its tradition of producing high quality fire extinguishers, noting that "Walter Kidde pioneered an industry devoted to making our world a safer place."   Playing to its legacy, Kidde went as far as to include a photograph of Mr. Kidde, and noted that "Today, Walter Kidde's pioneering spirit lives on through the company he founded.   We continue to lead the industry, consistently looking to solve new challenges and create technology that saves lives."



**B.     Kidde Touts The Defective Fire Extinguishers**

21.     Kidde then repeatedly touted the importance of having a properly functioning fire extinguisher: "Having a fire extinguisher within reach can help you create a path to safety, and may even help put out a small, contained fire.  Be safer in your home by learning more about fire extinguishers."   Kidde then encouraged consumers that to be safe, they should "[p]lace a fire extinguisher within easy reach

13

in rooms where fires are more likely to start such as the kitchen, living room and laundry room."

22. To this point, Kidde then encouraged consumers to purchase a Kidde fire extinguisher, noting that "[i]t's your home. Fill it with peace of mind." An image from Kidde's website around the time of Plaintiff Taylor's purchase is included below:



23. Kidde furthered these representations, stating that "When it comes to fire extinguishers, no company is more at home." Recognizing the importance of fire extinguishers, Kidde noted that "[e]quipping your home with the right fire extinguisher is essential to the safety of your family and property. And Kidde has a wide variety of extinguishers to help. Whether it's keeping a small self-contained fire from growing or creating a path to safety out of the home, *having a fire extinguisher in your home can be the difference between a catastrophe and a close call*." An image from Kidde's website around the time of Plaintiff Taylor's purchase

Case 1:21-cv-00839-WO-JLW   Document 20   Filed 02/04/22   Page 14 of 107

is included below.  As demonstrated, a seemingly carefree woman lounges on a sofa, near her puppy, reading a newspaper:



24.     Kidde then affirmatively represented with respect to the defective Fire Extinguishers that "Kidde has designed some fire extinguishers with features that specifically address these types of dangers."  Kidde stated that "For example, Kidde's kitchen fire extinguisher has a ***proprietary nozzle design*** that allows a broad, dispersed discharge of agent that delivers a high volume, low velocity of dry chemical." (Emphasis added).  Kidde also included pictures on its website showing the Fire Extinguishers in use putting out fires.  Examples are included below:





15

25.    But Kidde did not stop there.  For one of the models at issue, Model FX340GW, for example, Kidde represented that it "is the #1 choice for all around home protection."  Kidde encouraged consumers that the Fire Extinguisher "fights fires common to the home, garage and workshop such as textiles, paint, wood, gasoline & energized electrical equipment" and that "this unit is easy to use and has a 10 year warranty."  Kidde emphasized that the "pressure gauge allows for immediate pressure status check" and has an "easy-to-pull safety pin."  An image of this page is set out below:



26.     Kidde does the same for another model at issue, Model FX210R. Kidde states that the Fire Extinguisher "fights fires common to the home living areas such as wood, fabrics, furnishings, and drapes." Kidde states that the "pressure gauge allows for immediate pressure status check" and has an "easy-to-pull safety pin." An image of this page is set out here:



27. Kidde does the same for another model at issue, Model FX340H. Kidde states that the Fire Extinguisher "fights fires common to the office such as wood, paper & energized electrical equipment" and that it has a "pressure gauge" that "allows for immediate pressure status check" and has an "easy-to-pull pin." An image of this page is set out here:



Case 1:21-cv-00839-WO-JLW   Document 20   Filed 02/04/22   Page 18 of 107

28.     Based on information and belief, Kidde included like representations for each of the models at issue, including those purchased by Plaintiffs. Numerous of these representations are included directly on the front of the packaging of the Fire Extinguishers. For example, Kidde includes a photograph of a fire extinguisher on the front of the packaging. A reasonable consumer would not expect that the product contained therein would not function as a fire extinguisher. Moreover, Kidde touts that its Fire Extinguishers "meet[] NFPA Recommendations." This latter representation is significant. The National Fire Protection Association or "NFPA" is "the leading information and knowledge resource on fire, electrical and related hazards." It was "established in 1896, devoted to eliminating death, injury, property and economic loss due to fire, electrical and related hazards." However, as described, Kidde's Fire Extinguishers were defective, resulting in injury and property and economic loss. Given Kidde's pre-sale knowledge of these facts, Kidde affirmatively misrepresented its Fire Extinguishers as meeting NFPA recommendations.

29.     Despite all of this, Kidde neglected to mention that it has received hundreds of complaints related to the propensity of its fire extinguishers to become clogged and to fail to discharge during fires.[9] This Fire Extinguisher Defect has led

---

[9] Mary H.J. Farrell, "Kidde Recalls More Than 40 Million Fire Extinguishers," *Consumer Reports* (November 2, 2017), Available at https://www.consumerreports.org/fire-extinguishers/kidde-fire-extinguisher-recall/ (last visited Oct. 27, 2021).

to at least 16 reports of personal injury, including one fatality, and 91 reports of property damage.[10] Kidde further failed to report that it had been sued on numerous occasions, where it had been determined that "a reasonable jury could find that Kidde was recklessly indifferent as to the safety of its customers," and that the United States Department of Justice had been actively investigating the Fire Extinguishers' high failure rates and Kidde's subsequent underreporting to the CPSC.

30.     With tens of millions of units sold at a price point of $12 to $200, Kidde have profited enormously from their failure to disclose the Fire Extinguisher Defect sooner.

31.     Kidde made partial representations while suppressing the Defect. Worse, Kidde as described above, affirmatively misrepresented to Plaintiffs and Class Members that the Fire Extinguishers were safe and effective, going as far as to state that the faultily designed Fire Extinguisher "allow[ed] a broad, dispersed discharge of agent that delivers a high volume, low velocity of dry chemical." Moreover, by displaying the Fire Extinguishers and describing their features, the Fire Extinguishers' packaging explicitly stated and further implied that the Fire Extinguishers were suitable for use as fire extinguishers, without disclosing that they

_____

[10] *Id.*

had a critical safety-related defect that could inhibit the proper functioning of the device and lead to harm to users of the Fire Extinguishers.

32. The Fire Extinguishers at issue are numerous. Although sold under different brand names, these fire extinguishers are substantially similar. They all suffer from the same Defect involving the tendency of their nozzles to frequently become detached, clogged, or require excessive force to discharge causing a failure to activate during a fire emergency. Each fire extinguisher substitutes important metal components such as the handle or push button with cheaper and less reliable plastic handles or plastic push buttons. Further, these fire extinguishers were sold for years despite Kidde's knowledge of the Defect, risking the personal health and safety of the consumer for corporate profits. And these fire extinguishers, as discussed below, were subject to the same ineffective, sham recalls that left consumers uninformed and vulnerable. Because these decisions were all made from North Carolina, which served as the nerve center of Kidde's business, as described above, Plaintiffs suffered an injury in the state of North Carolina.

33. Moreover, despite the fact that Plaintiffs purchased their Fire Extinguishers from retailers such as Walmart and Lowe's, they still had a contract with Kidde. For example, Kidde proudly touted that the relevant models came with a "10-year warranty." This warranty did not benefit the retailer. Instead, this warranty was for the sole benefit of end-users such as Plaintiffs and Class members.

21

Examples of these representations are included here and were posted online as well as in user manuals and on product packaging:

Features of the series include: 10-year warranty, single use, special finish, bilingual packaging and user instructions.





## II. Kidde's Defective Fire Extinguishers Risked The Lives, Safety, And Property Of Kidde's Consumers

34. The consequences of this Fire Extinguisher Defect can be severe. On March 18, 2017, one consumer, for example, submitted a report to the United States Consumer Product Safety Commission ("CPSC") concerning Kidde Model 1-A-10-BC. He stated that "I was working with beeswax [when] materials caught fire." The consumer wrote that "I tried to put [out] the fire with the Kidde extinguisher[,] but

22

it didn't work."  The consumer continued that "I had to get close to the fire to put it [out] with my jacket: as a result my jeans caught on fire and I ended up with a serious third-degree burn on my left leg."  Consequently, the consumer reported, he "underwent skin graft surgery all around my left leg."  He stated that he has "been recovering for almost one year," but "[i]f the extinguisher had worked I could have put [out] the fire without getting close to it."  Kidde was informed of this incident through the CPSC on April 6, 2017.  Kidde responded to this consumer's complaint stating that "[b]ased upon the information provided, we cannot determine why the fire extinguisher failed to deploy."

35.    On November 2, 2017, another consumer submitted a report to the CPSC concerning Kidde Model FA-110.  The consumer stated that his "gas stove caught on fire and my fire extinguisher did not work."  He reported that as a result, "my stove burned and my house filled with smoke.  The microwave above my stove was also ruined."  He stated that he "had to call the fire department" and only "[a]fter the incident, I found out that my (recently purchased) fire extinguisher had been recalled.  I had actually purchased it AFTER the recall."  Kidde was informed of this incident by the CPSC on December 4, 2017.

36.    On November 17, 2017, another consumer submitted a report to the CPSC concerning Kidde Model FA-110.  He stated that "[a]n oven fire flared up during preheating, and my wife grabbed the Kidde fire extinguisher which is kept

23

several feet away. We believed this to be a smart purchase, and [a] great location." The consumer noted that "[t]his was our first use of the extinguisher, and we have previously reviewed how to use it." He explained that "I was upstairs, and heard her call for my help, and when I got halfway down the stairs I could see her depressing the lever multiple times, with no discharge from the extinguisher." As a result, he "ran back upstairs to grab some clothes to smother the flames . . . while attempting to not have the clothes catch on fire." He reported that "[i]n the process the flames burned my right hand, but I had to continue subduing the flames. Meanwhile[,] I was asking her to try different methods or angles with the extinguisher, but to no avail." The consumer concluded that "[f]inally, 1 puff of dry chemicals came out but it was not under proper pressure . . . the discharge caused no significant reduction in the flame, but instead sprayed our counter, cabinets, sink, etc. with a fine layer of dust." Kidde was informed of this incident by the CPSC on December 5, 2017.

37. On December 1, 2017, another consumer submitted a report to the CPSC. The consumer stated that "[m]y neighbors' house was on fire. I recognized this and called 911, and ran over with my Kidde fire extinguisher." The consumer stated that "[a]t this point the house was filled with smoke but there was a medium sized fire and I tried to put it out but the fire extinguisher would not deploy – the father / a strong man also tried but it did not work." The consumer reported that "[l]uckily the firemen came about 3 minutes after we tried." But this did not prevent

the following disastrous outcome: "[t]he fire caused [$]100,000 of damages (so far)." Kidde was informed of this incident by the CPSC, which sent its report to Kidde on December 11, 2017. Kidde responded shortly afterwards "apologiz[ing] for any inconvenience this has caused."

38.     On January 20, 2018, another consumer submitted a report to the CPSC. The consumer stated that a "[s]mall fire was started from an old ember. First [the Kidde] fire extinguisher failed to discharge, the plastic handle just bent around the pin. Eventually got it to work but fire had grown significantly in the 15 seconds of fiddling it took to get it to discharge." The consumer stated that the "[e]xtinguisher only discharged about 50% of its contents. Daughter ran inside the house for our other [Kidde] extinguisher. It also failed to discharge and took fiddling because of the plastic handle while the fire grew." The consumer stated that "[t]his [second] one did discharge all of its contents[,] but it was too late at this time, the fire grew and caught an adjacent field on fire resulting in minor structure damage and about 30 acres burned before the fire department could put it out." The consumer concluded that he "[c]ould have stopped the fire early if the extinguisher had functioned properly." Kidde was informed of this incident by the CPSC on February 9, 2018. Kidde responded shortly afterwards "sincerely apologiz[ing] for the incident that occurred."

