IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JANET TAYLOR and JAMES          )
NEWLANDS, individually and on   )
behalf of all others similarly  )
situated,                       )
                                )
          Plaintiffs,           )
                                )
     v.                         )          1:21CV839
                                )
WALTER KIDDE PORTABLE           )
EQUIPMENT, INC.,                )
                                )
          Defendant.            )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is a Motion to Dismiss Plaintiffs' First
Amended Class-Action Complaint filed by Defendant Walter Kidde
Portable Equipment, Inc. (Doc. 21.) Plaintiffs Janet Taylor and
James Newlands (together, "Plaintiffs") oppose the motion.
(Doc. 23.) This court will grant in part and deny in part the
motion. The motion is denied as to Plaintiff Taylor's Song-
Beverly Act implied warranty claim (Count III), Plaintiff
Newland's Florida implied warranty claim (Count VI), and
Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claim (Count
XIX). All other claims will be dismissed without prejudice.

## I. __FACTUAL BACKGROUND__

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (internal quotation marks omitted) (quoting King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). The facts, accepted as true as alleged in the First Amended Complaint, taken in the light most favorable to Plaintiffs, are as follows.

Defendant is a corporation headquartered in Mebane, North Carolina, that manufactures and distributes fire extinguishers. (First Am. Class Action Compl. ("FAC") (Doc. 20) ¶ 11.) In a variety of different marketing materials, Defendant has claimed that its fire extinguishers are high quality. (See, e.g., id. ¶¶ 15-27.) Contrary to those representations, many of Defendant's fire extinguishers had a significant defect "involving the tendency of their nozzles to frequently become detached, clogged, or require excessive force to discharge causing a failure to activate during a fire emergency." (Id. ¶ 32.) Defendant knew of this defect as early as 2005 but did not fully disclose it to federal regulators until August 2017.[1] (See id. ¶¶ 3, 52.) In November 2017, Defendant issued a

---

[1] In 2021, Defendant was ordered to pay a $12 million civil penalty for failing to timely inform federal regulators about the defect. (See FAC (Doc. 20) ¶ 54.)

- 2 -

comprehensive recall for fire extinguishers containing the defect. (See, e.g., id. ¶ 101.) The recall included nearly 38 million units, among them H110G models.[2] (Id. ¶ 40, 54.) The recall program is flawed because many consumers have (1) not heard of it, (2) were unable to establish contact with Defendant, (3) experienced delays in securing replacement products, or (4) received inadequate replacements. (See, e.g., id. ¶ 56–57, 66, 75.)

Plaintiff Taylor lives in California and in 2016 purchased one of Defendant's H110G models from Walmart. (Id. ¶ 8.) She did not hear of the recall until sometime in 2021. (Id. ¶ 9.) In the spring of 2021, a fire broke out in her garage. (Id.) She followed the instructions of how to use her H110G fire extinguisher, but when she squeezed the handle, only a small drizzle of spray came out. (Id.) She eventually extinguished the fire by other means and does not allege the fire caused any physical injury or property damage. (See id.)

Plaintiff Newlands lives in Florida and in 2012 purchased two H110G fire extinguishers from Lowe's. (Id. ¶ 10.) They were

---

[2] In 2015, Defendant had instituted a smaller recall for nearly 4.6 million units. (FAC (Doc. 20) ¶ 44.) Demonstrated by the need for the much larger 2017 recall, Defendant's 2015 recall was far too narrow. (Id. ¶ 51.)

defective. (Id.) He did not hear of the recall until sometime in 2021. (Id.)

## II.  <u>PROCEDURAL HISTORY</u>

Plaintiffs filed their original complaint in October 2021. (Doc. 1.) Defendant moved to dismiss the complaint. (Doc. 16.) Plaintiffs then, pursuant to Federal Rule of Civil Procedure 15(a)(1), filed their First Amended Class Action Complaint ("FAC").[3] (See FAC (Doc. 20).) The FAC seeks class certification and asserts nineteen counts:

---

[3] Because the FAC supersedes Plaintiffs' original complaint, (Doc. 1), Defendant's motion to dismiss the original complaint, (Doc. 16), will be denied as moot, see Shoe Show, Inc. v. One-Gateway Assocs., LLC, No. 1:14CV434, 2015 WL 1128016, at *2 (M.D.N.C. Mar. 12, 2015) ("[T]he Court notes that after Defendant filed its first Motion to Dismiss, Plaintiff filed an Amended Complaint. As such, Defendant's Motion to Dismiss Plaintiff's Original Complaint will be denied as moot because the Original Complaint is 'superseded' by Plaintiff's Amended Complaint." (quoting Hill v. Spartanburg Reg'l Health Servs. Dist., Inc., Civil Action No. 7:13-271-MGL, 2013 WL 2395186, at *3 (D.S.C. May 31, 2013))).

Case 1:21-cv-00839-WO-JLW   Document 25   Filed 09/23/22   Page 4 of 47

| Count | Cause of Action Asserted |
|-------|--------------------------|
| I | California Consumers Legal Remedies Act ("CLRA") |
| II | California Unfair Competition Law |
| III | Implied Warranty under California Song-Beverly Act and California Commercial Code |
| IV | California False Advertising Law |
| V | Florida Deceptive and Unfair Trade Practices Act |
| VI | Florida Implied Warranty |
| VII | North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") |
| VIII | North Carolina Implied Warranty |
| IX | Fraud |
| X | Constructive Fraud |
| XI | Fraudulent Inducement |
| XII | Money Had and Received |
| XIII | Fraudulent Concealment or Omission |
| XIV | Fraudulent Misrepresentation |
| XV | Negligent Misrepresentation |
| XVI | Quasi-Contract/Unjust Enrichment |
| XVII | Negligent Failure to Warn or to Instruct |
| XVIII | Negligent Design Defect |
| XIX | Magnuson-Moss Warranty Act ("MMWA") |

(Id. ¶¶ 126-329.) The California statutory claims, Counts I-IV, are advanced by Plaintiff Taylor. (Id. ¶¶ 126-75.) The Florida statutory claims, Counts V-VI, are advanced by Plaintiff Newlands. (Id. ¶¶ 176-208.) The North Carolina statutory claims, Counts VII-VIII, are advanced by both Plaintiffs, (id. ¶¶ 209-31), as are the common law claims, Counts IX-XVII, and the federal law claim, Count XIX, (id. ¶¶ 232-329). Most of the common law claims are pled alternatively under North Carolina law and the laws of the state where each Plaintiff lives or purchased their fire extinguishers. (See id. ¶¶ 233, 242, 253, 263, 267, 275, 288, 313, 233.) Two of the common law claims are

- 5 -

pled under both North Carolina law and the laws of the state

where each Plaintiff lives. (See id. ¶¶ 296, 304.)

Defendant moved to dismiss the FAC, (Def.'s Mot. to Dismiss

Pls.' First Am. Class-Action Compl. ("Mot.") (Doc. 21)), and

filed a brief in support, (Def.'s Mem. in Supp. of Mot. to

Dismiss Pls.' First Am. Class-Action Compl. ("Def.'s Br.")

(Doc. 22)). Plaintiffs responded in opposition, (Pls.' Opp'n to

Def.'s Mot. to Dismiss Pls.' First Am. Class-Action Compl.

("Pls.' Resp.") (Doc. 23)), and Defendant replied. (Def.'s Reply

in Supp. of Mot. to Dismiss Pls.' First Am. Class-Action Compl.

("Def.'s Reply") (Doc. 24)).[4] Defendant's motion is now ripe for

adjudication.

## III. <u>STANDARD OF REVIEW</u>

Defendant's motion is made pursuant to Federal Rules of

Civil Procedure 9(b), 12(b)(1), and 12(b)(6). (Mot. (Doc. 21) at

1.)[5]

Under Rule 12(b)(1), a plaintiff must prove by a

preponderance of the evidence the existence of subject matter

---

[4] This court notes that the parties sought and received
permission to file briefs significantly longer than the standard
word limit. (See Text Order 12/27/2021; Doc. 8; Doc. 19; Text
Order 02/24/2022.)