25

39.     On December 7, 2020, another consumer submitted a report to the CPSC concerning Kidde Model H110G.  The consumer stated that he "had what started as a minor grease fire on our kitchen stove . . . my wife then attempted to use the Kidde ABC fire extinguisher nearby but upon pulling the pin and squeezing the trigger, nothing happened."  In turn, he "attempted as well, [but] to no avail.  My wife was evacuating our two daughters and dog from the house and I was starting to dial 911 when I remembered I had another extinguisher [nearby]."  So, he "grabbed it, returned within 30 seconds, and successfully put out the fire that had quickly grown to close to ceiling height."  The consumer stated that "[u]nfortunately, the time lost allowed the fire to burn far longer than it would have, had our extinguisher worked properly."  He reported that "[a]s a direct result of the failure, our stove's control partially melted and the smoke damage to our ceiling is going to require the mineral fiber tiles to be replaced."  The consumer concluded that he is "left with what I would estimate to be $1,200 in property damage."  Significantly, after the event, the consumer "looked into why the extinguisher failed and found that the [CPSC] had issued a recall [in 2017] 'due to a failure to discharge and nozzle detachment.'"  Kidde was informed of this incident by the CPSC on December 23, 2020.  Kidde responded shortly afterwards noting that "[a]ny claim for property damage would be properly handled through the homeowner's insurance carrier."

26

### III. Kidde's Defective Fire Extinguishers Include More Than 134 Models Totaling Nearly 40 Million Devices In All

40.     The Fire Extinguishers at issue include several models that have been recalled.  As demonstrated above and further below, Kidde's recall was totally ineffective at remedying the problems herein discussed.  **Tens of thousands, if not hundreds of thousands of consumers, have not been informed of Kidde's recalls and are still at risk.**  The models at issue include:

**Models Manufactured July 23, 2013 – October 15, 2014**

| | | | |
|---|---|---|---|
| 10BC | 1-A-10BC | 1A 10BCW | 2A10BC |
| 5BC | 5BCW | FA110G | FA110 |
| FA5B | FC110 | FC5 | FH/RESSP |
| FX10 | FX10BC | FX10K | FX210 |
| FX210R | FX210W | FX340GW | FX340SC |
| FX5II | KFH Twin | M110 Twin | M5 Twin |
| Mariner 10 | Mariner 110 | Mariner 5 | Mariner 5G |
| XL5MR | | | |

27

**Models Manufactured Between July 2, 2012 – August 15, 2017**

| AUTO FX5 II-1 | FC5 | M10G | FA10G |
| FS110 | M10GM | FA10T | FS110 |
| M110G | FA110G | FS5 | M110GM |
| FA5-1 | FX10K | M5G | FA5G |
| FX5 II | M5GM | FC10 | H110G |
| RESSP | FC110 | H5G | |

**Additional Recent Models**

| KK2 | 100D | 210D | 210D-1 |
| H110G | Home 110 | FX340SC-2 | Pro 5 TCM-8 |
| FX110E | FX340G | FA110G | FA10 |
| FX340GW-2 | | | |

41. For models suffering from the same Fire Extinguisher Defect that have yet to be recalled, and for which there is limited information publicly available, Plaintiffs reserve the right to amend their complaint to reflect these additional models once they are identified.

## IV. Kidde's Sham and Ineffective Recalls

### A. Despite Knowledge of The Fire Extinguisher Defect, Kidde Dragged Its Feet, Requiring Multiple Recalls And Incurring Civil Penalties

#### 1. Recalls: An Overview

42.    As a preliminary matter, the material described below must be placed in its proper context.  Recall programs are ineffective at remedying the existence of unsafe products in circulation, leaving consumers at risk years after a recall program.[11]  In fact, Craig Smith of Georgetown University and John Quelch of the Harvard Business School have written extensively on this topic, noting that "companies seem satisfied with low response rates . . . which, while meeting the letter of the law, may leave consumers dissatisfied if not endangered."[12]

43.    In the past, companies that have sought to maximize response rates have invested heavily.  In 1982, for example, when Johnson & Johnson issued a recall for Tylenol, "the company ran a series of 60-second television and radio ads on all the major networks, urging consumers to throw out their bottles of Tylenol and promising to replace them with a safer product."[13]  In fact, Johnson & Johnson

---

[11] Felcher, E. Marla, "Product Recalls: Gaping Holes in the Nation's Product Safety Net." *The Journal of Consumer Affairs* 37, no. 1 (2003): 170–79, at 176, http://www.jstor.org/stable/23860093 ("The Consumer Product Safety act gives CPSC regulators the authority to recall products from the market, but falls short of holding manufacturers responsible for getting recalled products back into their warehouses and out of use."

[12] *Id.* at 178. (quoting Smith and Quelch).

[13] *Id.*

"spent over $100 million on the recall."[14]  Here, by contrast, as demonstrated below,

Kidde lied to the Consumer Product Safety Commission, warranting an investigation

by the U.S. Department of Justice, the eventual filing of a complaint in federal court

by these entities, and an issuance of civil penalties.  After all of that, Kidde still stood

by, resting on its laurels as the CPSC and the media tried to do its bidding.  But as

shown below, these efforts were a disaster.  As a result, consumers are still very

much at risk as fires have continued unchecked by Kidde's equipment years after

the Recall.  Finally, Kidde's recall program must be understood as a whole.  It is

insufficient to view Kidde's latest 2017 recall in isolation.  Instead, the years long

battle between the CPSC, the U.S. Department of Justice, and Kidde must be taken

together.

## 2.      Kidde's Recall Program Has Been A Disaster

44.      On February 12, 2015, Kidde issued a recall involving 31 models of

Kidde fire extinguishers manufactured between July 23, 2013 through October 15,

2014.  This recall involved a total of nearly 4.6 million units in the United States.[15]

45.      Kidde's February 12, 2015 recall was woefully inadequate considering

the severity of the problems with their fire extinguishers, as alleged in this complaint.

---

[14] *Id.*

[15] U.S. Consumer Product Safety Commission, "Kidde Recalls Disposable Plastic Fire Extinguishers Due to Failure to Discharge," (February 12, 2015), Available at https://www.cpsc.gov/recalls/2015/kidde-recalls-disposable-plastic-fire-extinguishers/# (last visited Oct. 27, 2021).

Consumers who put their faith in Kidde's ability to manufacture high-quality firefighting Fire Extinguishers were led to believe that the equipment they purchased could keep them safe in life-threatening fires. Instead, consumers had to learn the hard way and in times of crisis that the fire extinguishers they purchased were defective. And, for a period of two-and-a-half additional years, until Kidde issued its November 2, 2017 recall, over 32 million defective fire extinguishers remained in the marketplace and were purchased and relied upon by at-home consumers.

46.     In December 2015, the U.S. Department of Justice along with the CPSC filed a complaint against Kidde for failing to inform the CPSC in a timely manner about problems associated with Kidde's fire extinguishers.[16] The DOJ alleged that before the 2015 recall, Kidde significantly underreported "the scope and nature of the defect and risk, and the number of Fire Extinguishers and models affected."[17]

47.     According to the U.S. Department of Justice, as early as November 2014, Kidde "failed to immediately and adequately report information that fire extinguishers with plastic handles manufactured by Kidde could become clogged or require excessive force to discharge and thus fail to activate during a fire

---

[16] Ryan Felton and Rachel Rabkin Peachman, "Kidde Mishandled Problems With Its Fire Extinguishers for Years as Homes Burned and Injuries Mounted," Consumer Reports (January 12, 2021), Available at https://www.consumerreports.org/product-safety/kidde-mishandled-problems-with-fire-extinguishers-for-years/#:~:text=Kidde%20eventually%20filed%20a%20new,require%20excessive%20force%20to%20discharge. (last visitedOct. 27,2021).

[17] *Id.*

emergency." [18]  The U.S. Department of Justice determined that "[a]lthough Kidde provided some information to the CPSC regarding the discharge failures, it significantly underreported the scope and nature of the defect and risk, as well as the number of Fire Extinguishers and models affected." *Id.*

48.    The U.S. Department of Justice described that "[i]n November 2014, Kidde proposed to the CPSC a recall of approximately 4.6 million fire extinguishers manufactured from July 2013 through October 2014 because the extinguishers risked not fully discharging when the lever is repeatedly pressed and released during a fire emergency, posing a risk of injury to consumers." *Id.* ¶ 17.

49.    Misrepresenting material facts, Kidde "informed the CPSC that it had determined the cause of this defect to be an out-of-specification valve component." *Id.*  However, Kidde's "testing and incident data show[ed] that the scope and nature of the defect and risk it had reported to the CPSC was false and misleading in material respects." *Id.* ¶ 18.  The DOJ specifically determined that "[d]espite test reports showing discharge failures across many models of fire extinguishers sold over decades, and an acknowledgement from its engineers that they had 'not found any components out of specification,'" Kidde "in its November 2014 Section 15(b) report . . . reported to the CPSC that the defect involved an out-of-specification valve

---

[18] *United States of America v. Walter Kidde Portable Equipment Inc.*, 1:20-cv-01172, ECF No. 1 ¶ 16 (Dec. 30, 2020)

component for a more limited set of models sold for only 15 months." *Id.* ¶ 18(a).

50.     Moreover, "[d]espite test reports throughout December 2014 showing consistent failures across Kidde fire extinguisher models, Kidde informed the CPSC in January 2015 that 100% of its repaired fire extinguishers since November 2014 had passed performance tests." *Id.* ¶ 18(b).  However, "Kidde failed to disclose that the repaired units were tested by a machine, as opposed to a manual test that would more accurately reflect how consumers actually used the fire extinguishers."  The DOJ concluded that "Kidde knew that manual testing showed high failure rates across many models of fire extinguishers." *Id.*

51.     In connection with Kidde's 2014 "reports to the CPSC and 2015 recall, Kidde reported 12 incidents of fire extinguishers failing to discharge to the CPSC, but Kidde had actually received reports of at least 100 incidents of fire extinguishers failing to discharge." *Id.* ¶ 19.  Furthermore, "[a]fter the recall in February 2015, Kidde continued to accumulate additional reports of failures to discharge, demonstrating that the scope of the February 12, 2015 recall was far too narrow." *Id.* ¶ 20.  However, "Kidde did not disclose to the CPSC the additional test and incident reports demonstrating a wider problem with its fire extinguishers' discharge mechanism until August 2017." *Id.* ¶ 21.

52.     The U.S. Department of Justice also determined that "[b]eginning as early as 2005 and continuing until August 2017, Kidde . . . failed to immediately

33

report to the CPSC that it possessed information concerning nozzle detachment from fire extinguishers with plastic handles that it manufactured." *Id.* ¶ 22. Additionally, "[o]n November 15, 2014, Kidde engineers internally reported that testing over a previous five-week period showed a high occurrence of nozzles becoming dislodged from the fire extinguishers during discharge." But "Kidde did not provide this information to the CPSC until August 2017." *Id.* ¶ 23.

53.   The U.S. Department of Justice further determined that "[d]uring a 2015 civil penalty investigation by the CPSC regarding Kidde's reporting, Kidde materially misrepresented to the CPSC staff in the course of the staff's investigation of Kidde that the company had produced all relevant documents to the CPSC. The CPSC staff relied on Kidde's material misrepresentations in closing the civil penalty investigation." *Id.* ¶ 25. However, "[i]n August 2017, Kidde filed a new report under section 15(b), finally revealing the true nature and scope of the intermittent discharge defect, and reporting also the nozzle detachment defect." *Id.* ¶ 26. All in all, the DOJ concluded that "Kidde's report under section 15(b) also revealed the actual number of Fire Extinguishers and models affected, leading to the announcement of one of the largest recalls in CPSC's history." *Id.*

54.   Specifically, Kidde's 2017 recall for nearly 38 million plastic-handle and push-button Pindicator fire extinguishers in the U.S. implicated 134 models

produced as far back as 1973.[19]  Many of these models are set out above.  In addition,

Kidde was ordered to pay a $12 million civil penalty in connection with the

allegations that the company failed to timely inform the CPSC about problems with

the fire extinguishers it manufactured.[20]

55.     The recall allowed Kidde to say it was doing right by consumers, but in

fact the recall protected Kidde's profits by suppressing returns.  As a Consumer

Reports' article notes, "[d]espite the 2017 announcement, many people seem to not

have heard about the recall."[21]  Further, "[s]everal incident reports reviewed by

[Consumer Reports], for example, involve Kidde fire extinguishers that had already

been recalled."[22]

56.     Numerous of these consumer reports are included here and have

continued well into the latter half of 2021, demonstrating that despite Kidde's recall,

consumers have not heard of the recall and are still at risk of injury.  In fact, as noted

above, Plaintiffs did not hear of Kidde's recall until 2021.  On August 2, 2021, for

---

[19] U.S. Consumer Product Safety Commission, "Kidde Recalls Fire Extinguisher with Plastic Handles Due to Failure to Discharge and Nozzle Detachment: One Death Reported," Available at https://www.cpsc.gov/Recalls/2018/Kidde-Recalls-Fire-Extinguishers-with-Plastic-Handles-Due-to-Failure-to-Discharge-and-Nozzle-Detachment-One-Death-Reported# (last visited Oct. 27, 2021).