[5] All citations in this Memorandum Opinion and Order to page
numbers of documents filed with the court refer to the page
numbers located at the bottom right-hand corner of the documents
as they appear on CM/ECF.

jurisdiction. <u>United States ex rel. Vuyyuru v. Jadhav</u>, 555 F.3d 337, 347-48 (4th Cir. 2009). A defendant may challenge subject matter jurisdiction facially or factually. <u>See</u> <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, a defendant asserts that the allegations, taken as true, are insufficient to establish subject matter jurisdiction. <u>Id.</u> The court then effectively affords a plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration," taking the facts as true and denying the Rule 12(b)(1) motion if the complaint "alleges sufficient facts to invoke subject matter jurisdiction." <u>Id.</u>

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true, <u>id.</u>, and is required to "draw all reasonable inferences in favor of

the plaintiff," <u>King v. Rubenstein</u>, 825 F.3d 206, 212 (4th Cir. 2016). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

In addition to the normal pleading requirements of Rule 12(b)(6), claims of fraud must satisfy Rule 9(b)'s heightened pleading standard. <u>See</u> <u>United States ex rel. Grant v. United Airlines Inc.</u>, 912 F.3d 190, 196 (4th Cir. 2018). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) exists to give "defendants notice of their alleged misconduct, prevent[] frivolous suits, and eliminat[e] fraud actions in which all the facts are learned after discovery . . . ." <u>Grant</u>, 912 F.3d at 196; <u>see also</u> <u>United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.</u>, 707 F.3d 451, 456 (4th Cir. 2013).

# IV. **ANALYSIS**

Defendant advances several reasons why all of Plaintiffs' nineteen counts should be dismissed. (Def.'s Br. (Doc. 22) at 18.) These arguments will be addressed in turn.[6]

## A. **Article III Standing**

Defendant's first argument is that because Plaintiffs lack Article III standing, their counts should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Def.'s Br. (Doc. 22) at 19-22; see also Mot. (Doc. 21) at 1-2.)

To establish standing under Article III of the Constitution, a plaintiff must show: "(1) an injury in fact; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision." Wikimedia Found. v. NSA, 857 F.3d 193, 207 (4th Cir. 2017). The second element is oftentimes referred to as "traceability." See id. at 213.

---

[6] Because the relevant claims are dismissed on other grounds, see infra Sections IV.B, D, this court does not address Defendant's final argument that "Plaintiffs' equitable Unfair Competition Law (UCL), False Advertising Law (FAL), money-had-and-received, and unjust-enrichment claims fail under California and Florida state law because plaintiffs fail to allege lack of adequate legal remedy or a direct benefit to Kidde," (Def.'s Br. (Doc. 22) at 54-58).

- 9 -

Here, Defendant argues that the second element of Article III is not met because Plaintiffs do not allege that they ever sought new fire extinguishers through Defendant's recall program. (See Def.'s Br. (Doc. 22) at 20.) Defendant insists that this severs the connection between its conduct and Plaintiffs' alleged injuries—by electing not to participate in the recall program, any ongoing injury is not sufficiently causally connected to Defendant's conduct, but rather, due to Plaintiffs' own conduct. (See Def.'s Reply (Doc. 24) at 9.)

The primary case that Defendant relies on to support this argument is <u>Sugasawara v. Ford Motor Company</u>, Case No. 18-CV-06159-LHK, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019). In <u>Sugasawara</u>, two F-150 truck owners filed a putative class action against Ford, seeking damages for a defect in their vehicles that could cause fires. <u>Id.</u> at *1-3. Prior to the lawsuit's commencement, Ford had instituted a recall program in which it offered to fix the defects for free. <u>Id.</u> at 2-3. The complaint was silent as to whether one of the plaintiffs received the recall notice or participated in the recall program. <u>Id.</u> at 3. The court dismissed the suit, without prejudice, for lack of standing. <u>Id.</u> at *5-7. It held that because the complaint lacked plausible allegations that the recall program would fail to cure the defect, that one of the plaintiffs may have chosen to forgo

- 10 -

the program meant that any defect persisting in his F-150 was traceable to his own conduct, not Ford's. Id. at *6.

Plaintiffs' FAC differs from the one in Sugaswara because it affirmatively alleges that Plaintiffs were not timely notified of the recall. Plaintiff Newlands purchased his two H110G fire extinguishers in 2012. (FAC (Doc. 20) ¶ 10.) Plaintiff Taylor purchased the same model in 2016. (Id. ¶ 8.) That model was recalled in 2017. (Id. ¶ 40.) Nevertheless, neither Plaintiff heard about the recall until 2021. (Id. ¶¶ 9-10.) Considering the FAC's emphatic allegations that Defendant's recall program has failed to notify all affected consumers, (e.g., id. ¶ 40 ("Tens of thousands, if not hundreds of thousands of consumers, have not been informed of Kidde's recalls." (emphasis in original)), it is reasonable to infer that the reason Plaintiffs did not hear about the recall until years after it was declared is because they were never properly notified by Defendant. Therefore, until 2021, when Plaintiffs learned of the recall, the fact that they did not participate in the recall program was seemingly due to Defendant's failure to notify them, rather than any independent choice by Plaintiffs themselves. This suffices to establish a sufficient causal connection between Plaintiffs injury and Defendant's conduct, the second element of standing.

- 11 -

In this regard, the instant case is less like Sugaswara and more like Dukich v. IKEA US Retail LLC, CIVIL ACTION NO. 20-2182, 2021 WL 1534520 (E.D. Pa. Apr. 19, 2021). In Dukich, ten prospective plaintiffs alleged that they were not notified about the recalls of their IKEA dressers and only learned about those recalls when the lawsuit in which they sought to intervene was filed. Id. at *3-4. The court rejected IKEA's argument that the prospective plaintiffs lacked standing because they could "simply attempt to return their dressers now" under the recall program. Id. at *4. The court held that the prospective plaintiffs' inability to avail themselves of the recall program "was caused by the alleged failure of IKEA to notify the prospective plaintiffs about the recalls. The prospective plaintiffs have adequately pleaded causation."[7] Id.

Plaintiffs have sufficiently alleged that their economic injuries were caused, inter alia, by Defendant's failure to properly notify them of the recall. This establishes causation and defeats Defendant's Article III standing challenge. Defendant's motion, insofar as it seeks dismissal pursuant to

---

[7] Although IKEA's recall program offered refunds, id. at *2, which Defendant's program does not generally offer, (see FAC (Doc. 20) ¶ 300), the same overall logic from Dukich applies to the instant case.

Rule 12(b)(1) for lack of subject matter jurisdiction, will thus be denied.

## B.  <u>Choice of Law</u>

Defendant argues that all of Plaintiffs' North Carolina law claims—including the common law counts alternatively pled under North Carolina law—should be dismissed because North Carolina law does not apply under the relevant choice-of-law rules. (Def.'s Br. (Doc. 22) at 22-27; <u>see also</u> (Doc. 24-1) at 3-5.) Plaintiff responds that this argument is premature because it raises fact-bound choice-of-law issues that should await completion of discovery. (Pls.' Resp. (Doc. 23) at 22-26.)