[20] *United States of America v. Walter Kidde Portable Equipment Inc.* No. 1:20-cv-01172-LCB, ECF No. 3 (M.D.N.C. Jan. 4, 2021); U.S. Department of Justice, "Fire Extinguisher Manufacturer Ordered to Pay $12 Million Penalty for Delay and Misrepresentations in Reporting Product Defects," *Justice News*, Available at https://www.justice.gov/opa/pr/fire-extinguisher-manufacturer-ordered-pay-12-million-penalty-delay-and-misrepresentations (last visited Oct. 27, 2021).

[21] *See supra* n. 8.

[22] *Id.*

example, one consumer reported to the CPSC concerning Kidde Model Auto 5FX that his "fire extinguisher failed to discharge" and that "[a]s a result, the fire grew in size," leading to injuries sustained by the consumer. Kidde was informed of this incident through the CPSC on August 5, 2021.

**B.    Many Consumers Were Unable To Contact Kidde To Secure Their Replacement Despite Following The Procedures Set Out By Kidde**

57.    Several customers who were informed of the recall were either unable to establish contact with Kidde despite repeated attempts or encountered issues with the website or customer service. One consumer wrote to Consumer Reports in 2018 stating that the "recall site won't allow me to enter information such as model number." The consumer continued that the "[i]nformation page seems to be dead."

58.    Another consumer reported to Consumer Reports in 2018 that she "entered four units on the appropriate Kidde Product Safety Recall page . . . but the page does not include any button or other method to send the page to the company."

59.    Another consumer reported to Consumer Reports in 2018 that she "ha[s] been waiting two months for my replacement." She reported that "[p]honing is impossible, on hold forever." She concluded that she "[w]ould like an honest answer from the company."

60.    Another consumer reported to Consumer Reports in 2018 that they "have been waiting since Nov[ember] 10[, 2017] for the replacements." The

36

consumer stated that they "contacted [Kidde] by email and phone." The consumer

concluded that they "would just like a straight answer from [Kidde]."

61.     Another consumer reported to Consumer Reports in 2018 that they are

"[n]ot sure [Kidde is] taking this recall seriously." The consumer reported that they

were "told [the] replacement extinguisher would be sent out back in Nov[ember

2017] and nothing." The consumer called Kidde the day before making their report

"and [Kidde] couldn't even find me in their system." The consumer concluded that

the "[l]ady said she'd call . . . right back and never did . . . so taking things seriously?

I think not." Another consumer responded that "[t]his is exactly what happened to

me. What do we do now?"

62.     Another consumer wrote to the Better Business Bureau (hereinafter

"BBB") on June 7, 2018 that they "have 4 fire extinguishers that were part of the

recall from the fall of 2017. I contacted Kidde within the first week after the recall

to determine what needed to be done [to] receive replacements. I still have not

received my [replacement]." Following up, the consumer "contact[ed] [Kidde]

through the recall phone number given at least 8 times since the recall and have

repeatedly had to re-confirm all my information, re-confirm all my fire

extinguishers, and then have been told I would be receiving the new ones." But, the

consumer wrote, "[t]hey have never shown up." The consumer then provided their

case reference number and wrote that "both [extinguishers] confirmed recalled for

failure to deploy." Kidde was informed of this complaint by the BBB on the same day.[23]

63. Another consumer reported to the BBB on July 3, 2018 that they "had three fire extinguishers subject to the current Kidde recall." The consumer "submitted a claim . . . to get the three fire extinguishers replaced in the fall of 2017. [But] [t]he replacement fire extinguishers[s] have not arrived." The consumer stated that "[e]ach time I called to follow up on the status of the replacement extinguishers, I was transferred to another person who said they would call back." However, the consumer wrote that they "did not receive a call" and "still do not have the replacement extinguishers." Kidde was informed of this complaint by the BBB on the same day.

64. Another consumer reported to the BBB on August 17, 2018 that their "first call [to Kidde] was 11-03-17." The consumer then "made follow up calls 12-19-17, 02-28-18, and 05-01-18" and "also spoke to someone at Kidde [on] 5-01-18." The consumer reported that "[e]ach time I was told varying time frames for replacement fire extinguishers to arrive. Each time they would say they were missing some information at the previous call. Each time they would create a new reference [number]." But the consumer "received neither of the two fire

---

[23] Better Business Bureau, "What Complaints Do We Handle?" Online Complaint System, Available at https://www.bbb.org/consumer-complaints/file-a-complaint/get-started (last visited Oct. 27,, 2021).

extinguishers [Kidde] acknowledge[s] were part of the safety recall." Kidde was informed of this complaint by the BBB within two business days of the complaint. Kidde responded on August 21, 2018 only that it "will look into this issue."

65. Another consumer reported to the BBB on July 24, 2020 – more than two years after the recall – that after "[f]inding there is a recall on my Kidde fire extinguisher, I attempted, and failed to contact Kidde by these means: 1. [u]sing Kidde's online webmail (there is no email address listed), I filled out my request." The consumer reported, however, that "when I pressed 'Send,' the site did not respond." The consumer "tried again. No response. (I have no problem currently sending webmail to other sites, as [the BBB's] receipt of this webmail shows!)." The consumer continued: "2. I phone[d] the number on Kidde's site and pressed the 'I have a recall' option. No one answered. I called back and tried general customer support with the same non-response." The consumer concludes that they are "distressed insufficient notice was given at the time of the recall, as I have been relying on a defective product as a result." Kidde was informed of this complaint by the BBB within two business days of the complaint. Kidde responded on July 27, 2020: "apologiz[ing] for [the consumer's] inconvenience."

C. **Other Consumers Experienced Significant Delays In Securing A Replacement**

66. For those consumers who did not cave to Kidde's test of exhaustion,

many were, nonetheless, met with significant delays in securing their replacement.

67.     One consumer wrote to Consumer Reports in 2019 that he "put [his] claim in twice since the day the recall was announced." But he reported that he has "heard nothing." He concluded: "I suppose my house must burn down before they send a replacement."

68.     Another consumer reported to Consumer Reports in 2018 that he "[p]ut [his] recall request in [during] November 2017. It is now March 25, 2018." He urged that "someone should do a follow-up article exposing this fraud."

69.     Another consumer reported to Consumer Reports in 2018 that "[i]t has been 5 months now since I requested a replacement Fire Extinguisher[,] and nothing has happened." She concluded "[w]hat do I have to do now?????"

70.     Another consumer reported to Consumer Reports in 2018 that he is "[s]till waiting  . . . five months since submitting claim and long times on hold only to be disconnected." He concluded that he is "[g]lad to see it's not personal."

71.     Another consumer reported to Consumer Reports in 2018 that it is "March 19 . . . still waiting for the five units we submitted claim for on November 2 . . . no response whatsoever to repeated emails which included the ID # for claim."

72.     Another consumer reported to Consumer Reports in 2018 that he "submitted a claim and for several months [Kidde] made excuses, but now you can only reach the call center for rebates. They say you can submit another claim

40

otherwise [they] cannot help you!"  The consumer concluded that "this recall is a joke and nothing will get done!!!!"

73.     Another consumer reported to Consumer Reports in 2019 that "I put my claim [in] more than a year ago.  When you call, you are on a hold for an hour or long[er].  When someone answers they simply lie, e.g., server is down, [or they] need to check and get back to you in 24 hours and so on."  The consumer reported that "[n]o one ever calls.  Why do they lie?  Just tell us that you are not going to replace it."  The consumer concluded that the "FTC should get after them, and fine this company for announcing a recall and won't fulfill."

74.     Another consumer reported to the BBB as recently as June 12, 2021 that "[t]he Kidde Fire Extinguisher has been recalled.  However, I did not know that when I tried to use it to extinguish a fire in my outdoors B-B-Q.  The fire extinguisher failed to spray a uniform amount of material as it was designed to do so.  Instead the handle was extremely difficult to use and instead of a uniform amount of discharge, it sprayed a glob of material and then it went into a mode that would spray no longer. I have contacted Kidde by email and they said they would replace the extinguisher due to the recall within two to three weeks.  It has been a month and today I placed my fourth call asking about the replacement.  They advise that a replacement model is not now in stock but that I should call in a week checking on the replacement status.  Every time I call, the waiting time for a replacement gets pushed further

41

forward.  Kidde was informed of this complaint by the BBB within two business days of the complaint.

**D.    Several Of The Fortunate Few Who Received Replacements Were Supplied With Either An Inferior Fire Extinguisher, A Damaged Product, Or Another Recalled Fire Extinguisher**

75.    Several of the consumers who succeeded in completing Kidde's marathon of endurance and setbacks were rewarded with a Fire Extinguisher inferior to the one that they intended to purchase, or their recalled Fire Extinguisher was replaced with an otherwise malfunctioning Fire Extinguisher, or even worse, their recalled Fire Extinguisher was replaced with *another* one of Kidde's recalled Fire Extinguishers.

76.    One consumer wrote to Consumer Reports in 2018 that after following through with Kidde's recall process, "I was sent a discharged extinguisher with no pin."  He stated that "I will keep [the recalled Fire Extinguisher] and send back the empty extinguisher [Kidde] sent me."

77.    Another consumer reported to Consumer Reports in 2018 that "I received the replacement for one of the two fire extinguishers affected by the recall. The one being replaced is a model FX210R with a 4A40BC rating.  The one I received is a Model FX210 with a 2A10BC rating."  He stated that "[t]o me that means that I only get ¼ of the area for a flaming fire with the replacement one."  To remedy this situation, the consumer reported that "I have called Kidde twice and left

42

messages with the answering service who said someone would call me back[,] but I have not received any return call." The consumer concluded that Kidde's "customer service is not very good."

78.     Another consumer reported to Consumer Reports in 2018 that "I received my replacement Kidde fire extinguisher today. It was immediately apparent that the replacement extinguisher is significantly smaller than my original." The consumer stated that "[m]y original had a tank that was 14.5 inches tall and the replacement tank is only 12 inches tall. Diameter and pressure are the same. So that means the capacity of the replacement is 17% smaller!" He continued that "[i]n addition, the extinguisher I had was rechargeable, the replacement is not. Looking at the product catalog, I see they have a Pro 110 version which is much closer to what I had (Home 110) but instead they replaced my extinguisher with a smaller and cheaper version." The consumer concluded that "I called them 2 days ago and was told I would receive a call back but no call. What is my recourse?"

79.     Another consumer reported to the CPSC on November 17, 2017 that "I just received two replacement Kidde fire extinguishers as part of the recall. One of my units arrived covered in powder, safety pin removed and at empty state according to the pressure monitor." The consumer stated that "I am not sure if the chemicals I've touched are dangerous and if my other unit is safe." Kidde was informed of this consumer's complaint by the CPSC on December 19, 2017. Kidde responded that

it "reached out to [the consumer] to discuss his concerns."

80. Another consumer reported to the CPSC on December 12, 2017 that "I just wanted to let you know about this ridiculous Kidde fire extinguisher recall. I got my replacement from them yesterday after waiting about three weeks (good thing there wasn't a fire in that long time)." The consumer continued that "I don't trust them and was concerned they sent me one with the same model number[,] so I called them to verify they didn't send me a recalled one. He checked the serial number and they did." The consumer continued: "They sent me a recalled fire extinguisher to replace a recalled one. And since they screwed up the guy at the call center . . . couldn't even send me a new one. He had to escalate it so an actual Kidde employee will call me back." The consumer reported that "[h]e said to call back if I don't hear from them in a week. So that will be a month without a working fire extinguisher plus probably another three weeks to get the replacement sent which may or may not be recalled." The consumer concluded that Kidde "need[s] to get fined or something. They can't send a recalled item to replace a recalled item and take forever in doing so when it is an item people rely on for safety." Kidde was informed of this consumer's complaint twice: once by the consumer and once by the CPSC on January 17, 2018. Remarkably, Kidde responded that "[i]f this consumer needs to use the recalled fire extinguisher, while waiting for the replacement, they should do so."