"The court may appropriately undertake a choice of law analysis at the motion to dismiss stage where the factual record is sufficiently developed to facilitate the resolution of the issue." <u>In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prod. Liab. Litig.</u>, Civil Action No. 3:11-CV-02784-JMC, 2013 WL 1316562, at *2 (D.S.C. Mar. 27, 2013); <u>see also, e.g.</u>, <u>SmithKline Beecham Corp. v. Abbott Lab'ys</u>, No. 1:15CV360, 2017 WL 1051123 (M.D.N.C. Mar. 20, 2017) (engaging in substantial choice-of-law analysis at the Rule 12 dismissal stage). Cases that are ripe for adjudication of choice-of-law issues pre-discovery include those where "the complaint provides the relevant factual information for the court's evaluation of the

- 13 -

relevant factors." <u>Bldg. Materials</u>, 2013 WL 1316562, at *2. This contrasts with the typical case, where the court is "in a better position to decide a choice of law issue after the parties have developed the factual evidence through the process of discovery." <u>Clean Earth of Md., Inc. v. Total Safety, Inc.</u>, Civil Action No. 2:10-CV-119, 2011 WL 1627995, at *4 (N.D.W. Va. Apr. 28, 2011); <u>see also</u> <u>Terry v. Swift Transp.</u>, 1:16cv256, 2017 WL 1013074, at *7 (M.D.N.C. Mar. 14, 2017), <u>report and recommendation adopted</u>, 2017 WL 2881141 (M.D.N.C. July 6, 2017); <u>Canada Pipeline Accessories, Co. v. Canalta Controls, Ltd.</u>, Civil Action No. 3:12-8448, 2013 WL 3233464, at *8 (S.D.W. Va. June 25, 2013) ("As courts in this circuit and others have recognized, a choice-of-law analysis at the motion-to-dismiss stage is often premature.").

The parties agree that North Carolina choice-of-law rules apply. (<u>See</u> Pls.' Resp. (Doc. 23) at 26 ("There is no dispute that North Carolina choice of law principles control."); <u>see also</u> Def.'s Br. (Doc. 22) at 9-14 (applying North Carolina choice-of-law rules).) This court agrees because "when exercising . . . jurisdiction over state-law claims, federal courts apply the choice-of-law rules of the state in which they sit." <u>Terry</u>, 2017 WL 1013074, at *3. There are two choice-of-law rules relevant here: (1) the "lex loci" rule, and (2) the "most

significant relationship" rule. The lex loci rule applies the law of the state where the injury occurred. See, e.g., Harco Nat'l Ins. Co. v. Grant Thornton LLP, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722 (2010). The most significant relationship rule applies the law of the state with the most significant relationship to the case. See, e.g., id. at 692, 698 S.E.2d at 723.

This court can adjudicate choice-of-law issues at this time because Plaintiffs have failed to identify any relevant facts missing from the FAC or underdeveloped in the FAC that prevent this court from applying the lex loci and most significant relationship rules. Therefore, this case is unlike those cited by Plaintiffs where "discovery is needed to iron out" "nebulous" issues of fact relating to the choice-of-law analysis. See Morris v. Bank of Am., N.A., No. 3:18-cv-00157-RJC-DSC, 2019 WL 1421166, at *4 (W.D.N.C. Mar. 29, 2019). In fact, Plaintiffs themselves acknowledge that this case has "more extensive" factual allegations than such cases. (Pls.' Resp. (Doc. 23) at 23.) Taking the extensive facts alleged in Plaintiffs' 107 page and 329 paragraph FAC as true, sufficient facts have been presented to adjudicate the choice-of-law issues.

This court begins with Plaintiffs' non-warranty North Carolina claims, which Defendant asserts should be dismissed

- 15 -

under the lex loci rule, and will then address Plaintiffs' North Carolina implied warranty claim, which Defendant asserts should be dismissed under the most significant relationship rule. (<u>See</u> Def.'s Br. (Doc. 22) at 23-27.)

### 1. <u>Non-Warranty North Carolina Claims</u>

As the parties appear to agree, the lex loci rule applies to all of Plaintiffs' common law claims. (<u>Compare</u> Pls.' Resp. (Doc. 23) at 26-30, <u>with</u> Def.'s Reply (Doc. 24) at 13.)[8] However, the parties disagree whether the lex loci rule also applies to Plaintiffs' statutory NCUDTPA count. (<u>Compare</u> Pls.' Resp. (Doc. 23) at 26-27, <u>with</u> Def.'s Reply (Doc. 24) at 13.)

This court dealt with this exact issue in <u>SmithKline Beecham</u>, 2017 WL 1051123, at *6-8, finding that "[t]he Supreme

---

[8] This includes Plaintiffs' fraud-and negligence-based claims. <u>See, e.g.</u>, <u>M-Tek Kiosk, Inc. v. Clayton</u>, No. 1:15CV886, 2016 WL 2997505, at *11 (M.D.N.C. May 23, 2016) ("North Carolina's Supreme Court has consistently adhered to the <u>lex loci</u> rule in tort actions. Therefore, the <u>lex loci</u> rule will be applied to [Plaintiff's] claims of fraud, constructive fraud, civil conspiracy, and negligent misrepresentation." (cleaned up) (quoting <u>Boudreau v. Baughman</u>, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988))). It also includes Plaintiffs' unjust enrichment claim. <u>See</u> <u>Arabian Am. Oil Co. v. Anderson</u>, 873 F.2d 1437 (4th Cir. 1989) (table opinion) (citing <u>Boudreau</u>, 322 N.C. 331, 368 S.E.2d 849, for the conclusion that "the district court was correct in applying <u>lex loci</u>" to an unjust enrichment claim). Because lex loci applies to the unjust enrichment claim, it is likely North Carolina courts would also apply the approach to Plaintiffs' money-had-and-received claim because the North Carolina Supreme Court has described such claims as being "under the doctrine of unjust enrichment." <u>See</u> <u>Dean v. Mattox</u>, 250 N.C. 246, 251, 108 S.E.2d 541, 546 (1959).

- 16 -

Court of North Carolina has yet to address the proper test for UDTPA claims, and there is a split of authority in the North Carolina Court of Appeals on the appropriate rule to be applied." Id. at *6. This court then engaged in an analysis of the applicable caselaw and emerged with a fairly clear rule: the lex loci test should apply "unless its application does not yield a clear answer and the place of injury is so open to debate that application of the significant relationship test is more appropriate." Id. at *6–8. In the absence of persuasive authority to the contrary, this court will apply the rules described in SmithKline Beecham.

Plaintiffs insist that because they dispute the place of injury, the issue remains "open to debate," and the most significant relationship test should be applied. (Pls.' Resp. (Doc. 23) at 27 (quoting SmithKline Beecham, 2017 WL 1051123, at *7).) Plaintiffs maintain their injuries occurred in North Carolina. (Id. at 23.) The key paragraph in the FAC that they claim supports this position reads:

> The Fire Extinguishers at issue are numerous. Although sold under different brand names, these fire extinguishers are substantially similar. They all suffer from the same Defect involving the tendency of their nozzles to frequently become detached, clogged, or require excessive force to discharge causing a failure to activate during a fire emergency. Each fire extinguisher substitutes important metal components such as the handle or push button with cheaper and less reliable plastic handles or plastic push buttons.

- 17 -

> Further, these fire extinguishers were sold for years
> despite Kidde's knowledge of the Defect, risking the
> personal health and safety of the consumer for
> corporate profits. And these fire extinguishers, as
> discussed below, were subject to the same ineffective,
> sham recalls that left consumers uninformed and
> vulnerable. <u>Because these decisions were all made from
> North Carolina</u>, which served as the nerve center of
> Kidde's business, as described above, <u>Plaintiffs
> suffered an injury in the state of North Carolina.</u>

(FAC (Doc. 20) ¶ 32 (emphasis added).)

This court finds that Plaintiffs' allegation that "[b]ecause these decisions were all made from North Carolina . . . Plaintiffs suffered an injury in the state of North Carolina," (<u>id.</u>), is a "legal conclusion couched as a factual allegation," which this court is "not bound to accept as true" at the motion to dismiss stage, <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). Hence, the issue of where Plaintiffs' injuries occurred is not "so open to debate," <u>SmithKline Beecham</u>, 2017 WL 1051123, at *8, just because Plaintiffs have alleged the injury occurred in North Carolina. "[W]hen determining the legal sufficiency of" this allegation, this court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." <u>Fessler v. IBM Corp.</u>, 959 F.3d 146, 154 (4th Cir. 2020) (quoting <u>E. Shore Markets, Inc. v. J.D. Assocs.</u>, 213 F.3d 175, 180 (4th Cir. 2000)).