44

81.     Another consumer reported to the CPSC on December 13, 2017 that "I have three Kidde Home fire extinguishers that were on the recall list[,] so I called the number which I was given to get replacement ones (it's only a call center), I was sent two of the three replacements which were on empty."  The consumer stated that "I have called three times to get the new ones replace[d] also and to receive my third original replacement but was told I had to wait until some[one] called me back."  The consumer noted that "this started in November and to date [I] have never heard from anyone[;] right now I have three extinguishers which are defective and two new ones that are empty."  The consumer concluded that "hopefully I don't have a fire in my house while I am waiting around for Kidde to respond."  Kidde was informed of this consumer's complaint twice: once by the consumer and again by the CPSC on January 17, 2018.  Kidde responded only that it "will be reaching out to . . . discuss the replacement units."

82.     Another consumer reported to the CPSC on December 30, 2017 that "I made a submission to Kidde and was promptly shipped a replacement.  Unfortunately, what they sent me was a damaged and unusable extinguisher."  The consumer stated that "[a]fter I reported the problem with the replacement to Kidde . . . they have ignored me."  The consumer concluded: "I don't think this is the way a recall is supposed to work."  Kidde was informed of this consumer's complaint twice: once by the consumer and again by the CPSC on January 17, 2018.

45

Kidde responded only that it "will be reaching out . . . to discuss the replacement."

83.     Another consumer reported to the CPSC on January 12, 2018 that "[a] Kidde fire extinguisher which I purchased was recalled two years after I purchased it. [Kidde] sent me a replacement. Now, one year later, they informed me that the replacement is recalled." The consumer stated that Kidde "said they would send me a new one; it took them three months to do so." The consumer continued: "When I received the new fire extinguisher the gauge was on empty. In other words, they sent me a faulty extinguisher to replace the faulty extinguisher they had sent me to replace the original faulty extinguisher." The consumer reported that "[i]n addition, I checked the other Kidde extinguisher which I had purchased at the same time as the first one, and the gauge is on empty. This extinguisher [is] several years away from the expiration of Kidde's warranty. And this extinguisher was not part of any recall." The consumer concluded that "[i]t seems to me that this company should be investigated and that all consumers should be advised to check the gauge on their Kidde extinguishers on a regular basis." Kidde was informed of this complaint twice: once by the consumer and again by the CPSC on January 23, 2018. Kidde, however, responded only that it "would invite the individual making this report to contact" customer service.

84.     Another consumer reported to the CPSC on February 3, 2018 that "I did everything needed to have one of my extinguishers replaced through the recall.

Unfortunately, the replacement unit I was sent was damaged before I received it." The consumer stated that "[a]ll of my attempts via phone and email to contact Kidde to remedy the situation have gone unanswered. I am concerned that I now have two unsafe fire extinguishers, and I don't know how to proceed." Kidde was informed of this complaint by the CPSC on May 7, 2018. Kidde responded with respect to this complaint as well that it "would invite the individual making this report to contact" customer service.

85. Another consumer reported to the CPSC on May 24, 2018 that his "Kidde Fire extinguisher was recalled. Got replacement unit, however it was defective on arrival." He stated that the "[y]ellow retardant material / powder was already leaking from the box. This was extremely unfortunate as I just happened to have brought home my ~8 month [infant] from the hospital with chronic lung disease." The consumer also included the following photographs with their complaint:

 

47

Kidde was informed of this complaint by the CPSC on August 15, 2018. Kidde responded only that it "will be reaching out to [the consumer] to [e]nsure that his fulfillment requests have been satisfied."

## V. Kidde's Pre-Sale Knowledge Of The Defect

### A. Kidde's Engineers Apprised Kidde Of The Defect Well Before The Recall. Nonetheless, Kidde Continued To Sell The Defective Extinguishers

86. As the Department of Justice's investigation revealed, Kidde had long known about the Fire Extinguisher Defect. As described above, there are at least three sources of Kidde's knowledge. First, Kidde was informed as early as 2005 of the widespread problems involving its extinguishers. Nonetheless, Kidde failed to report this information to the CPSC as it was required to do by law. Second, in 2014, Kidde underreported the number of incidents reported to it, stating that it was aware of only 12 incidents, whereas the truth was that it was aware of well over 100 incidents involving the Fire Extinguishers. Third, Kidde's own internal test reports demonstrated consistent failures across the Fire Extinguishers.

87. In addition to these sources of knowledge, Kidde had long received reports of the plastic handle fire extinguishers and push-button Pindicator fire extinguishers frequently becoming detached, becoming clogged, or requiring excessive force to discharge causing a failure to activate during a fire emergency.

88. As demonstrated above, the CPSC operates a website where consumers

48

can post complaints about unsafe Fire Extinguishers and provide details about any incidents they experienced.

89.     Online safety reports to the CPSC show that Kidde knew or should have known of the Fire Extinguisher Defect since at least 2012, yet it continued to sell the defective Fire Extinguishers anyway.

90.     Per federal regulations, all safety reports that are submitted online through the CSPC website are sent directly to the product's manufacturer.  As set forth in more detail below, the CPSC website indicates that all safety complaints referenced herein were sent to Kidde, including the dates on which they were sent. Kidde also monitors safety complaints from the CPSC, and thus Kidde would have independently become aware of each safety complaint reported to the CPSC separate and apart from notice received from the CPSC.

91.     On December 31, 2012, a consumer submitted a report to the CPSC concerning Kidde Model FA110.  The consumer stated that he "was cooking on November 8th, 2012 . . . when a small grease fire began building with flames of approx[imately] 6-12' high, causing me to grab [a] fire extinguisher to put it out." He stated that he "removed the safety pin, verified the pressure indicator was green[,] pressed on the lever[,] but nothing came out."  The consumer stated that he "kept trying for approximately a minute longer pressing on [the] lever over and over[,] but nothing was coming out to end the fire."  The consumer stated that "there have been

49

no injuries, but there was about $1000 worth of fire damages that could have been averted had this fire extinguisher worked." The consumer stated that he independently contacted and alerted Kidde about this Fire Extinguisher Defect. The CPSC also sent the report to Kidde on February 15, 2013. Kidde responded shortly afterwards. Hence, Kidde was alerted twice about this incident – once by the consumer directly and then again later by the CPSC. Kidde responded by instructing the consumer to "contact [the] customer service manager."

92. On August 10, 2013, another consumer submitted a report to the CPSC concerning Kidde Model H110G. The consumer stated that his "pick up truck caught on fire on August 8, 2013." He stated that "I grabbed my fire extinguisher (that has never been used before) and pulled the tab and squeezed the trigger." The consumer noted that "[a] very small amount of chemical came out and the gauge then read empty, however it [was] still full." As a consequence of this failure, the consumer reported that "[t]he cab of my truck went up in flames and is now totaled." The consumer attached the following photograph of his truck:



The CPSC sent this complaint to Kidde on August 19, 2013. Remarkably, Kidde responded by stating that "[b]ased on a review of the information provided here, Kidde does not have sufficient information to believe that the specific product concerns suggest a defect that presents a substantial product hazard."

93.     On November 5, 2014, a Fire Department submitted a report to the CPSC concerning Kidde Model FX340SC-2. A representative of the Fire Department stated that the Department "responded to a fire at an apartment complex." The representative explained that "[t]he occupant had tried to use a fire

51

extinguisher and it would not function." The representative reported that "[a]bout 8 other fire extinguishers were tried and none of them worked" despite the fact that "[a]ll the extinguishers were new." The representative "advised that the extinguishers malfunctioned due to the plastic discharging mechanism not working" and further that "[t]he plastic handle was not strong enough to depress the discharge piston before collapsing." The CPSC sent this report to Kidde on December 4, 2014. Kidde responded that "[b]ased on the information provided to date, Kidde is unable to determine if the particular incident described involved a defect."

94. On March 10, 2015, another Fire Department submitted a report to the CPSC concerning Kidde Model Pro 5 TCM-8. A representative of the Department stated that "[t]he department responded to a report of an outside fire at a retail grocery store. The Ambulance was the first unit to arrive and found . . . cardboard on fire against the exterior of the store." The representative noted that "[t]he staff on the ambulance deployed the fire extinguisher from the ambulance in an attempt to extinguish, if not at least slow the fire until the arrival of the [Fire] Engine." The representative continued that "[t]he firefighter pulled the pin, removed the hose and squeezed the handle. After somewhat of a brief delay the powder 'dribbled' out [of] the end of the hose." The fire fighter "looked at the gauge which was still showing in the green. She again squeezed the handle and the agent slowly left the hose. She attempted to shake the hose towards the flames to get any powder to be useful."

Eventually the Fire Engine arrived mitigating the circumstance. The representative noted that "[t]his situation ended without injury or major property damage but could easily have ended differently should it [have] occurred in a structure or confined space, or [had there been] trapped occupants." The CPSC sent this report to Kidde on March 25, 2015. Kidde responded that it "is in the process of investigating this report."

95. On March 23, 2015, another consumer submitted a report to the CPSC concerning Kidde Model H110G. The consumer stated that "I attempted to use my Kidde Fire Extinguisher on a brush fire at a neighbor's home." He noted that he "depressed the plastic lever one time which worked." But "[t]he second time I tried, it was impossible to depress it. Another one could not be operated at all. The lever could not be depressed. Striking it on a tree or rock was the only way to depress the valve." The CPSC sent this report to Kidde on March 30, 2015. Kidde was aware of this malfunction as reflected by the fact it responded to this consumer's complaint shortly afterwards.

96. On August 14, 2015, another consumer submitted a report to the CPSC concerning Kidde Model FX340SC-2. The consumer stated that "I had a small fire in my house." He noted that "I proceeded to use my Kidde fire extinguisher for the first time to put it out. The tank capacity point[ed] to full as it was never used before. After I pulled out the pin and squeezed the lever, the extinguisher puffed once and

53

died." The consumer continued "[i]f the fire was larger or spread faster, it would [have] put my family's life in danger." The CPSC sent this report to Kidde on August 24, 2015.

97. On August 18, 2015, another consumer submitted a report to the CPSC concerning Kidde Model FA110. The consumer reported that "[d]uring annual fire extinguisher training we are required to put out a controlled fire. I pulled [the] pin and gave a short burst of extinguisher. I then proceeded to approach [the] base of fire and attempted to discharge the remainder of the bottle and nothing happened." The consumer stated that "[s]queezing the handle did nothing, it appears the valve is stuck. I had fire fighter person[nel] try also and nothing." The CPSC sent this report to Kidde on August 26, 2015.

98. On April 13, 2017, a Fire Investigator submitted a report to the CPSC concerning a defective extinguisher. The Fire Investigator stated that "[o]n April 12, 2017, 2350 hrs, there was a kitchen fire I investigated. The occupant of the residence attempted to use a Kidde 3lb disposable fire extinguisher and it failed to operate." The Fire Investigator stated that "[t]he date stamp on the base of the extinguisher was '2015.' The extinguisher was rated for ABC type fires and contained a number on the label of 'A99014677.' This model extinguisher appears to be the same type of a recall previously issued on extinguishers made up to 2014." The Fire Investigator stated that "I attempted to use the extinguisher to see if I could

get it to operate and I was unable to squeeze the handle to activate the extinguisher. The pin had been pulled . . . As a result of the inoperability of the extinguisher, an occupant of the residence used water to extinguisher a cooking oil fire and as a result spread the fire." The Fire Investigator continued that "upon my examination of the extinguisher I noticed a piece of plastic on the upper handle that is to extend into a hole in the lower handle; in my attempt to activate the extinguisher, I had to manually manipulate this protruding piece of plastic into the lower handle." The Fire Investigator concluded that "[t]his utilized a fine motor skill that, I believe a normal person would not be able to perform under a high stress situation as a fire." Kidde was informed of this incident by the CPSC on July 18, 2017. Kidde responded that it is "unable to determine what may have caused the alleged failure."

99.    Every time the CPSC's website describes a consumer complaint, the website also discloses the date when CPSC sent that complaint to the manufacturer. This is separate from the portion of the safety complaint where the consumer states whether he or she independently contacted the manufacturer. As alleged above, all of the above-referenced complaints were sent to Kidde by CPSC shortly after being submitted to the CPSC.