This court rejects Plaintiffs' allegation that the injury occurred in North Carolina as an "unwarranted inference[]" and

"unreasonable conclusion[]." See id. "The injury location is often easy to determine . . . . [It] is the state in which the injury itself was felt, rather than the state in which the injurious act occurred." Wiener v. AXA Equitable Life Ins., No. 3:18-cv-00106-RJC-DSC, 2021 WL 665112, at *4 (W.D.N.C. Feb. 19, 2021) ("Courts have also found that the place of injury in fraudulent misrepresentation cases is the place in which the misrepresentation was heard and relied upon—that is, not necessarily where the fraudulent statement was spoken, but where the Court determines the injurious effect occurred.").

> [A] significant number of cases exist where a plaintiff has clearly suffered its pecuniary loss in a particular state . . . . In those cases, the lex loci test requires application of the law of the state where the plaintiff has actually suffered harm. Therefore, it must be determined whether the record in the instant case sufficiently indicates the state where plaintiff suffered the injury that gave rise to its claims.

Harco, 206 N.C. App. at 697, 698 S.E.2d at 726. "[T]he state where the injury or harm was sustained or suffered . . . is, ordinarily, the state where the last event necessary to make the actor liable [occurred]." SciGrip, Inc. v. Osae, 373 N.C. 409, 420, 838 S.E.2d 334, 343 (2020) (cleaned up) (quoting Harco, 206 N.C. App. at 695, 698 S.E.2d at 724).

Rather than being open to debate, this is one of a "number of cases" where the record sufficiently establishes the states

where Plaintiffs actually suffered harm and pecuniary loss—in other words, the states where the injuries themselves were felt. Those states are California and Florida, where Plaintiffs purchased their defective fire extinguishers—the last event necessary to make Defendant liable—and suffered their "economic injuries." (See FAC (Doc. 20) ¶¶ 8-10.) Whether the "last act" is the purchase of the fire extinguishers or the failure to notify buyers of a recall, it is not North Carolina where Defendant engaged in its injurious acts and decisions. (See, e.g., id. ¶ 32.)

Defendant's statements in separate litigation in the Northern District of California, see, e.g., Onn v. Walter Kidde Portable Equip., Inc., No. 4:21-cv-02188-HSG (N.D. Cal. July 22, 2021) (Doc. 27),[9] do not compel a different result because those statements were made in the context of a motion to transfer venue, see Richards v. United States, 369 U.S. 1, 9 n.20 (1962) ("[The] considerations underlying the problem of venue are substantially different from those determining applicable

---

[9] This court can, and does, take judicial notice of these statements because they are matters of public record. See Mobley v. Estes, 1:17CV114, 2018 WL 704900, at *4 (M.D.N.C. Feb. 2, 2018) (taking judicial notice of certified court documents at the motion to dismiss stage); see also Goldfarb v. Mayor & City Council of Bal., 791 F.3d 500, 508-09 (4th Cir. 2015).

law."). They do not address the key issue here: the location of Plaintiffs' injuries.

Therefore, this court finds that the place of injury is not so open to debate; rather, application of the lex loci test yields a clear answer. Accordingly, the lex loci rule applies to not only Plaintiffs' common law counts, but also to Plaintiffs' NCUDTPA count—Count VII. Applying that rule requires that Count VII be dismissed in its entirety because Plaintiffs' injuries occurred in California and Florida, respectively, and therefore those states' laws apply. Applying the lex loci rule to Plaintiffs' North Carolina common law claims, contained in Counts IX-XVIII, requires the same result. Those counts will be dismissed insofar as they assert causes of action under North Carolina law.

### 2. North Carolina Implied Warranty Count

The most significant relationship rule, not lex loci, applies to Plaintiffs' North Carolina implied warranty count. See Harco, 206 N.C. App. at 692, 698 S.E.2d at 723 ("[T]he choice of law that applies to warranty claims is determined by the most significant relationship test."). The parties agree that this is the applicable rule but disagree as to the outcome it requires. (Compare Def.'s Br. (Doc. 22) at 25-27, with Pls.' Resp. (Doc. 23) at 30-32.)

- 21 -

"The most significant relationship test . . . provides for the use of the substantive law of the state with the most significant relationship to the claim in question." SciGrip, 373 N.C. at 420, 838 S.E.2d at 343. In Boudreau, one of the most frequently cited North Carolina choice-of-law cases, "a North Carolina furniture manufacturer . . . manufactured [a] chair and sold it to a furniture store in Florida, which in turn sold it to" Florida consumers. 322 N.C. at 334, 368 S.E.2d at 853. The plaintiff was then injured by the chair in Florida. Id. at 333, 368 S.E.2d at 852. In its choice-of-law analysis, the North Carolina Supreme Court applied the most significant relationship test and decided that Florida law, not North Carolina law, applied. Id. at 338-39, 368 S.E.2d at 855-56. The court examined "the place of sale, distribution, delivery, and use of the product, as well as the place of injury." Id. at 338, 368 S.E.2d at 855-56. It noted that "the law of the place of distribution should be supreme in products liability cases," especially "with respect to breach of warranty claims." Id. at 338-39, 368 S.E.2d at 856. This is because "[a] state's interest in enforcing warranties involves protection of its citizens from commercial movement of defective goods into that state." Id. at 339, 368 S.E.2d at 856. The court also commented that the place of sale was important because "[t]he state in which a sales contract is

consummated has a significant interest in applying the social and economic policies embodied in its own law of warranty." Id.

Applying Boudreau's most significant relationship analysis here dictates that California and Florida law must apply. Those are the states where the sale was consummated for Plaintiffs' respective fire extinguishers. (FAC (Doc. 20) ¶¶ 8, 10.) Most importantly, those states are also the place of distribution. Although Plaintiffs argue that "it seems likely . . . that Kidde distributed its fire extinguishers from North Carolina," (Pls.' Resp. (Doc. 23) at 31 (emphasis added)), Boudreau establishes that what matters is not the state where the product was distributed from, but rather the state where the product was distributed into. See 322 N.C. at 338-39, 368 S.E.2d at 856 ("[T]he law of the place of distribution should be supreme in products liability cases. This is particularly true with respect to breach of warranty claims [because] [a] state's interest in enforcing warranties involves protection of its citizens from commercial movement of defective goods into that state.") (emphasis added) (internal citations omitted). Moreover, California and Florida are also where Plaintiffs' injuries occurred, see supra Section IV.B.1, and for Plaintiff Taylor, California was where she (attempted) to use her defective fire extinguisher, (FAC (Doc. 20) ¶ 9).

- 23 -

California and Florida law therefore apply to Plaintiffs'
implied warranty claims, and Count VIII, Plaintiffs' North
Carolina implied warranty claim, will be dismissed.

## C. **Timeliness**

Defendant argues that several counts should be dismissed as
time barred, (Def.'s Br. (Doc. 22) at 27–35), and that this
statute of limitations defense is "apparent on the face of the
complaint," (id. at 27 (quoting Ott v. Md. Dep't of Public
Safety, 909 F.3d 655, 658 (4th Cir. 2018)).)