100.   For each of the following additional reasons, Kidde's management knew or should have known about the complaints referenced above as soon as they began appearing on the CPSC website in 2012:

(a)     First, as noted above, Kidde was repeatedly contacted directly by consumers and by the CPSC about the same problem.

(b)     Second, the CPSC website is a government-run repository for complaints about safety-related defects, and many of Kidde's Fire Extinguishers appear on the website.  The CPSC website provides businesses with early warnings of product defects, and monitoring reports is easy because users can search for reports by company names.  Hence, since at least 2012, it required negligible effort for Kidde's management and other personnel to visit the CPSC website, type "Kidde" in the search field, and view a list of reports of safety incidents related to Kidde Fire Extinguishers, including reports about the Fire Extinguisher Defect at issue here.

(c)     Third, Kidde knows about the CPSC website because for each of the reports described above, Kidde registered a response.  For example, with regard to the first incident described and reported on December 31, 2012, Kidde responded that the consumer should contact customer service.

(d)     Fourth, for each of the recalls pertaining to the Defective Fire Extinguishers, Kidde has a hard-to-locate tab on its website linking consumers to details of the recall as posted on the CPSC's website.

101.   Despite Kidde's knowledge of these complaints, Kidde continued to manufacture, market, and sell these defective Fire Extinguishers for purchase for

five additional years from the date of the first reported complaint on the CPSC website. This does not include numerous complaints that were only made to Kidde and were not otherwise publicly disclosed. Nonetheless, only on November 2, 2017 did Kidde issue a comprehensive recall on these Defective Fire Extinguishers. And, even then, Kidde underreported the extent of these defects.

## B.  Other Indicia Of Kidde's Pre-Sale Knowledge

102.  In addition to receiving safety complaints from the CPSC, Kidde also knew or should have known about the defects from several other sources. First, Plaintiff is informed and believes that Kidde maintains an online and telephonic consumer complaint database that allows consumers to report their experiences. Kidde would have been on notice from the information reported in these systems.

103.  Second, online reputation management (commonly called "ORM" for short), is now a standard business practice among most major companies and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on Fire Extinguishers. "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before the damage to the

individual's or brand's reputation."[24]  Many companies offer ORM consulting services for businesses.

104.   Like most companies, Kidde presumably cares about its reputation and regularly monitors on-line consumer reviews because they provide valuable data regarding quality control issues, customer satisfaction, and marketing analytics. Reviews like those copied above would be particularly attention-grabbing for Kidde's management because extreme reviews are sometimes the result of extreme problems, and – just like any other company – Kidde is presumably sensitive to the reputational impact of negative online reviews.  Hence, Kidde's management knew or should have known about the above-referenced consumer complaints shortly after each complaint was posted online.

105.   Kidde's management also knew or should have known about the Fire Extinguisher Defect because of the similarity of complaints to the CPSC, the Better Business Bureau, Consumer Reports, and other websites.  The fact that so many consumers made similar complaints about the same product indicates that the complaints were not the result of user error or an anomalous incident, but instead a systematic problem with the product.  Here, the reports and complaints from consumers – whether made directly to Kidde employees or forwarded from the

---

[24] WebSolutions Maine, "Online Reputation," Available at https://websolutions-maine.com/online-reputation/ (last visited Oct. 27, 2021).

CPSC – were similar enough to put Kidde's management on notice that the incidents described were the result of a defect, and that the Fire Extinguishers were experiencing unusually high levels of complaints about the nozzles frequently becoming detached, becoming clogged, or requiring excessive force to discharge causing a failure to activate during a fire emergency.

106. Even if Kidde was not made aware of the Fire Extinguisher Defect through the above sources – although they were – Kidde also would have learned through court filings. Since at least 2012, several complaints have been filed against Kidde by plaintiffs in their individual capacities alleging the Defect described in this complaint. Descriptions contained in those complaints and information learned through discovery would have disclosed the Defect, especially in light of Judge Nora B. Fischer's determination on March 24, 2015 that "punitive damages may be appropriate as a reasonable jury could find that Kidde was recklessly indifferent to the safety of its consumers."[25]

107. And for like reasons, any attempts by Plaintiffs to provide pre-suit notice would have been futile. On February 10, 2021, Plaintiffs' counsel sent Kidde a pre-suit demand, stating the demand letter was "pursuant to . . . the Consumers Legal Remedies Act, Civil Code § 1770 and U.C.C. § 2-607(3)(A) concerning

---

[25] *McDaniel v. Kidde Residential & Fire & Com*., 2015 WL 1326332, at *2 (W.D. Pa. Mar. 24, 2015).

breaches of warranty described herein on behalf of our client, Daniel Onn, ***and all other similarly situated purchasers***." (Emphasis added). Kidde, through Carrier Global, responded on February 25, 2021, stating that "We reject your assertions that we engaged in any improper behavior or in any manner violated any laws." Subsequently, on March 29, 2021, Mr. Onn, through counsel, filed his class action complaint "on behalf of himself and all others similarly situated against Defendant[] . . . Walter Kidde Portable Equipment, Inc. for the manufacture, marketing, and sale of plastic handle fire extinguishers and push-button Pindicator fire extinguishers[.]" *Daniel Onn v. Carrier Global Corporation*, Case No. 4:21-cv-02188-HSG, ECF No. 1 (N.D. Ca. March 29, 2021). Kidde did not remedy the situation. Instead, Kidde filed its Motion to Dismiss. *Id.*, ECF No. 28.

108. Through these actions, Kidde has demonstrated that a demand letter sent on behalf of the present Plaintiffs would have been futile. Against the weight of the evidence, Kidde has long denied that it has committed wrongdoing. It has done so when sued by families injured by Kidde's defective fire extinguishers, when sued by the U.S. Department of Justice along with the Consumer Product Safety Commission, and, again, by Mr. Onn. A letter sent on behalf of the Plaintiffs would not have changed that outcome. Accordingly, Plaintiffs brought suit on the basis that Kidde had already received repeated notice and repeated its denials at every turn.

## <u>TOLLING OF THE STATUTE OF LIMITATIONS</u>

109.   Any applicable statute of limitations has been tolled by the deceptive conduct alleged herein.  Through no fault or lack of diligence, Plaintiffs and Class members were deceived regarding the Fire Extinguisher Defect and could not reasonably discover the latent nature of the defect.

110.   Plaintiffs and Class members could not reasonably discover Kidde's deception with respect to the Fire Extinguisher Defect prior to experiencing a failure and/or being informed of the reason for the failure.  Within the time period of any applicable statute of limitations, Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence that Kidde was concealing the Fire Extinguisher Defect.

111.   Plaintiffs and Class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that Kidde was concealing a latent defect and/or that the Defective Fire Extinguishers contained a defect in design causing nozzles to frequently become detached, become clogged, or require excessive force to discharge and causing a failure to activate during a fire emergency.  As alleged herein, the existence of the Fire Extinguisher Defect and safety risk were material to Plaintiffs and Class members at all relevant times.

112.   At all times, Kidde is and was under a continuous duty to disclose to Plaintiffs and Class members the true standard, quality, and grade of the fire

61

extinguishers at issue and to disclose the Fire Extinguisher Defect and potential safety risk associated with the fire extinguisher failing to function during an emergency.

113. Kidde knowingly, actively, and affirmatively concealed the facts alleged in this complaint, including the Fire Extinguisher Defect. Plaintiffs and Class members reasonably relied on Kidde's knowing, active, and affirmative concealment.

114. For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Kidde's fraudulent concealment, and Kidde is estopped from relying on any statutes of limitation in defense of this action.

## CLASS ALLEGATIONS

115. Plaintiffs bring this nationwide class action pursuant to 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of a class defined as all persons in the United States who purchased the Fire Extinguishers (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale.

116. In connection with her California purchases, Plaintiff Taylor further seeks to represent a subclass of all Class Members who purchased the Fire Extinguishers in the State of California (the "California Subclass"). Excluded from the California Subclass are persons who made such purchases for purpose of resale.

62

117. In connection with his Florida purchases, Plaintiff Newlands further seeks to represent a subclass of all Class Members who purchased the Fire Extinguishers in the State of Florida (the "Florida Subclass"). Excluded from the Florida Subclass are persons who made such purchases for purpose of resale.

118. As a result of additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

119. At this time, Plaintiffs do not know the exact number of members of the aforementioned Class and Subclasses ("Class Members" and either "California Subclass Members" or "Florida Subclass Members" respectively or collectively "State Subclass Members"); however, given the nature of the claims and the number of retail stores in the United States selling Kidde's Fire Extinguishers, Plaintiff believes that Class and State Subclass Members are so numerous that joinder of all members is impracticable.

120. There is a well-defined community of interest in the questions of law and facts involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class Members include:

(a)     whether Kidde misrepresented and/or failed to disclose material facts concerning the Fire Extinguishers;

63

(b)     whether Kidde's conduct was unfair and/or deceptive;

(c)     whether Kidde has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Kidde to retain the benefits conferred upon Kidde by Plaintiff and the Class;

(d)     whether Plaintiffs and the Class sustained damages with respect to the common law claims asserted, and if so, the proper measure for their damages.

121.   With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Kidde violated the California Consumers Legal Remedies Act as well as California's Unfair Competition Law.

122.   With respect to the Florida Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Kidde violated Florida's Deceptive and Unfair Trade Practices Act.

123.   Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased, in a typical consumer setting, Kidde's Fire Extinguishers, and Plaintiffs sustained damages from Kidde's wrongful conduct.

124.   Plaintiffs are adequate representatives of the Class and the State Subclasses because their interests do not conflict with the interests of the Class Members they seek to represent, they have retained competent counsel experienced

64

in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

125. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Kidde's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Kidde's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of liability issues.

### COUNT I

**(Violation of California's Consumers Legal Remedies Act ("CLRA"),
California Civil Code § 1750, *et seq*.)**

126. Plaintiff Taylor realleges and reincorporates by reference all paragraphs alleged above.

127. Plaintiff Taylor brings this claim individually and on behalf of the members of the proposed California Subclass against Kidde.

128. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

129. Civil § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

130. Civil § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

131. Kidde violated Civil Code § 1770(a)(5), (a)(7), and (a)(9) by holding out Fire Extinguishers as fit for use as fire extinguishers, when in fact the Fire Extinguishers were defective, dangerous, and useless.

132. The Defect at issue here involves nozzles frequently becoming detached, becoming clogged, or requiring excessive force to discharge causing a failure to activate during a fire emergency. This Defect affected Kidde's plastic handle fire extinguishers and push-button Pindicator fire extinguishers as identified throughout this complaint.

66

133.  Kidde has exclusive knowledge of the Defect, which was not known to Plaintiff or California Subclass Members.

134.  Kidde made partial representations to Plaintiff Taylor and California Subclass Members, while suppressing the Fire Extinguisher Defect.  Specifically, by displaying the Fire Extinguishers and describing their features, the product packaging and Kidde's website implied that the product was suitable for use as a fire extinguisher, without disclosing that the Fire Extinguishers had a critical safety-related defect that could result in harm to users of the Fire Extinguishers.  As described above, Kidde was in receipt of knowledge pertaining to the Defect and yet for a period of several years continued to sell the defective Fire Extinguishers.  Moreover, Kidde affirmatively misrepresented the Fire Extinguishers despite its knowledge that the Fire Extinguishers did not function as advertised.

135.  Plaintiff Taylor and the California Subclass Members have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Fire Extinguishers that they otherwise would not have incurred or paid.

136.  On February 10, 2021, prior to the filing of this Complaint, Plaintiff's counsel sent Kidde a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a).  The letter was sent via certified mail, return receipt requested, advising Kidde that they were in violation of the CLRA and demanding

67

that they cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of all other similarly situated purchasers. Kidde responded to the letter on February 25, 2021. As described above, any further attempt to notify Kidde would have been futile.

137. Accordingly, Plaintiff Taylor and the California Subclass Members seek all relief available under the CLRA, including restitution, the payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court.

## COUNT II
### (Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

138. Plaintiff Taylor realleges and reincorporates by reference all paragraphs alleged above.

139. Plaintiff Taylor brings this claim individually and on behalf of the proposed California Subclass against Kidde.

140. California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice." For the reasons discussed above, Kidde has engaged in unlawful, unfair, and fraudulent business acts or practices in violation of California Business & Professions Code § 17200.