"[A] motion to dismiss filed under Federal Rule of
Procedure 12(b)(6), which tests the sufficiency of the
complaint, generally cannot reach the merits of an affirmative
defense, such as the defense that the plaintiff's claim is time-
barred." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir.
2007) (en banc). The only exception to this general rule is "in
the relatively rare circumstances where facts sufficient to rule
on an affirmative defense . . . 'clearly appear on the face of
the complaint.'" Id. (quoting Richmond, Fredericksburg & Potomac
R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

This court finds that this is not one of those rare cases
where the facts sufficient to rule on Defendant's statute of
limitations defense clearly appear on the face of Plaintiffs'
FAC. In response to Defendant's statute of limitations defense,

Plaintiffs assert that the fraudulent concealment doctrine and the discovery rule render their claims timely. (See Pls.' Resp. (Doc. 23) at 34-41; see also FAC (Doc. 20) ¶¶ 109-14.) There are facts absent from the FAC's face that are necessary to determine whether fraudulent concealment and/or the discovery rule apply to prevent Plaintiffs' claims from being time-barred.[10] Whichever jurisdiction's statute of limitations, claim accrual, and tolling rules apply,[11] more face development is needed to evaluate Plaintiffs' factual and legal contention that even "through the exercise of reasonable diligence" they "could not

---

[10] Defendant argues that as a matter of law neither fraudulent concealment nor the discovery rule apply to Plaintiff Newlands's FDUPTA and Florida unjust enrichment claims. (See Def.'s Reply (Doc. 24) at 19.) To the contrary, many of the cases that Defendant itself raises suggest that—depending on the facts alleged—fraudulent concealment may properly be applied to FDUTPA claims. (See Def.'s Br. (Doc. 22) at 31-32 (discussing Padilla v. Porsche Cars N. Am., Inc., 391 F. Supp. 3d 1108, 1112-15 (S.D. Fla. 2019); Fisher v. Harley-Davidson Motor Grp., LLC, No. 2:19-CV-14154-ROSENBERG/MAYNARD, 2019 WL 8014364, at *2-3 (S.D. Fla. Oct. 18, 2019); Speier-Roche v. Volkswagen Grp. of Am., Inc., No. 14-20107-CIV, 2014 WL 1745050, at *6-7 (S.D. Fla. Apr. 30, 2014)).) Moreover, the discovery rule may apply to Plaintiff Newlands's unjust enrichment claim because, inter alia, even under Florida's version of the rule, delayed discovery postpones accrual of products liability actions and actions founded on fraud. See Davis v. Monahan, 832 So. 2d 708, 709-10 (2002) ("[F]or claims of fraud and products liability . . . the accrual of the causes of action is delayed until the plaintiff either knows or should know that the last element of the cause of action occurred.").

[11] The parties dispute the applicability of North Carolina's statute of limitations borrowing provision. (Compare Def.'s Br. (Doc. 22) at 27-28, with Pls.' Resp. (Doc. 23) at 32-33.)

reasonably discover . . . the Fire Extinguisher Defect prior to [2021]," (FAC (Doc. 20) ¶ 110). This contention will be better adjudicated on a more developed record. See Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 555, 558 (4th Cir. 2019) (reversing grant of a motion to dismiss for failure to establish fraudulent concealment's applicability and stating that "adequacy of a plaintiff's diligence is generally not amenable to resolution on the pleadings"); see also Jones v. BMW of N. Am., LLC, No. 1:20-cv-00057, 2020 WL 5752808, at *10 (M.D.N.C. Sept. 25, 2020) ("Although Jones must also ultimately show that he was unable to discover the defect through his own reasonable diligence, this issue is not well-suited for determination at the motion to dismiss stage.").

Therefore, at this early juncture, where the necessary facts have not been fully established, this court defers ruling on the timeliness of Plaintiffs' claims. See Fed. R. Civ. P. 12(i) (allowing courts to defer ruling on issues raised in Rule 12 motions).

### D. Rule 9(b)'s Particularity Requirement

Defendant argues that thirteen of Plaintiffs' claims must be dismissed for failure to satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement. (Def.'s Br. (Doc. 22) at 35–40.) Defendant argues that these claims are

based on affirmative misrepresentations but do not "state with particularity the circumstances constituting fraud or mistake." (Id. at 35 (quoting Fed. R. Civ. P. 9(b)).) Defendant further insists that the only misrepresentations Plaintiffs pleaded "are nonactionable puffery." (Id.) Plaintiffs do not dispute that Rule 9(b) applies to any of the thirteen claims; instead, they insist they have pled the claims with particularity and dispute Defendant's puffery assertion. (See Pls.' Resp. (Doc. 23) at 42–45.)

To meet Rule 9(b)'s heightened standard, "the plaintiff must sufficiently describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.' This minimum factual description is 'often referred to as the who, what, when, where, and how of the alleged fraud.'" Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 725 (M.D.N.C. 2015) (quoting U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)). In Xia Bi v. McAuliffe, the Fourth Circuit affirmed the trial court's dismissal of the plaintiffs' fraud claims for failure to plead those claims with particularity. 927 F.3d 177, 182–87 (4th Cir. 2019). In that case, the plaintiffs alleged they relied on various misrepresentations made by the defendants "during

- 27 -

roadshows, in interviews, and in written materials" before transferring money to the defendants. Id. at 185. The Fourth Circuit concluded that the plaintiffs' allegations were "general and conclusory" and did not satisfy Rule 9(b) because, inter alia, they did "not state which of the named plaintiffs claims to have relied on each statement." Id. (approvingly quoting the trial court).

Here, the FAC states that "[n]umerous" "materials Plaintiff[s] . . . reviewed and relied upon prior to purchase are identified below and include the labeling, packaging, and marketing materials for the H110G fire extinguisher." (FAC (Doc. 20) ¶¶ 8, 10.) The FAC then proceeds to list in fourteen numbered paragraphs a series of marketing materials and statements made by Defendant. (See id. ¶¶ 15-28.)

This approach does not satisfy Rule 9(b)'s particularity requirement. As in Xia Bi, Plaintiffs' allegations do "not state which of the named plaintiffs claims to have relied on each statement . . . or whether any plaintiff even relied on a given misstatement at all." 927 F.3d at 185. This court will therefore dismiss all thirteen of Plaintiffs' counts to which it is

uncontested that Rule 9(b) applies. Those are Counts I—II, IV-V, VII,[12] IX-XV, and XVI. (See Def.'s Br. (Doc. 22) at 36.)

### E.    **Economic-Loss Rule**

Defendant argues that Plaintiffs' failure to warn and negligent design defect claims should be dismissed under the economic-loss rule.[13] (Def.'s Br. (Doc. 22) at 40-42.)

The economic-loss rule generally holds that "[i]n actions for negligence, a manufacturer's liability is limited to damages for physical injuries; no recovery is allowed for economic loss alone." Aas v. Superior Court, 12 P.3d 1125, 1130-31 (2000); see also Tiara Condo. Ass'n v. Marsh & McLennan Co., 110 So. 3d 399, 401 (2013) ("Simply put, the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses."). This means that normally "[d]amages available under strict products liability do not include economic loss, which includes damages for inadequate value, costs of repair and replacement of the defective product or

_____

[12] This claim must also be dismissed on choice-of-law grounds. Supra Section IV.B.1.

[13] Defendant similarly argues that the economic-loss rule requires dismissal of many of Plaintiffs' fraud claims, (Def.'s Br. (Doc. 22) at 42-44), but that argument need not be addressed because those claims must be dismissed under Rule 9(b), see supra Section IV.D.

consequent loss of profits—without any claim of personal injury or damages to other property." <u>Jimenez v. Superior Court</u>, 58 P.3d 450, 482 (2002) (internal quotation marks omitted).

Here, there are no allegations that either Plaintiff suffered physical harm. The only allegations of physical injury or property damage concern other individuals—not the named Plaintiffs. (<u>See, e.g.</u>, FAC (Doc. 20) ¶¶ 34-39.) The FAC never alleges that Plaintiff Newlands attempted to use his fire extinguisher, let alone that it caused him physical injury or damaged his property. (<u>See id.</u> ¶ 10.) Plaintiff Taylor alleges more, but still no physical injury. (<u>Id.</u> ¶¶ 8-9.) Taylor alleges that her fire extinguisher failed when she attempted to use it to put out a fire in her garage. (<u>Id.</u> ¶ 9.) But eventually, the fire was put out by other means, and the FAC conspicuously fails to allege the fire caused any physical damage to anyone or anything. (<u>See id.</u> ¶ 9.)