141. By committing the acts and practices alleged herein, Kidde has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-

17210, as to the California Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

142. Kidde has violated the UCL's proscription against engaging in **<u>Unlawful Business Practices</u>** as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9) as alleged above, violations of California's Song-Beverly Act, and violations of California's False Advertising Law, in addition to breaches of warranty and violations of common law.

143. As more fully described above, Kidde's misleading marketing, advertising, packaging, and labeling of the Fire Extinguishers is likely to deceive reasonable consumers. In addition, Kidde has committed unlawful business practices by, inter alia, making the representations and omissions of material facts, as set forth more fully herein, and violating the common law.

144. Plaintiff Taylor and members of the California Subclass reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

145. Kidde has also violated the UCL's proscription against engaging in **<u>Unfair Business Practices</u>**. Kidde's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200 *et seq*. in that its conduct is substantially injurious to consumers, offends public policy, and is

immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

146. There were reasonably available alternatives to further Kidde's legitimate business interests, other than the conduct described herein.

147. Kidde has further violated the UCL's proscription against engaging in **Fraudulent Business Practices**. Kidde's claims, nondisclosures and misleading statements with respect to the Fire Extinguishers, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

148. Plaintiff Taylor and the other California Subclass Members suffered a substantial injury by virtue of buying the Fire Extinguishers that they would not have purchased absent Kidde's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Fire Extinguishers.

149. There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the defective nature of the Fire Extinguishers.

150. Plaintiff Taylor and the other California Subclass Members had no way of reasonably knowing that the Fire Extinguishers they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

151.   The gravity of the consequences of Kidde's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff Taylor and the other California Subclass Members.

152.   Pursuant to California Business and Professional Code § 17203, Plaintiff Taylor and the California Subclass seek an order of this Court that includes, but is not limited to, an order requiring Kidde to (a) provide restitution to Plaintiff and the other California Subclass Members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's and the California Subclass' attorneys' fees and costs.

## **COUNT III**
**(Breach of Implied Warranty Under the Song-Beverly Act, Cal. Civ. Code § 1790, *et seq*. and California Commercial Code § 2314)**

153.   Plaintiff Taylor realleges and reincorporates by reference all paragraphs alleged above.

154.   Plaintiff Taylor brings this claim individually and on behalf of all members of the California Subclasses.

155.   Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790. et seq., and California Commercial Code § 2314, every sale of consumer

71

goods in the State of California is accompanied by both a manufacturer's and retailer seller's implied warranty that the goods are merchantable, as defined in that Act. In addition, every sale of consumer goods in California is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose (here, to be used as fire extinguishers) and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

156. California has codified the third-party beneficiary exception to any privity requirement. Therefore, while ordinarily, Plaintiff Taylor might be required to demonstrate vertical privity, she need not do so where, as here, she is a third-party beneficiary of Kidde's contracts with wholesalers or retail sellers and relied on Kidde's packaging in making her purchase. Plaintiff Taylor and members of the California Subclass are third-party beneficiaries because the extinguishers passed into commerce with warranties that were designed for the benefit of the end-user and not for the benefit of a wholesaler or retailer.

157. The Fire Extinguishers at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

158. Plaintiff Taylor and the Class Members who purchased one or more Fire Extinguishers are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

159. Kidde is in the business of manufacturing, assembling, and/or producing the Fire Extinguishers and/or selling the Fire Extinguishers to retail buyers, and therefore is a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

160. Kidde impliedly warranted to retailer buyers that the Fire Extinguishers were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Fire Extinguishers are used. For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements. Kidde breached these implied warranties because the Fire Extinguishers were unsafe and defective. Therefore, the fire extinguishers would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

161. Plaintiff Taylor and California Subclass Members purchased the Fire Extinguishers in reliance upon Kidde's skill and judgment in properly packaging and labeling the Fire Extinguishers.

162. The Fire Extinguishers were not altered by Plaintiff Taylor or the California Subclass Members.

163. The Fire Extinguishers were defective at the time of sale when they left the exclusive control of Kidde. The Defect described in this complaint was latent in the product and not discoverable at the time of sale.

73

164.   Kidde knew that the Fire Extinguishers would be purchased and used without additional testing by Plaintiff and Class Members.

165.   As a direct and proximate cause of Kidde's breach of the implied warranty, Plaintiff and Class Members have been injured and harmed because they would not have purchased the Fire Extinguishers if they knew the truth about the Fire Extinguishers, namely, that they were unfit for use as fire extinguishers.

166.   Plaintiff Taylor and the California Subclass seek compensatory damages, attorney's fees, costs, and any other just and proper relief available under law.

## COUNT IV
### (Violation of California's False Advertising Law,
### Cal. Bus. & Prof. Code § 17500, *et seq*.)

167.   Plaintiff Taylor, individually and on behalf of the California Subclass incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

168.   Kidde's acts and practices, as described herein, have deceived and/or are likely to continue to deceive class members and the public.  As described above, and throughout this Complaint, Kidde misrepresented the Fire Extinguisher and concealed the Defect.

169.   By its actions, Kidde disseminated uniform advertising regarding the Fire Extinguishers to and across California.  The advertising was, by its very nature,

74

unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*. Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

170. The above-described false, misleading, and deceptive advertising Kidde disseminated continues to have a likelihood to deceive in that Kidde failed to disclose the Fire Extinguisher Defect and how it could put the user's life and property at risk.

171. Kidde continued to misrepresent to consumers that its Fire Extinguishers were capable of use for which such devices are intended. However, as described, this is not the case.

172. In making and disseminating these statements, Kidde knew, or should have known, its advertisements were untrue and misleading in violation of California law. Plaintiffs and other class members based their purchasing decisions on Kidde's omitted material facts. The revenue attributable to Fire Extinguishers sold in those false and misleading advertisements likely amounts to hundreds of millions of dollars. Plaintiffs and Class members were injured in fact and lost money and property as a result.

173. The misrepresentations and non-disclosures by Kidde of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq*.

75

174.    As a result of Kidde's wrongful conduct, Plaintiffs and the class members lost money in an amount to be proven at trial. Plaintiffs and the class members are therefore entitled to restitution as appropriate for this cause of action.

175.    Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Kidde's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

### COUNT V
### (Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*)

176.    Plaintiff Newlands realleges and reincorporates by reference all paragraphs alleged above.

177.    Plaintiff Newlands brings this claim individually and on behalf of all members of the Florida Subclass.

178.    Plaintiff Newlands and Florida Subclass Members are "consumers" under Fla. Stat. § 501.203(7), the Fire Extinguishers are "goods" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), and the transactions at issue constitute "trade or commerce" as defined by the FDUTPA.

179.  The FDUTPA, Fla. Stat. § 501.204, provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

180.  For the reasons alleged above, Kidde violated and continues to violate the FDUTPA by engaging in the described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*.

181.  Kidde's acts and practices, including its material omissions and affirmative misrepresentations, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

182.  At all times mentioned herein, Kidde engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that it advertised, offered for sale, sold, or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

183.  Kidde repeatedly advertised, both on the labels for the Fire Extinguishers, on its website, and through a national advertising campaign, among other items, that the Fire Extinguishers were and are safe for use by individuals when in fact they were not safe for use in their ordinary and intended purpose.

184.  As discussed, the Fire Extinguishers here are defective in that they have nozzles that frequently become detached or clogged, or they require excessive force

to discharge causing a failure to activate during a fire emergency. This Defect affected Kidde's plastic handle fire extinguishers and push-button Pindicator fire extinguishers as identified throughout this complaint.

185. Kidde has exclusive knowledge of the Defect, which was not known to Plaintiff Newlands or Florida Subclass Members.

186. Kidde made partial representations to Plaintiff Newlands and Florida Subclass Members, while suppressing the Fire Extinguisher Defect. Specifically, by displaying the Fire Extinguishers and describing their features, the product packaging and Kidde's website implied that the product was suitable for use as a fire extinguisher, without disclosing that the Fire Extinguishers had a critical safety-related defect that could result in harm to users of the Fire Extinguishers. As described above, Kidde was in receipt of knowledge pertaining to the Defect and yet for a period of several years continued to sell the defective Fire Extinguishers.

187. Kidde's affirmative misrepresentations and omissions were material because they were likely to deceive reasonable consumers to induce them to buy the Fire Extinguishers without being aware that the Fire Extinguishers did not function as fire extinguishers and posed a threat to the lives, safety, and security of Plaintiffs and consumers by making them believe that in the event of a fire they could use the Fire Extinguishers as fire extinguishers. However, as discussed throughout this complaint, these Fire Extinguishers are not in fact usable as extinguishers.

78

188.   As a direct and proximate result of Kidde's unfair and deceptive acts or practices, Plaintiff Newlands and Florida Subclass Members suffered damages by purchasing the Fire Extinguishers because they would not have purchased the Fire Extinguishers had they known the truth, and they received a product that was worthless because it was unsafe for its ordinary and intended purpose.

189.   Kidde's deceptive trade practices caused injury in fact and actual damages to Plaintiffs and class members in the form of the loss of value of the Fire Extinguishers, which allowed Kidde to profit at the expense of Plaintiffs and class members.  The injuries were to legally protected interests.  The gravity of the harm of Kidde's actions is significant and there is no corresponding benefit to consumers of such conduct.

190.   Plaintiff Newlands and Florida Subclass Members seek relief for the injuries they have suffered as a result of Kidde's unfair and deceptive acts and practices, as provided by Fla. Stat. § 501.211 and applicable law.

## COUNT VI
### (Breach of Implied Warranty Under Florida Law, Fla. Stat. Ann. § 672.314)

191.   Plaintiff Newlands realleges and reincorporates by reference all paragraphs alleged above.

192.   Plaintiff brings this claim individually and on behalf of all members of the Florida Subclass.

79

193. Every sale of consumer goods in the State of Florida is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act. In addition, every sale of consumer goods in Florida is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose (here, to be used as fire extinguishers) and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

194. Kidde breached its implied warranty of merchantability when it designed, manufactured, distributed, and sold the Fire Extinguishers in their unsafe and unmerchantable condition.

195. Florida jurisprudence recognizes the third-party beneficiary exception to any privity requirement. Therefore, whereas ordinarily, Plaintiff Newlands may be required to demonstrate vertical privity, he need not do so where, as here, he is a third-party beneficiary to contracts between Kidde and wholesalers or retail sellers and relied on Kidde's packaging in making his purchase. Plaintiff Newlands and members of the Florida Subclass are third-party beneficiaries because the extinguishers passed into commerce with warranties that were designed for the benefit of the end-user and not for the benefit of a wholesaler or retailer.

80

196. Kidde constitutes a "merchant" within the meaning of Fla. Stat. Ann. § 672.104.

197. The Fire Extinguishers at issue here are "goods" within the meaning of Fla. Stat. Ann. § 672.105.

198. Plaintiff Newlands and the Florida Subclass Members who purchased one or more of the Fire Extinguishers are "buyers" within the meaning of Fla. Stat. Ann. § 672.103(1)(a).

199. Kidde is in the business of manufacturing, assembling, and/or producing the Fire Extinguishers and/or selling the Fire Extinguishers to retail buyers, and therefore is a "manufacturer" and "seller" within the meaning of Fla. Stat. Ann. § 672.103(d).

200. Kidde impliedly warranted to retailer buyers that the Fire Extinguishers were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, (b) are of fair average quality within the description; (c) are fit for the ordinary purpose for which such goods are used; (d) run within the variations permitted by the agreement; (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label.

201. Kidde breached the implied warranty under Florida law because the Fire Extinguishers were unsafe and defective. Therefore, the fire extinguishers

would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

202. Plaintiff Newlands and Florida Subclass Members purchased the Fire Extinguishers in reliance upon Kidde's skill and judgment in properly packaging and labeling the Fire Extinguishers.

203. The Fire Extinguishers were not altered by Plaintiff Newlands or the Florida Subclass Members.

204. The Fire Extinguishers were defective at the time of sale when they left the exclusive control of Kidde. The Defect described in this complaint was latent in the product and not discoverable at the time of sale.

205. Kidde knew that the Fire Extinguishers would be purchased and used without additional testing by Plaintiff Newlands and Florida Subclass Members.