Therefore, this court will dismiss Plaintiffs' negligent failure-to-warn and design defect counts, Counts XVII-XVIII.

### F.    <u>Third-Party Beneficiary Privity Exception</u>

Defendant argues that Plaintiffs' California and Florida Uniform Commercial Code implied warranty claims should be dismissed because neither Plaintiff alleges vertical privity,

and the third-party beneficiary exception is inapplicable.[14] (Def.'s Br. (Doc. 22) at 44-48.) Plaintiffs disagree, arguing that "the weight of authority supports the third-party beneficiary exception."[15] (Pls.' Resp. (Doc. 23) at 47.)

Courts are split on the viability of the third-party beneficiary exception under California and Florida law. Some federal courts have declined to find such an exception under California law because "no published decision of a California court has applied this doctrine in the context of a consumer claim against a product manufacturer." Seagate Tech., 233 F. Supp. 3d at 787; accord Corbett v. Pharmacare U.S., Inc., 544 F. Supp. 3d 996, 1010-11 (S.D. Cal. 2021); see also Loomis v.

---

[14] Defendant does not make this argument regarding Plaintiff Taylor's California implied warranty claim under the Song-Beverly Act. (See Def.'s Br. (Doc. 22) at 44-48.) To do so would be futile because that law's plain language does not require vertical privity. See Cal. Civ. Code § 1792 ("Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."); In re Seagate Tech. LLC Litig., 233 F. Supp. 3d 776, 786 (N.D. Cal. 2017) ("[A] California implied warranty claim under the Song-Beverly Act . . . does not require privity.").

[15] Despite the FAC's allegation that "Plaintiffs . . . had a contract with Kidde," (FAC (Doc. 20) ¶ 33), Plaintiffs only assert the third-party beneficiary exception in their response, (see Pls.' Resp. (Doc. 23) at 47-49). Because of this, and that this court presently finds the exception viable, whether Plaintiffs themselves had a contract with Defendant will not be addressed.

- 31 -

Slendertone Distrib., Inc., 420 F. Supp. 3d 1046, 1088-89 (S.D. Cal. 2019); Xavier v. Philip Morris USA, Inc., 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011). But, as recently as this year, other federal courts have found the exception viable under California law. E.g., Goldstein v. Gen. Motors LLC, No. 19cv1778-LL-AHG, 2022 WL 484995, at *10 (S.D. Cal. Feb. 16, 2022). These courts find a basis for the exception in a published California appellate court decision. E.g., Zeiger v. WellPet LLC, 304 F. Supp. 3d 837, 854 (N.D. Cal. 2018) ("Because Gilbert [Fin. Corp. v. Steelform Contracting Co., 145 Cal.Rptr. 448 (1978)] provides the authority for plaintiffs to plead the third-party beneficiary exception, I will allow them to proceed on their implied warranty claim in the absence of privity.").

Federal courts applying Florida law are likewise split as to whether the third-party beneficiary exception applies to implied warranty claims. Some have held that Florida allows a plaintiff to "pursue a claim of breach of implied warranty through third-party beneficiary law." Sanchez-Knutson v. Ford Motor Co., 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014); see also Pegasus Aviation IV, Inc. v. Aircraft Composite Techs., Inc., No. 1:16-cv-21255-UU, 2016 WL 3390122, at *5 (S.D. Fla. June 17, 2016) ("Plaintiff can state a claim for . . . breach of implied warranty of merchantability, even without direct

- 32 -

privity, as long [as] Plaintiff adequately alleges that it was a third party beneficiary . . . . "); <u>Carder v. Graco Children's Prods., Inc.</u>, 558 F. Supp. 3d 1290, 1319 (N.D. Ga. 2021). Other courts disagree and criticize these decisions for being insufficiently grounded in Florida state court rulings. <u>See Johnson v. Nissan N. Am., Inc.</u>, No. 17-cv-00517-WHO, 2018 WL 905850, at *5 (N.D. Cal. Feb. 15, 2018) (rejecting and criticizing the line of cases finding a third-party beneficiary exception under Florida law as "relying on another federal case from Louisiana that in turn cited a Florida case arising in a different context"); <u>In re Seagate Tech. LLC Litig.</u>, No. 16-cv-00523-JCS, 2017 WL 3670779, at *9 (N.D. Cal. Aug. 25, 2017) ("The district court's decision in <u>Sanchez-Knutson</u> [fails to] cite[] any Florida authority holding the third-party beneficiary exception applicable in a consumer products context.").

At this juncture, this court declines to definitively conclude which line of cases in Florida and California is more persuasive. That is because this argument is made pursuant to Rule 12(b)(6), meaning "every doubt [is] resolved in the pleader's favor." 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1357 (3d ed. 2022); <u>see also, e.g.,</u> <u>Marietta Area Healthcare, Inc. v. King</u>, Civil Action No. 5:21-CV-25, 2022 WL 1073335, at *2 (N.D.W. Va. Apr. 8, 2022)

("When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must . . . resolve all doubts . . . in favor of the plaintiff."). This court will therefore, at least at this time, find that Plaintiffs' third-party beneficiary theory may proceed.

Additionally, despite Defendant's protestations to the contrary, this court finds that Plaintiffs have pleaded sufficient facts to invoke the exception. The FAC has stated sufficient facts to plead the exception under California law because it alleges that Plaintiff Taylor "is a third-party beneficiary of Kidde's contracts with wholesalers or retail sellers" and that the fire extinguishers "were designed for the benefit of the end-user and not for the benefit of a wholesaler or retailer." (FAC (Doc. 20) ¶ 156.) "Other courts have found similar allegations sufficient to convey third-party beneficiary status." Goldstein, 2022 WL 484995, at *10 (collecting cases). The FAC also states sufficient facts to plead the exception under Florida law because it alleges the "when, how, and from whom," Carder, 558 F. Supp. 3d at 1319 (quoting Varner v. Domestic Corp., Civil Action No. 16-22482-Civ-Scola, 2017 WL 3730618, at *12 (S.D. Fla. Feb. 7, 2017)), Plaintiff Newlands purchased his fire extinguisher, (FAC (Doc. 20) ¶ 10 ("In 2012, Plaintiff Newlands purchased two Kidde model H110G fire

- 34 -

extinguishers with plastic handles from a brick-and-mortar Lowe's located in Orlando, Florida."). Moreover, the FAC makes allegations regarding "the end-user" or "ultimate consumers of the Fire Extinguishers," (id. ¶¶ 195, 229), that are similar to allegations made in cases where courts have found the third-party beneficiary exception adequately pled under Florida law, See Sanchez-Knutson, 52 F. Supp. 3d at 1234; accord Pegasus Aviation, 2016 WL 3390122, at *5. Therefore, this court declines to dismiss Plaintiffs' UCC implied warranty claims on privity grounds.

### G. **Pre-Suit Notice**

Defendant argues that Plaintiff Taylor's CLRA[16] and California implied warranty count, as well as Plaintiffs' MMWA count, should be dismissed for failure to provide the required notice and opportunity to cure. (Def.'s Br. (Doc. 22) at 48-51.)

Plaintiffs respond that these claims should not be dismissed for lack of notice because their counsel sent Defendant a demand letter in February 2021. (See Pls.' Resp. (Doc. 23) at 49-51; see also FAC (Doc. 20) ¶¶ 107-08, 136.) That letter was sent "pursuant to . . . the Consumers Legal Remedies

---

[16] Although Federal Rule of Civil Procedure 9(b) provides adequate grounds for dismissal of Plaintiff Taylor's CLRA claim, see supra Section IV.D, this court will nonetheless also address whether she complied with the CLRA's notice requirement.