206. As a direct and proximate cause of Kidde's breach of the implied warranty, Plaintiff Newlands and Florida Subclass Members have been injured and harmed because they would not have purchased the Fire Extinguishers if they knew the truth about the Fire Extinguishers, namely, that they were unfit for use as fire extinguishers.

207. As noted above, any pre-suit notice beyond that which had already been given to Kidde, would have been futile. Kidde has demonstrated a knack for denying responsibility including in the face of serious charges following a detailed

82

investigation by the U.S. Department of Justice as well as numerous federal court rulings determining that Kidde acted in reckless disregard of the safety and well-being of its consumers.

208. Accordingly, Plaintiff Newlands and Florida Subclass Members seek compensatory damages, attorney's fees, costs, and any other just and proper relief available under law.

## COUNT VII
### (Violation of North Carolina's Unfair and Deceptive Practice Act, N.C. Gen. Stat. §§ 75-1.1, et seq.)

209. Plaintiffs reallege and reincorporate by reference all paragraphs alleged above.

210. Plaintiffs bring this claim individually and on behalf of all members of the Nationwide Class.

211. Kidde engaged in unlawful, unfair, and deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act by advertising, selling, and warranting the defective Fire Extinguishers.

212. Kidde knew that the Fire Extinguishers were dangerous and not suitable for their ordinary and intended purpose.

213. In advertising, selling, and warranting the Fire Extinguishers, Kidde omitted material facts concerning dangers of using the Fire Extinguishers. Kidde

83

failed to give Plaintiffs and the other class members sufficient notice or warning regarding this Defect.

214. Kidde intended that Plaintiffs and the other class members rely upon Kidde's omissions when purchasing the Fire Extinguishers.

215. Plaintiffs and the other class members were deceived by Kidde's concealment of the defect.

216. Kidde's conduct was in commerce and affected commerce.

217. As noted above, any pre-suit notice beyond that which had already been given to Kidde, would have been futile. Kidde has demonstrated a knack for denying responsibility including in the face of serious charges following a detailed investigation by the U.S. Department of Justice as well as numerous federal court rulings determining that Kidde acted in reckless disregard of the safety and well-being of its consumers.

218. As a direct and proximate result of these unfair, willful, unconscionable, and deceptive commercial practices, Plaintiffs and the other class members have been damaged and seek to recover actual and treble damages, as well as attorneys' fees and costs, and all other relief allowed under N.C. Gen. Stat §§ 75-16 and 75-16.1.

## COUNT VIII
### (Breach Of Implied Warranty Under North Carolina Law, N.C.G.S.A. § 25-2-314)

219.    Plaintiffs reallege and reincorporate by reference all paragraphs alleged above.

220.    Plaintiffs bring this claim individually and on behalf of Members of the Nationwide Class.

221.    The Fire Extinguishers were subject to implied warranties of merchantability as defined in N.C. Gen. Stat. § 25-2-314, running from the Kidde to the Plaintiffs.

222.    An implied warranty that the Fire Extinguishers were merchantable arose by operation of law as part of the purchase of the Fire Extinguishers.

223.    The Fire Extinguishers are "goods" as defined by N.C. Gen. Stat. § 25-2-105.

224.    Kidde is a "merchant" as defined by N.C. Gen. Stat. § 25-2-104.

225.    Plaintiffs are buyers as defined by N.C. Gen. Stat. § 25-2-103.

226.    Kidde breached the implied warranty of merchantability in that the Fire Extinguishers were not in merchantable condition when the Plaintiffs purchased them, or at any time thereafter, and the Fire Extinguishers are unfit for the ordinary purposes for which such Fire Extinguishers are used.

227.   Indeed, Kidde has known for years that a defect rendered the Fire Extinguishers useless given that their nozzles frequently become detached or become clogged, or the Fire Extinguishers require excessive force to discharge causing a failure to activate during a fire emergency.

228.   Nonetheless, Kidde made partial representations as well as affirmative misrepresentations to Plaintiffs while suppressing the Fire Extinguisher Defect. Specifically, by displaying the Fire Extinguishers and describing their features, the product packaging and Kidde's website implied that the Fire Extinguishers were suitable for use as a fire extinguisher, without disclosing that the Fire Extinguishers had a critical safety-related defect that could result in harm to users of the Fire Extinguishers.  As described above, Kidde was in receipt of knowledge pertaining to the Defect and yet for a period of several years continued to sell the defective Fire Extinguishers.

229.   Privity is not required because Plaintiffs and each of the Members of the Class are the intended beneficiaries of Kidde's contracts with wholesalers or retail sellers.  Wholesalers and retailers were not intended to be the ultimate consumers of the Fire Extinguishers and have no rights under these warranties.  Kidde's warranties were designed for and intended to benefit the consumers only.  Plaintiffs and the Members of the Class were the intended consumers of the Fire Extinguishers.

230.   As noted above, any pre-suit notice beyond that which had already been given to Kidde, would have been futile.  Kidde has demonstrated a knack for denying responsibility including in the face of serious charges following a detailed investigation by the U.S. Department of Justice as well as numerous federal court rulings determining that Kidde acted in reckless disregard of the safety and well-being of its consumers.

231.   Plaintiffs and Members of the Class have suffered damages caused by Kidde's breach of the implied warranty of merchantability and are entitled to recover compensatory damages, attorney's fees, and other relief this Court may deem appropriate.

## COUNT IX
### (Fraud)

232.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

233.   Plaintiffs bring this claim individually and on behalf of the Class under the laws of the state of North Carolina, or alternatively, the law of the state in which each respective Plaintiff purchased their Fire Extinguishers.

234.   At the time Plaintiffs and Class members purchased their Fire Extinguishers, Kidde did not disclose, but instead concealed and misrepresented, the Defect as discussed herein.

87

235. Kidde affirmatively misrepresented the Fire Extinguishers, giving the Fire Extinguishers the appearance of a device capable for use as such and that is free from defects.

236. Kidde also knew that its omissions and misrepresentations regarding the Fire Extinguishers were material, and that a reasonable consumer would rely upon Kidde's representations (and corresponding omissions) in making purchasing decisions.

237. Plaintiffs and Class members did not know—nor could they have known through reasonable diligence—about the Defect.

238. Plaintiffs and Class members would have been reasonable in relying on Kidde's misrepresentations (and corresponding omissions) in making their purchasing decisions.

239. Plaintiffs and Class members had a right to reply upon Kidde's representations (and corresponding omissions) as Kidde maintained monopolistic control over knowledge of the true quality of the Fire Extinguishers and of the Defect.

240. Plaintiffs and Class members sustained damages as a result of their reliance on Kidde's omissions and misrepresentations, thus causing Plaintiffs and Class members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## COUNT X
### (Constructive Fraud)

241.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

242.   Plaintiffs bring this claim individually and on behalf of the Class under the laws of the state of North Carolina, or alternatively, the law of the state in which each respective Plaintiff purchased their Fire Extinguishers.

243.   At the time Plaintiffs and Class members purchased their Fire Extinguishers, Kidde did not disclose, but instead concealed and misrepresented, the Defect as discussed herein.

244.   Kidde affirmatively misrepresented the Fire Extinguishers, giving Fire Extinguishers the appearance of a device capable for use as such and that is free from defects.

245.   Kidde also knew that its omissions and misrepresentations regarding the Fire Extinguishers and the Defect were material, and that a reasonable consumer would rely upon Kidde's representations (and corresponding omissions) in making purchasing decisions.

246.   Kidde had an obligation not to misrepresent the Fire Extinguishers or omit the Defect because in addition to the fact that the Fire Extinguishers pertained to matters of safety: (a) Kidde was in the sole possession of such information; (b) Kidde made partial representations regarding the quality of the Fire Extinguishers;

89

and (c) Plaintiffs and Class members relied upon Kidde to make full disclosures based upon the relationship between Kidde and Plaintiffs and Class members, and were reasonable in doing so, with the full knowledge of Kidde that they did.

247.   Plaintiffs and Class and Subclass members did not know—nor could they have known through reasonable diligence—about the Defect and of the true quality of the Fire Extinguishers.

248.   Plaintiffs and Class members were reasonable in relying on Kidde's misrepresentations (and corresponding omissions) in making their purchasing decisions.

249.   Plaintiffs and Class members had a right to rely upon Kidde's representations (and corresponding omissions) as, in addition to the fact that the Defect pertained to safety, Kidde maintained monopolistic control over knowledge of the true quality of the Fire Extinguishers and of the Defect, and what information was available regarding the Defect.

250.   Kidde breached its duty to Plaintiff and Class members to make full disclosures of the Defect.

251.   Plaintiffs and Class members sustained damages as a result of their reliance on Kidde's omissions and misrepresentations, and Kidde's breach of its duty, thus causing Plaintiff and Class members to sustain actual losses and damages in a sum to be determined at trial.

## COUNT XI
## (Fraudulent Inducement)

252. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

253. Plaintiffs bring this claim individually and on behalf of the Class under the laws of the state of North Carolina, or alternatively, the law of the state in which each respective Plaintiff purchased their Fire Extinguishers.

254. Kidde did not disclose, but instead concealed and misrepresented, the Defect as discussed herein.

255. Kidde knew, or should have known, that the Fire Extinguishers were falsely portrayed, and that knowledge of the Defect was withheld from the consumer public.

256. Kidde also knew that its omissions and misrepresentations regarding the Fire Extinguishers were material, and that a reasonable consumer would rely on Kidde's representations (and corresponding omissions) in making purchasing decision.

257. Plaintiffs and Class members did not know—nor could they have known through reasonable diligence—about the Defect.

258. Plaintiffs and Class members would have been reasonable in relying on Kidde's misrepresentations (and corresponding omissions) in making their purchasing decisions.

91

259.   Plaintiffs and Class members had a right to rely on Kidde's representations (and corresponding omissions) as Kidde maintained a monopolistic control over the Defect, and what information was available regarding the Defect.

260.   Kidde intended to induce—and did, indeed, induce—Plaintiffs and Class members into purchasing the Fire Extinguishers based upon their affirmative representations and omissions.

261.   Plaintiffs and Class members sustained damages as a result of their reliance on Kidde's omission and misrepresentations, thus causing Plaintiffs and Class members to sustain actual losses and damages in a sum to be determined at trial.

## COUNT XII
### (Money Had and Received)

262.   Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

263.   Plaintiffs bring this claim individually and on behalf of the Class under the laws of the state of North Carolina, or alternatively, the law of the state in which each respective Plaintiff purchased their Fire Extinguishers.

264.   As a result of the Plaintiffs' and Class members' purchase of the Fire Extinguishers, Kidde obtained money for its own use and benefit, and, as a result of its breaches of contract and breaches of the covenant of good faith and fair dealing

implied in those agreements, became indebted to the Plaintiffs and Class members in an amount to be determined at trial.

265.    No part of any of the monies due and owing to Plaintiffs and Class members has been repaid, although Plaintiffs and Class members demand repayment, leaving the balance due, owing, and unpaid in an amount to be determined at trial plus interest.

**COUNT XIII**
**(Fraudulent Concealment or Omission)**

266.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

267.    Plaintiffs bring this claim individually and on behalf of the Class under the laws of the state of North Carolina, or alternatively, the law of the state in which each respective Plaintiff purchased their Fire Extinguishers.

268.    Kidde falsely represented to Plaintiffs and the Class that the Fire Extinguishers were safe to use to put out fires.

269.    Kidde intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase the Fire Extinguishers.

270.    Kidde knew or should have known that its representations about the Fire Extinguishers were false in that the nozzles frequently become detached or clogged, or the Fire Extinguishers required excessive force to discharge, causing a

93

failure to activate during a fire emergency. Kidde knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

271. Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the Fire Extinguishers to their detriment. Given the deceptive manner in which Kidde advertised, marketed, represented, and otherwise promoted the Fire Extinguishers, Plaintiff's and the Class' reliance on Kidde's misrepresentations was justifiable.

272. As a direct and proximate result of Kidde's conduct, Plaintiffs and the Class have suffered actual damages in that they would not have purchased the Fire Extinguishers at all had they known of the safety risks associated with the use of the Fire Extinguishers that do not conform to the Fire Extinguishers' labels, packaging, advertising, and statements.