Act, Civil Code § 1770 and U.C.C. § 2-607(3)(A) concerning breaches of warranty." (Id. ¶ 107 (alteration in original).) However, it was not explicitly sent in the name of the Plaintiffs in this case, rather it was sent "on behalf of . . . Daniel Onn, and all other similarly situated purchasers." (Id. (emphasis omitted).) In March 2021, Mr. Onn filed a putative class action against Defendant in the Northern District of California, (id.), but in September 2021, he voluntarily dismissed his suit without prejudice, Onn, No. 4:21-cv-02188-HSG (Doc. 29).[17] The FAC argues that based on the response to the February 2021 letter on Mr. Onn's behalf, "Kidde has demonstrated that a demand letter sent on behalf of the present Plaintiffs would have been futile. . . . Accordingly, Plaintiffs brought suit on the basis that Kidde had already received repeated notice and repeated its denials at every turn." (FAC (Doc. 20) ¶ 108.)

## 1. **CLRA Claim**

The CLRA requires that

> [t]hirty days or more prior to commencing an action for damages pursuant to [the CLRA], the consumer must notify the prospective defendant of the alleged violations . . . and "[d]emand that such person correct, repair, replace or otherwise rectify the goods or services alleged to be in violation" thereof. If, within this 30-day period, the

---

[17] This court takes judicial notice of this dismissal because it is a public record. See supra note 7.

> prospective defendant corrects the alleged wrongs, or
> indicates that it will make such corrections within a
> reasonable time, no cause of action for damages will
> lie. This notice requirement need not be complied with
> in order to bring an action for injunctive relief.

Kagan v. Gibraltar Sav. & Loan Assn., 676 P.2d 1060, 1063 (1984)

(internal citation omitted) (quoting Cal. Civ. Code

§ 1782(a)(2)). California courts have emphasized that "the

purpose of the [pre-suit notice] requirement is clear: 'to give

the manufacturer or vendor sufficient notice of alleged defects

to permit appropriate corrections or replacements.'" Stickrath

v. Globalstar, Inc., 527 F. Supp. 2d 992, 1001 (N.D. Cal. 2007)

(quoting Outboard Marine Corp. v. Superior Court, 124 Cal. Rptr.

852, 858 (1975)).

This court finds that Plaintiffs have failed to allege

sufficient facts establishing their compliance with the CLRA's

pre-suit notice requirement. They admit they did not send a pre-

suit letter on their own behalf. (See FAC (Doc. 20) ¶¶ 107-08.)

But problematically, the pre-suit letter on which they seek to

rely was sent by a plaintiff who voluntarily dismissed all his

claims against Defendant well over a month before Plaintiffs

filed suit. (Compare Onn, No. 4:21-cv-02188-HSG (Doc. 29), with

Doc. 1.) It would defeat the pre-suit notice requirement's

purpose of allowing Defendant to correct or replace the

allegedly defective products if this court were to allow

- 37 -

Plaintiffs to rely on a CLRA notice sent in connection with a different case by a claimant who withdrew his claims.

Lack of notice therefore provides additional grounds to dismiss Plaintiff Taylor's CLRA claim insofar as that claim seeks damages.[18] However, to the extent the CLRA claim seeks injunctive relief, (see FAC (Doc. 20) ¶ 137), lack of notice does not provide grounds for dismissal because such relief falls outside of the CLRA's pre-suit notice requirement, see Cal. Civ. Code § 1782(d).

### 2. **California Implied Warranty Claim**

Plaintiff Taylor asserts an implied warranty claim in Count III under two California statutes: California Commercial Code Section 2314 and the Song-Beverly Act. (FAC (Doc. 20) ¶¶ 153-166.) Plaintiffs do not dispute that Plaintiff Taylor's California Commercial Code Section 2314 implied warranty claim should be dismissed for lack of pre-suit notice. (See Pls.' Resp. (Doc. 23) at 49-51.) Considering this conspicuous non-opposition and Plaintiffs' express admission that they

---

[18] This claim, like all other dismissed claims, will be dismissed without prejudice. See infra Part V. As the California courts have instructed, a CLRA claim dismissed for lack of notice "must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements." Morgan v. AT&T Wireless Servs., Inc., 99 Cal. Rptr. 3d 768, 789 (2009). But "[i]f, before that 30-day period expires the defendant corrects the alleged wrongs or indicates it will correct the wrongs, the defendant cannot be held liable for damages." Id.

themselves never gave pre-suit notice, this court will dismiss Count III to the extent it alleges a claim under California Commercial Code Section 2314.

Nevertheless, this court will not dismiss Plaintiff Taylor's Song-Beverly Act claim. Plaintiffs oppose dismissal of that claim and advance the case of Mexia v. Rinker Boat Co., 95 Cal. Rptr. 3d 285 (2009). (Id. at 50–51.) Mexia establishes that Plaintiff Taylor's Song-Beverly Act claim is not subject to a pre-suit notice requirement, "[n]or is there any requirement that the buyer allow the seller or manufacturer an opportunity to repair the product prior to bringing an action for breach of the implied warranty of merchantability." 95 Cal. Rptr. 3d at 293. Defendant's statutory interpretation that would impose a pre-suit notice requirement on the Song-Beverly Act, (see Def.'s Br. (Doc. 22) at 50–51), directly conflicts with this holding, and as the Ninth Circuit has held "[a]bsent convincing evidence that the California Supreme Court would decide the issue in Mexia differently, its rule . . . must be followed," Daniel v. Ford Motor Co., 806 F.3d 1217, 1223 (9th Cir. 2015). Defendant also attempts to circumvent Mexia by arguing it only applies to latent-defect cases, which it insists this case is not because Plaintiff Taylor failed to notify Defendant even after she tried to use her extinguisher and it failed to function properly.

(Def.'s Br. (Doc. 22) at 50.) But Taylor's discovery of the defect five years after purchasing her extinguisher does not render the defect patent because "[i]n the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, <u>not by its subsequent discovery</u>." <u>Mexia</u>, 95 Cal. Rptr. 3d at 291 (emphasis added).

### 3. MMWA Claim

This court finds the MMWA claim raises a complicated issue the parties have not addressed. Therefore, this court does not presently find that Plaintiffs' MMWA claim must be dismissed for lack of pre-suit notice. The MMWA states that

> [n]o action (other than a class action . . .) may be brought . . . and a class of consumers may not proceed in a class action under such subsection with respect to such a failure [to provide the required notice and opportunity to cure] except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply. In the case of such a class action . . . such reasonable opportunity [to cure failure to comply] will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class.

15 U.S.C. § 2310(e). As explained by <u>In re Lumber Liquidators Chinese-Manufactured Flooring Durability Marketing & Sales Practices Litigation</u>, courts are split as to whether this provision allows

a plaintiff who has failed to adequately allege the
required notice under applicable state law for his own
claim [to] nevertheless prosecute warranty claims
under the MMWA as a class representative and, in that
capacity, provide the required notice and opportunity
to cure on behalf of the entire class, including,
presumably, himself. Some district courts have held
that MMWA claims by plaintiffs who have failed to
provide the required pre-suit notice under applicable
state law must be dismissed, even if those claims are
filed on behalf of a class.

    . . . .

Other courts have held that the deferred notice
provisions allow for precisely that—deferred notice on
behalf of a class after the filing of suit by a class
representative, presumably even a representative
plaintiff whose own claim would be barred under
applicable state law for failure to provide pre-suit
notice.

MDL No. 1:16md2743 (AJT/TRJ), 2017 WL 2911681, at *15–16 (E.D.

Va. July 7, 2017). In this case, as in Lumber Liquidators,

"[n]either party has . . . briefed how the deferred notice

provisions of the MMWA should be applied in this litigation."