273. Plaintiffs and the Class seek actual damages, attorney's fees, costs, and other such relief the Court deems proper.

## COUNT XIV
## (Fraudulent Misrepresentation)

274. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

Case 1:21-cv-00839-WO-JLW   Document 20   Filed 02/04/22   Page 94 of 107

275. Plaintiffs bring this claim individually and on behalf of the Class under the laws of the state of North Carolina, or alternatively, the law of the state in which each respective Plaintiff purchased their Fire Extinguishers.

276. At all relevant times, Kidde was engaged in the business of designing, manufacturing, distributing, and selling the Fire Extinguishers.

277. Kidde, acting through its representatives or agents, delivered the Fire Extinguishers to its own distributors and various other distribution channels.

278. Kidde willfully, falsely, and knowingly omitted various material facts regarding the quality and character of the Fire Extinguishers, including of the Defect.

279. Rather than inform consumers of the truth regarding the Defect, Kidde misrepresented the quality of the Fire Extinguishers as discussed herein at the time of purchase.

280. Kidde made these material misrepresentations to boost or maintain sales of the Fire Extinguishers, and in order to falsely assure purchasers of the Fire Extinguishers that Kidde is a reputable company and that its Fire Extinguishers are reliable and able to perform as promised. The false representations were material to consumers because the representations played a significant role in the value of the Fire Extinguishers purchased.

281. Plaintiffs and Class members accepted the terms of use, which were silent on the latent Defect. Plaintiffs and class members had no way of knowing that

95

Kidde's misrepresentations as to the Fire Extinguishers and the Defect were misleading.

282.   Although Kidde had a duty to ensure the accuracy of the information regarding the Fire Extinguishers and of the Defect, it did not fulfill these duties.

283.   Kidde misrepresented material facts partly to pad and protect its profits, as it saw that profits and sales of its Fire Extinguishers were essential for its continued growth and to maintain and grow their reputation as a premier designer and vendor of the Devices.  Such benefits came at the expense of Plaintiffs and class members.

284.   Plaintiffs and Class members were unaware of these material misrepresentations, and they would not have acted as they did had they known the truth.   Plaintiffs' and Class members' actions were justified given Kidde's misrepresentations.  Kidde was in the exclusive control of material facts, and such facts were not known to the public.

285.   Due to Kidde's misrepresentations, Plaintiffs and Class members sustained injury due to the purchase of Devices that did not live up to their advertised representations.  Plaintiffs and Class members are entitled to recover full refunds for the Fire Extinguishers they purchased due to Kidde's misrepresentations, or they are entitled to damages for the diminished value of their Fire Extinguishers in amounts to be determined at trial.

286.   Kidde's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and well-being, and in part to enrich itself at the expense of consumers. Kidde's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competitor fire extinguishers. Kidde's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT XV
### (Negligent Misrepresentation)

287.   Plaintiffs reallege and reincorporate by reference all paragraphs alleged above.

288.   Plaintiffs bring this claim individually and on behalf of the Class under the laws of the state of North Carolina, or alternatively, the law of the state in which each respective Plaintiff purchased their Fire Extinguishers.

289.   Kidde had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in developing, testing, manufacturing, marketing, detailing, distributing, and selling the Fire Extinguishers.

290.   Kidde breached its duty to Plaintiffs and the Class by developing, testing, manufacturing, marketing, detailing, distributing, and selling Fire Extinguishers to Plaintiffs and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Kidde and by failing to

97

promptly remove the Fire Extinguishers from the marketplace or take other appropriate remedial action upon becoming aware of the safety risks of the Fire Extinguishers.

291.    Kidde knew or should have known that the qualities and characteristics of the Fire Extinguishers were not as advertised, marketed, detailed, or otherwise represented or suitable for their intended use and were otherwise not as warranted and represented by Kidde.  Specifically, Kidde knew or should have known that (1) the nozzles frequently become detached or clogged, or the Fire Extinguishers required excessive force to discharge, causing a failure to activate during a fire emergency and thereby not conforming to the packaging and labeling; and (2) the Fire Extinguishers were otherwise not as warranted and represented by Kidde.

292.    As a direct and proximate result of Kidde's conduct, Plaintiffs and the Class have suffered actual damages in that they would not have purchased the Fire Extinguishers at all had they known they would fail to operate during a fire emergency in a manner that does not conform to the Fire Extinguisher's labeling, packaging, advertising, and statements.

293.    Plaintiffs and the Class seek actual damages, attorney's fees, costs, and any other just and proper relief available.

## Count XVI
### (Quasi-Contract / Unjust Enrichment)

294.   Plaintiffs reallege and reincorporate by reference all paragraphs alleged above.

295.   Plaintiffs bring this claim individually and on behalf of Members of the Class.

296.   Each Plaintiff brings this claim against Kidde under the laws of the state where the Plaintiff lives.  Additionally, Plaintiffs bring this claim under the laws of North Carolina.  Plaintiffs reserve the right to represent a multi-state class that includes states with comparable applicable laws.

297.   To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

298.   Plaintiffs and Class Members conferred benefits on Kidde by purchasing the Fire Extinguishers.

299.   Kidde was unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members' purchases of the Fire Extinguishers.  Retention of those moneys under these circumstances is unjust and inequitable because Kidde failed to disclose that the Fire Extinguishers were unfit for their intended purpose. These omissions caused injuries to Plaintiffs and Class Members because they would not have purchased the Fire Extinguishers if the true facts were known.

99

300. Retention of those moneys also is unjust and inequitable because, as alleged above, Kidde commenced an ineffective recall that resulted in few returns, and generally no refunds, thereby protecting profits Kidde collected from selling the Fire Extinguishers.

301. Because Kidde's retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members is unjust and inequitable, Kidde has been unjustly enriched in an amount to be determined at trial.

## COUNT XVII
### (Negligent Failure to Warn or to Instruct)

302. Plaintiffs reallege and reincorporate by reference all paragraphs alleged above.

303. Plaintiffs bring this claim individually and on behalf of Members of the Class.

304. Each Plaintiff brings this claim against Kidde under the laws of the state where the Plaintiff lives. Additionally, Plaintiffs bring this claim under the laws of North Carolina. Plaintiffs reserve the right to represent a multi-state class that includes states with comparable applicable laws.

305. Kidde had a duty to instruct or to warn Plaintiffs and the Class regarding the defect and true risks associated with the Fire Extinguishers.

306.   Kidde failed to provide adequate instructions and/or warnings regarding the risks of the Fire Extinguishers' nozzles frequently become detached or clogged, or the Fire Extinguishers requiring excessive force to discharge, causing a failure to activate during a fire emergency.

307.   Kidde had information regarding the true risks but failed to instruct and/or to warn Plaintiffs and Class Members.

308.   Despite Kidde's obligation to unilaterally strengthen the instructions and/or warnings, Kidde instead chose to actively conceal this knowledge.

309.   Plaintiffs and the Class would not have purchased, chosen, and/or paid for the Fire Extinguishers if they knew of the risks discussed throughout the complaint before purchasing the Fire Extinguisher.

310.   The Defect proximately caused economic injuries to the Plaintiffs and the Class.

311.   Plaintiffs and the Class suffered damages in an amount to be determined at trial.

## COUNT XVIII
### (Negligent Design Defect)

312.   Plaintiffs reallege and reincorporate by reference all paragraphs alleged above.

313.  Each Plaintiff brings this claim against Kidde under the laws of the state where the Plaintiff lives.  Alternatively, Plaintiffs bring this claim under the laws of North Carolina.  Plaintiffs reserve the right to represent a multi-state class that includes states with comparable applicable laws.

314.  Kidde negligently designed the Fire Extinguishers.  Kidde owed Plaintiffs and the Class a duty to design the Fire Extinguishers in a reasonable manner.  The design of the Fire Extinguishers led to, including but not limited to, the nozzles frequently becoming detached or clogged, or the Fire Extinguishers requiring excessive force to discharge, causing a failure to activate during a fire emergency.

315.  The design of the Fire Extinguishers to include the plastic handles rendered the Fire Extinguishers not reasonably fit, suitable, or safe for their intended purpose.

316.  The dangers of the Fire Extinguisher outweighed the benefits and rendered the Fire Extinguishers unreasonably dangerous.

317.  Safer, alternative designs existed, including models with metal instead of plastic handles.  Kidde produced numerous of these models and so did their competitors.

102

318. The risk benefit profile of the Fire Extinguishers was unreasonable, and the Fire Extinguishers should have had stronger and clearer warnings and/or instructions or should not have been sold in the market.

319. The Fire Extinguishers did not perform as an ordinary consumer would expect.

320. Plaintiffs and the Class suffered damages in an amount to be determined at trial.

**COUNT XIX**
**(Violation Of The Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq*.)**

321. Plaintiffs reallege and reincorporate by reference all paragraphs alleged above.

322. Plaintiffs bring this claim individually and on behalf of the members of the Class.

323. The Fire Extinguishers are consumer Fire Extinguishers defined in 15 U.S.C. § 2301(1).

324. Plaintiffs and the Class are consumers as defined in 15 U.S.C. § 2301(3).

325. Kidde is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

103

326. In connection with the marketing and sale of the Fire Extinguishers, Kidde impliedly warranted that the Fire Extinguishers were fit for use as fire extinguishers. The Fire Extinguishers were not fit for use as fire extinguishers due to the Defect described in the allegations above.

327. By reason of Kidde's breach of warranties, Kidde violated the statutory rights due to Plaintiff and the Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*., thereby damaging Plaintiff and the Class.

328. As noted above, any pre-suit notice beyond that which had already been given to Kidde, would have been futile. Kidde has demonstrated a knack for denying responsibility including in the face of serious charges following a detailed investigation by the U.S. Department of Justice as well as numerous federal court rulings determining that Kidde acted in reckless disregard of the safety and well-being of its consumers.

329. Plaintiff and the Class Members were injured as a direct and proximate result of Kidde's breach because they would not have purchased the Fire Extinguishers if they knew the truth about the defective nature of the Fire Extinguishers.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all Class and Statewide Subclass Members, request judgment against Kidde as follows:

104

A.     For an Order certifying the Nationwide Class or, in the alternative, the Statewide Subclasses as defined herein, and appointing Plaintiffs and their Counsel to represent the certified Classes;

B.     For an order declaring that Kidde's conduct violates the statutes referenced herein;

C.     For an order finding in favor of Plaintiff and the Nationwide Class and Statewide Subclasses on all counts asserted herein;

D.     For compensatory and treble and/or punitive damages in an amount to be determined by the Court and/or jury;

E.     For pre-judgment interest on all amounts awarded;

F.     For an order of restitution, disgorgement, and all other forms of monetary relief;

G.     For an order awarding Plaintiffs and the Nationwide Class and Statewide Subclasses their reasonable attorney's fees and expenses and costs of suit.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: February 4, 2022                    Respectfully submitted,

                                           */s/ Martha A. Geer*
                                           Martha A. Geer (State Bar No. 13972)
                                           Sarah Spangenburg (State Bar No. 57381)
                                           **MILBERG COLEMAN BRYSON**
                                           **PHILLIPS GROSSMAN, PLLC**
                                           900 W. Morgan Street
                                           Raleigh, NC 27603
                                           Telephone: (919) 600-5000
                                           Facsimile: (919) 600-5035
                                           Email: mgeer@milberg.com
                                           Email: sspangenburg@milberg.com

                                           Gregory F. Coleman (*Special Appearance*
                                           *forthcoming*)
                                           **MILBERG COLEMAN BRYSON**
                                           **PHILLIPS GROSSMAN, PLLC**
                                           800 S. Gay Street, Suite 1100
                                           Knoxville, TN 37929
                                           Telephone: (865) 247-0080
                                           Facsimile: (865) 522-0080
                                           Email: gcoleman@milberg.com

                                           **BURSOR & FISHER, P.A.**
                                           L. Timothy Fisher (*Special Appearance*
                                            *forthcoming*)
                                           Sean L. Litteral (*Special Appearance*
                                           *forthcoming*)
                                           1990 North California Boulevard, Suite 940
                                           Walnut Creek, CA 94596
                                           Telephone: (925) 300-4455
                                           Facsimile: (925) 407-2700
                                           Email: ltfisher@bursor.com
                                                   slitteral@bursor.com

                                           *Attorneys for Plaintiffs*

106

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of the filing to all parties of record.

/s/ Martha A. Geer
Martha A. Geer