Id. at *16. Considering this lack of briefing and uncertainty in

the law, this court will take the same approach as Lumber

Liquidators and address this issue "within the context of class

certification, where the Court will determine the suitability of

the particular Plaintiffs to serve as class representatives."

Id.

- 41 -

**H.    Subject Matter Jurisdiction for the MMWA Claim**

Defendant next argues that "this Court lacks subject-matter jurisdiction over plaintiffs' MMWA claims" because the Plaintiffs have failed to meet the statute's numerosity and amount-in-controversy requirements. (Def.'s Br. (Doc. 22) at 51-54.)

A plaintiff may file a MMWA claim in either state or federal court. 15 U.S.C. § 2310(d)(1). Such a suit, however, is not appropriately brought in a United States district court

    (B)  if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or

    (C)  if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

Id. § 2310(d)(3). This case only features two named plaintiffs, far less than the required one hundred. Plaintiffs argue that despite this shortcoming, this court still has subject matter jurisdiction over their MMWA claim pursuant to the Class Action Fairness Act ("CAFA"). (Pls.' Resp. (Doc. 23) at 51-52.) Defendant disagrees, arguing that Plaintiffs cannot avail themselves of CAFA because that law did not repeal—implicitly or otherwise—MMWA's requirements. (Def.'s Reply (Doc. 24) at 29; see also Def.'s Br. (Doc. 22) at 53-54.)

- 42 -

Courts are split on this issue. Compare Kuns v. Ford Motor Co., 543 F. App'x. 572, 574 (6th Cir. 2013) (determining that "CAFA effectively super[s]edes the MMWA's more stringent jurisdictional requirements" and "can render a district court a 'court of competent jurisdiction' and permit it to retain jurisdiction where the CAFA requisites are met but the MMWA requisites are not." (quoting Kuns v. Ford Motor Co., 926 F. Supp. 2d 976, 980 (N.D. Ohio 2013))), with Floyd v. Am. Honda Motor Co., 966 F.3d 1027, 1035 (9th Cir. 2020) ("CAFA does not demonstrate any intent by Congress to repeal or alter parts of the MMWA's jurisdictional requirements. Therefore, CAFA may not be used to evade or override the MMWA's specific numerosity requirement[s]."). The Fourth Circuit does not appear to have addressed this issue, but at least one Fourth Circuit district court has. In Chavis v. Fidelity Warranty Services, Inc., the court found that CAFA implicitly overrode MMWA's stricter requirements:

> It is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law. Witt v. United Cos. Lending Corp. (In re Witt), 113 F.3d 508, 513 (4th Cir. 1997) (citing United States v. Langley, 62 F.3d 602, 605 (4th Cir. 1995) (en banc)). The practical effect of this canon of statutory interpretation is that "absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." Id. (quoting Estate of Wood v. C.I.R., 909 F.2d 1155, 1160 (8th Cir. 1990)).

CAFA was passed with the clear intention of expanding "federal court jurisdiction over class actions . . . ." S. Rep. No. 109-14 at 42 (2005), 2005 U.S.C.C.A.N. 3, 40. Under the established framework for statutory interpretation, it is to be assumed that Congress was aware of the Act's strict provisions for maintaining a class-action in federal court. Congress was also presumed to be aware of section 2310(d)(1)(A) of the M/M Act and its recognition that jurisdiction is appropriate under the M/M Act "in any court of competent jurisdiction in any State or the District of Columbia." 15 U.S.C. § 2310(d)(1)(A). Accordingly, CAFA's grant of federal jurisdiction over <u>any</u> class-action in which the matter in controversy exceeds the sum or value of $5,000,000 and where any member of a class of plaintiffs is a citizen of a state different from any defendant necessarily includes qualifying class-actions filed pursuant to the M/M Act that fail to meet the strict provisions of 15 U.S.C. § 2310(1)(B). CAFA provides an alternate basis by which federal courts may become courts of "competent jurisdiction" under 15 U.S.C. § 2310(d)(1)(A).

415 F. Supp. 2d 620, 626 (D.S.C. 2006) (omission in original).

Defendant has not provided any in-circuit authority to the contrary.

In lieu of such authority, this court will not foreclose CAFA as an avenue for Plaintiffs to avoid MMWA's numerosity requirement. Additionally, Plaintiffs have stated sufficient facts to allege that they met CAFA's amount in controversy requirement. "[CAFA] tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the plaintiff's] proposed class and determine whether the resulting sum exceeds $5 million." <u>Standard Fire Ins. v. Knowles</u>, 568 U.S.

588, 592 (2013). Here, the aggregate value of the claims of each person in the proposed class allegedly exceed $5 million because this proposed class action concerns "sale of over 40 million plastic handle fire extinguishers" "sold at a price point of $12 to $200." (FAC (Doc. 20) ¶¶ 6, 30.) Thus, that Plaintiffs have failed to meet MMWA's requirements does not deprive this court of subject matter jurisdiction because they have met CAFA's requirements, which provides an alternate jurisdictional basis.

## I.   Prejudice and Leave to Amend

In summary, this court is dismissing all of Plaintiffs' claims except for Plaintiff Taylor's implied warranty Song-Beverly Act claim (Count III), Plaintiff Newland's Florida implied warranty claim (Count VI), and Plaintiffs' MMWA claim (Count XIX). Plaintiff may proceed on these three remaining claims. All other claims will be dismissed.

The dismissed claims will be dismissed without prejudice. Whether to dismiss with or without prejudice rests in the "sound discretion of the district court." Adbul-Mumit v. Alexandria Hyundai, LLC, 896 F.3d 278, 292 (4th Cir. 2018). Dismissal without prejudice is appropriate here because this court believes that some of Plaintiff's dismissed claims (e.g., certain claims dismissed on Rule 9(b) or lack of notice grounds)

could conceivably be revived if deficiencies in the FAC are cured.

Although in Plaintiffs' response they request "leave to replead" if certain claims are dismissed, (see, e.g., Pls.' Resp. (Doc. 23) at 43), those requests are denied without prejudice. This court is mindful of the Fourth Circuit's recent guidance in Britt v. DeJoy, 45 F.4th 790 (4th Cir. 2022) (en banc), but notes that all "request[s] for a court order must be made by a motion," Fed. R. Civ. P. 7(b)(1). "A request for leave to amend, in the event that any part of the complaint is dismissed, at the end of a plaintiffs' response brief opposing a motion to dismiss is not a proper motion for leave to amend." Allen v. Rentgrow, Inc., No. 1:20cv256, 2020 WL 4368651, at *3 (M.D.N.C. July 30, 2020). Moreover, "this district's local rules require a proposed amended pleading to be attached to any motion for leave to amend a pleading." Id. (citing Local Rule 15.1). "Because Plaintiffs have failed to comply with either of these requirements, the appropriate course of action is to deny the request without prejudice." Bryant v. Woodall, No. 1:16CV1368, 2022 WL 3465380, at *4 (M.D.N.C. Aug. 17, 2022).

## V.    CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss Plaintiffs' First Amended Class-Action Complaint, (Doc.

- 46 -

21), will be granted in part and denied in part. Defendant's
Motion to Dismiss Plaintiffs' Class-Action Complaint, (Doc. 16),
will be denied as moot.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss
Plaintiffs' First Amended Class-Action Complaint, (Doc. 21), is
**GRANTED IN PART** and **DENIED IN PART.** The motion is granted as to
Counts I-II, IV-V, and VII-XVIII, which are all hereby dismissed
without prejudice. The motion is also granted as to Count III,
insofar as it asserts a claim under California Commercial Code
Section 2314, but denied to the extent it asserts a claim under
the Song-Beverly Act. The motion is fully denied as to Counts VI
and XIX.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss
Plaintiffs' Class-Action Complaint, (Doc. 16), is **DENIED** as
moot.

This the 23rd day of September, 2022.

_____
United States District Judge

- 47 -