IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JANET TAYLOR and JAMES          )
NEWLANDS, individually and on   )
behalf of all others similarly  )
situated,                       )
                                )
          Plaintiffs,           )
                                )
     v.                         )          1:21-cv-839
                                )
WALTER KIDDE PORTABLE           )
EQUIPMENT, INC.,                )
                                )
          Defendant.            )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is a Motion to Dismiss Plaintiffs' Second Amended Class-Action Complaint filed by Defendant Walter Kidde Portable Equipment, Inc. (Doc. 37.) Plaintiffs Janet Taylor ("California Plaintiff") and James Newlands ("Florida Plaintiff") (together, "Plaintiffs") oppose this motion. (Doc. 43.) The motion will be granted in part and denied in part.

The claims for relief asserted in the Second Amended Class-Action Complaint are voluminous and based almost entirely on California and Florida state law. The claims and their disposition in this Memorandum Opinion and Order are summarized below.

| Claim | Plaintiff | Cause of Action | Relief Sought | Disposition |
|-------|-----------|-----------------|---------------|-------------|
| I | California | California Consumers Legal Remedies Act ("CLRA") | Injunctive | Motion Granted |
| II | California | California Unfair Competition Law ("UCL") | Equitable | Motion Granted |
| III | California | Breach of Implied Warranty under California Song-Beverly Act | Damages | Motion Denied |
| IV | California | California False Advertising Law ("FAL") | Equitable; Injunctive | Motion Granted |
| V | Florida | Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") | Damages | Motion Granted |
| VI | Florida | Florida Implied Warranty | Damages | Motion Denied |
| VII.A | California | Fraud (California common law) | Damages | Motion Granted |
| VII.B | Florida | Fraud (Florida common law) | Damages | Motion Granted |
| VIII.A | California | Constructive Fraud (California common law) | Damages | Motion Granted |
| VIII.B | Florida | Constructive Fraud (Florida common law) | Damages | Motion Granted |
| IX.A | California | Fraudulent Inducement — Concealment (California common law) | Damages | Motion Denied |
| IX.B | Florida | Fraudulent Inducement — Concealment (Florida common law) | Damages | Motion Denied |
| X.A | California | Fraudulent Inducement — Intentional | Damages | Motion Denied |

Case 1:21-cv-00839-WO-JLW   Document 46   Filed 03/29/24   Page 2 of 36

| | | Misrepresentation (California common law) | | |
|---|---|---|---|---|
| X.B | Florida | Fraudulent Inducement — Intentional Misrepresentation (Florida common law) | Damages | Motion Denied |
| XI.A | California | Money Had and Received (California common law) | Equitable | Motion Granted |
| XI.B | Florida | Money Had and Received (Florida common law) | Equitable | Motion Granted |
| XII.A | California | Fraudulent Misrepresentation (California common law) | Damages | Motion Granted |
| XII.B | Florida | Fraudulent Misrepresentation (Florida common law) | Damages | Motion Granted |
| XIII.A | California | Fraudulent Concealment or Omission (California common law) | Damages | Motion Granted |
| XIII.B | Florida | Fraudulent Concealment or Omission (Florida common law) | Damages | Motion Granted |
| XIV.A | California | Negligent Misrepresentation (California common law) | Damages | Motion Granted |
| XIV.B | Florida | Negligent Misrepresentation (Florida common law) | Damages | Motion Granted |
| XV.A | California | Quasi-Contract / Unjust Enrichment (California common law) | Equitable | Motion Granted |

| XV.B | Florida | Quasi-Contract / Unjust Enrichment (Florida common law) | Equitable | Motion Denied |
| XVI | Both Plaintiffs | Magnuson-Moss Warranty Act ("MMWA") | Damages | Motion Granted |

## I. <u>FACTUAL BACKGROUND</u>

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." <u>Ray v. Roane</u>, 948 F.3d 222, 226 (4th Cir. 2020) (quoting <u>King v. Rubenstein</u>, 825 F.3d 206, 212 (4th Cir. 2016)). The facts, accepted as true as alleged in the Second Amended Complaint, are as follows.

### A. <u>Parties</u>

Defendant Walter Kidde Portable Equipment, Inc. ("Defendant") is a corporation headquartered in Mebane, North Carolina, that manufactures and distributes fire extinguishers. (Second Amended Class-Action Complaint ("SAC") (Doc. 33) ¶ 24.)[1] In a variety of different marketing materials, Defendant has claimed that its fire extinguishers are high quality. (<u>See, e.g.</u>, <u>id.</u> ¶¶ 10–11, 19, 28–44, 47.) Contrary to those representations, many of Defendant's fire extinguishers had a

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 4 -

significant defect "involving their tendency of their nozzles to
frequently become detached, clogged, or require excessive force
to discharge causing a failure to activate during a fire
emergency." (Id. ¶ 48.) Defendant knew of this defect as early
as 2005 but did not fully disclose it to federal regulators
until August 2017.[2] (See id. ¶¶ 4, 69, 103.)

In November 2017, Defendant issued a comprehensive recall
for fire extinguishers containing the defect. (See, e.g.,
id. ¶ 3.) The recall included nearly 38 million units, among
them H110G models.[3] (Id. ¶¶ 56, 71.) Defendant's recall program
is flawed because many consumers (1) have not heard of it,
(2) were unable to establish contact with Defendant about the
recall, (3) experienced delays in securing replacement products,
or (4) received inadequate replacements. (See, e.g.,
id. ¶¶ 72-102.)

Plaintiff Janet Taylor ("California Plaintiff") lives in
California and purchased one of Defendant's H110G models from a
Walmart store in 2016. (Id. ¶ 9.) She did not hear of the recall
until sometime in 2021. (Id. ¶ 16.) In the spring of 2021, a

---

[2] In 2021, Defendant was ordered to pay a $12 million civil
penalty for failing to timely inform federal regulators about
the defect. (See SAC (Doc. 33) ¶ 71.)

[3] In 2015, Defendant instituted a smaller recall for nearly
4.6 million units. (SAC (Doc. 33) ¶ 61.) Demonstrated by the
need for the much larger 2017 recall, Defendant's 2015 recall
was far too narrow. (Id. ¶ 62-63.)

- 5 -

fire broke out in her garage. (Id. ¶ 15.) She followed the
instructions of how to use her H110G fire extinguisher, but when
she squeezed the handle to activate the flame-retardant spray,
only a "small drizzle" came out. (Id.) She eventually
extinguished the fire by other means, and she does not allege
the fire caused any physical injury or property damage. (See
id. ¶¶ 15-16.)

Plaintiff James Newlands ("Florida Plaintiff") lives in
Florida and purchased two H110G fire extinguishers from a Lowe's
store in 2012. (Id. ¶ 17.) The extinguishers were defective, but
Florida Plaintiff does not allege that he ever attempted to use
either of the extinguishers. (See id. ¶ 21.) Florida Plaintiff
did not hear of the recall until sometime in 2021 (Id. ¶ 23.)

## II. **PROCEDURAL HISTORY**

Plaintiffs filed their Second Amended Class-Action
Complaint, (SAC (Doc. 33)), in November 2022. Plaintiffs'
Complaint brings a litany of state law claims under both
California and Florida law, and one federal claim. The SAC
asserts sixteen claims for relief under California statutory and
common law, Florida statutory and common law, and the Magnuson-
Moss Warranty Act ("MMWA"). Plaintiffs bring each common law
cause as one claim, but in the interest of reducing confusion
and ensuring that the correct state law is applied, this court

- 6 -

has subdivided each common law claim so that it can separately

apply California and Florida principles of law.

| Claim | Plaintiff | Cause of Action |
|---|---|---|
| I | California | California Consumers Legal Remedies Act ("CLRA") |
| II | California | California Unfair Competition Law |
| III | California | Breach of Implied Warranty under California Song-Beverly Act |
| IV | California | California False Advertising Law |
| V | Florida | Florida Deceptive and Unfair Trade Practices Act |
| VI | Florida | Florida Implied Warranty |
| VII.A | California | Fraud (California common law) |
| VII.B | Florida | Fraud (Florida common law) |
| VIII.A | California | Constructive Fraud (California common law) |
| VIII.B | Florida | Constructive Fraud (Florida common law) |
| IX.A | California | Fraudulent Inducement — Concealment (California common law) |
| IX.B | Florida | Fraudulent Inducement — Concealment (Florida common law) |
| X.A | California | Fraudulent Inducement — Intentional Misrepresentation (California common law) |
| X.B | Florida | Fraudulent Inducement — Intentional Misrepresentation (Florida common law) |
| XI.A | California | Money Had and Received[4] (California common law) |
| XI.B | Florida | Money Had and Received (Florida common law) |
| XII.A | California | Fraudulent Misrepresentation (California common law) |
| XII.B | Florida | Fraudulent Misrepresentation (Florida common law) |
| XIII.A | California | Fraudulent Concealment or Omission (California common law) |

---

[4] Plaintiffs state in their response to Defendant's motion to dismiss that they "are not pursuing their claims for Money Had and Received," citing the fact that such claims are "subsumed" by other claims, including unjust enrichment, under both Florida and California law. (See Pls.' Resp. (Doc. 43) at 36 n.2 (citing Pincus v. Am. Traffic Sols., Inc., 986 F.3d 1305, 1318 (11th Cir. 2021); Liou v. Organfi, LLC, 491 F. Supp. 3d 740, 752 (S.D. Cal. 2020)).) Accordingly, Plaintiffs' money had and received claims are dismissed.

Case 1:21-cv-00839-WO-JLW   Document 46   Filed 03/29/24   Page 7 of 36

| XIII.B | Florida | Fraudulent Concealment or Omission (Florida common law) |
|--------|---------|----------------------------------------------------------|
| XIV.A | California | Negligent Misrepresentation (California common law) |
| XIV.B | Florida | Negligent Misrepresentation (Florida common law) |
| XV.A | California | Quasi-Contract / Unjust Enrichment (California common law) |
| XV.B | Florida | Quasi-Contract / Unjust Enrichment (Florida common law) |
| XVI | Both Plaintiffs | Magnuson-Moss Warranty Act ("MMWA") |

(See SAC (Doc. 33) ¶¶ 143-349.) Plaintiffs assert that this court has subject matter jurisdiction over their MMWA cause of action under 28 U.S.C. § 1331, and supplemental jurisdiction over all of the state law claims under 28 U.S.C. § 1367. (SAC (Doc. 33) ¶ 25.) Alternatively, Plaintiffs assert that this court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2),[5] as Plaintiffs bring a putative class action in this case. (Id. ¶ 26.)

Defendant moved to dismiss the SAC, (Def. Walter Kidde Portable Equipment, Inc.'s Mot. to Dismiss Pls.' Second Am. Class-Action Compl. ("Def.'s Mot.") (Doc. 37)), and filed a brief in support, (Def. Walter Kidde Portable Equipment Inc.'s Mem. in Supp. of its Mot. to Dismiss Pls.' Second Am. Class-Action Compl. ("Def.'s Br.") (Doc. 38)). Plaintiffs responded,

_____

[5] Because Plaintiffs' MMWA claim will be dismissed, the jurisdictional basis for their remaining claims is 28 U.S.C. § 1332(d)(2).

(Pls.' Opp'n to Def. Walter Kidde Portable Equipment, Inc.'s
Mot. to Dismiss Pls.' Second Am. Class-Action Compl. ("Pls.'
Resp.") (Doc. 43)), and Defendant replied, (Def. Walter Kidde
Portable Equipment Inc.'s Reply in Supp. of its Mot. to Dismiss
Pls.' Second Am. Class-Action Compl. ("Def.'s Reply") (Doc.
44)).

### III. <u>STANDARD OF REVIEW</u>

"To survive a [Rule 12(b)(6)] motion to dismiss, a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting
<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim
is plausible on its face "when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged" and
demonstrates "more than a sheer possibility that a defendant has
acted unlawfully." <u>Id.</u>

When ruling on a motion to dismiss, this court accepts the
complaint's factual allegations as true. <u>Id.</u> at 669. However,
even given the deferential standard allocated to pleadings at
the motion to dismiss stage, a court will not accept mere legal
conclusions as true, and "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, [will] not suffice." Id. at 678.

In addition to the normal pleading requirements of Rule 12(b)(6), fraud claims must satisfy Rule 9(b)'s heightened pleading standard. United States ex rel. Grant v. United Airlines, Inc., 912 F.3d 190, 196 (4th Cir. 2018). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) exists to give "defendants notice of their alleged misconduct, prevent[] frivolous suits, and eliminat[e] fraud actions in which all the facts are learned after discovery[.]" Grant, 912 F.3d at 196; see also United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013).

## IV. **ANALYSIS**

### A. **Magnuson-Moss Warranty Act**

Defendant argues that Plaintiffs' Magnuson-Moss Warranty Act claim fails for lack of pre-suit notice. (Def.'s Br. (Doc. 38) at 12.) Under the MMWA,

> No action . . . may be brought under subsection (d) for failure to comply with any obligation under any written or implied warranty . . . , and a class of consumers may not proceed in a class action under such subsection . . . , unless the [defendant] is afforded a reasonable opportunity to cure such

- 10 -

> failure to comply. In the case of such a class action
> . . . , such reasonable opportunity will be afforded
> by the named plaintiffs and they shall at that time
> notify the defendant that they are acting on behalf
> of the class.

15 U.S.C. § 2310(e). Defendant alleges that Plaintiffs "failed to provide pre-suit notice," therefore "they have no MMWA claims." (Def.'s Br. (Doc. 38) at 13.) Plaintiffs do not respond to this argument. (See Def.'s Reply (Doc. 44) at 24–25.) Accordingly, Plaintiffs' Magnuson-Moss Warranty Act claim (Claim XVI) is dismissed. See Sawyers v. United Parcel Serv., Inc., 18-cv-1037, 2019 WL 4305771, at *3 (M.D.N.C. Sept. 11, 2019) ("This district and others within the Fourth Circuit agree that failing to respond to an argument constitutes an abandonment of a claim.").

**B.    Claims for Damages**

### 1. Application of the Economic Loss Rule

Defendant argues that Plaintiffs' negligent misrepresentation and some common law fraud claims should be dismissed because they are barred by the economic loss rule. (Def.'s Br. (Doc. 38) at 23, 25.) Defendant also argues that Florida Plaintiff's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim is barred by the economic loss rule. (Id. at 27.)

The economic loss rule "bars tort claims that seek to recover only economic losses, that is, damage to a defective good caused by the defect." Sater v. Chrysler Grp. LLC, No. EDCV 14-00700, 2015 WL 736273, at *13 (C.D. Cal. Feb. 20, 2015) (citing Robinson Helicopter Co. v. Dana Corp., 102 P.3d 268, 272 (Cal. 2004) ("The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken promise.")). Economic loss is defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profit — without any claim of personal injury or damage to other property." In re Takata Airbag Prods. Liab. Litig., 193 F. Supp. 3d 1324, 1338 (S.D. Fla. 2016) (quoting Tiara Condo. Ass'n v. Marsh & McLennan Cos., 110 So. 3d 399, 401 (Fla. 2013)); see also Robinson Helicopter, 102 P.3d at 272.

### a. **Florida Claims**

Under Florida law, the economic loss rule bars fraud, fraudulent inducement, negligent misrepresentation, and fraudulent concealment products liability claims which seek to recover only economic losses. In re Takata, 193 F. Supp. 3d at 1338-39 (collecting cases and explaining that the Florida Supreme Court's jurisprudence has not excepted fraudulent

- 12 -

inducement and negligent misrepresentation claims from the economic loss rule's scope in the products liability context). The economic loss rule also bars recovery of damages for economic losses under the FDUTPA. See Karpel v. Knauf Gips KG, 635 F. Supp. 3d 1336, 1337-38 (S.D. Fla. 2022).

However, "[c]laims for fraudulent inducement can sometimes survive the economic loss rule . . . in situations in which the plaintiff can show that the fraudulent inducement is extraneous to the breach of contract." Behrman v. Allstate Ins. Co., 388 F. Supp. 2d 1346, 1349 (S.D. Fla. 2005), aff'd 178 F. App'x 862 (11th Cir. 2006) (citing Medalie v. FSC Secs. Corp., 87 F. Supp. 2d 1295, 1305 (S.D. Fla. 2000)). A "truly independent cause of action for fraudulent misrepresentation," which is not barred by the economic loss rule, is one "where the ability of one party to negotiate fair terms is undermined by the other's fraudulent behavior." Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So. 2d 74, 77 (Fla. Dist. Ct. App. 1997). "Nevertheless, not all claims for fraud in the inducement are exempt from the economic loss rule because 'one cannot avoid the economic loss rule by merely labeling a claim as fraud in the inducement, the fraud must be separate and distinct from the breach party's performance of the contract.'" Int'l Star Registry of Ill. v.

- 13 -

<u>Omnipoint Mktg., LLC</u>, 510 F. Supp. 2d 1015, 1025 (S.D. Fla. 2007) (quoting <u>Medalie</u>, 87 F. Supp. 2d at 1305).

When analyzing whether a fraudulent inducement claim is barred by or excepted from the economic loss rule,

> "[t]he court must determine if the alleged fraud is an act of performance or in a term of the bargain." . . . If it is alleged that the fraud relates to the performance of the agreement, then the economic loss rule will limit the parties to their contractual remedies. . . . If the alleged fraud, however, "relates to a misrepresentation which caused the plaintiff to enter into the agreement, then such fraud would be fraud in the inducement, which will not be barred by the economic loss rule."

<u>Reese v. JPMorgan Chase & Co.</u>, 686 F. Supp. 2d 1291, 1303 (S.D. Fla. 2009) (quoting <u>Warfield v. Stewart</u>, No. 2:07-cv-332-T-27, 2007 WL 3378548, at *4 (M.D. Fla. Nov. 12, 2007)). That said, if "the allegations contained in the fraudulent misrepresentation claim [are] no different than those the plaintiffs could have brought had the contract included a warranty of quality and performance," such a claim is barred by the economic loss rule. <u>See</u> <u>Int'l Star</u>, 510 F. Supp. 2d at 1025.

Here, there is no allegation that Florida Plaintiff suffered physical harm. The only allegations of physical injury or property damage concern other individuals — not Florida Plaintiff. (<u>See, e.g.</u>, SAC (Doc. 33) ¶¶ 50-55.) In fact, the SAC never alleges that Florida Plaintiff attempted to use his fire

- 14 -

extinguisher, let alone that it caused him physical injury or damaged his property. (See id. ¶¶ 17-23.) Despite this, Florida Plaintiff seeks damages for fraud, constructive fraud, fraudulent inducement by concealment, fraudulent inducement by intentional misrepresentation, fraudulent misrepresentation, fraudulent concealment or omission, and negligent misrepresentation. (See id. at 93-111.) He also brings a claim for damages under the Florida Deceptive and Unfair Trade Practices Act. (Id. ¶¶ 198-212.) Because Florida Plaintiff fails to allege any damages beyond the defective fire extinguishers themselves, his claims for fraud (Claim VII.B), constructive fraud (Claim VIII.B), fraudulent misrepresentation (Claim XII.B), fraudulent concealment or omission (Claim XIII.B), and negligent misrepresentation (Claim XIV.B), as well as his FDUTPA claim (Claim V), are dismissed as barred by the economic loss rule.

     As to Florida Plaintiff's claims for fraudulent inducement by concealment and fraudulent inducement by intentional misrepresentation, which can be excepted from the economic loss rule in certain circumstances, Florida Plaintiff alleges that Defendant "actively concealed" the fire extinguishers' defect from him by making "contrary representations about the safety and industry-leading quality of" the fire extinguishers "in

- 15 -

every communication it had with consumers, including Plaintiffs." (SAC (Doc. 33) ¶¶ 260-61, 263.) Florida Plaintiff alleges that he purchased the fire extinguishers based on these representations, and would not have purchased them if "the omitted information about the defective Fire Extinguishers [was] disclosed." (Id. ¶ 272.) Florida Plaintiff has sufficiently alleged that, based on Defendant's fraudulent concealment and intentional misrepresentation as to the fire extinguishers' quality, he was induced to purchase the fire extinguishers and would not have otherwise done so but for Defendant's fraudulent activity. Therefore, Florida Plaintiff has sufficiently alleged truly independent causes of action for fraudulent inducement by concealment (Claim IX.B) and by misrepresentation (Claim X.B), and those claims are not dismissed.

b. **California Claims**

The California Supreme Court has recognized "an exception to the economic loss rule for fraudulent inducement claims." Friche v. Hyundai Motor, Am., No. SACV 21-01324, 2022 WL 1599868 (C.D. Cal. Jan. 28, 2022) (citing Robinson Helicopter, 102 P.3d at 276). However, the Robinson Helicopter exception to the economic loss rule for fraudulent inducement claims is "narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose

- 16 -

a plaintiff to liability for personal damages independent on the plaintiff's economic loss." Robinson Helicopter, 102 P.3d at 276 (emphasis added). Therefore, in California, the economic loss rule applies to all tort claims except those "where the contract was induced by affirmative fraudulent misrepresentations." Cho v. Hyundai Motor Co., 636 F. Supp. 3d 1149, 1161 (C.D. Cal. 2022).

Similarly to Florida Plaintiff, California Plaintiff does not allege that she suffered physical harm as a result of the fire extinguishers' defect, and the only allegations of physical injury or property damage caused by the defect concern other individuals. (See, e.g., SAC (Doc. 33) ¶¶ 50-55.) California Plaintiff at least alleges she attempted to use the defective fire extinguisher, but still fails to allege physical injury or property damage. (Id. ¶¶ 15-16.) California Plaintiff alleges only that her fire extinguisher failed when she attempted to use it to put out a fire in her garage. (Id. ¶ 15.) Eventually, the fire was extinguished by other means, but the SAC conspicuously fails to allege that the fire caused physical damage to anyone or anything. (See id. ¶¶ 15-16.)

Like Florida Plaintiff, California Plaintiff brings claims seeking damages for fraud, constructive fraud, fraudulent inducement by concealment, fraudulent inducement by intentional

- 17 -

misrepresentation, fraudulent concealment or omission, and negligent misrepresentation. (See id. at 93-111.) As discussed above, because California Plaintiff fails to allege any damages beyond her defective fire extinguisher itself, her claims for fraud (Claim VII.A), constructive fraud (Claim VIII.A), fraudulent misrepresentation (Claim XII.A), fraudulent concealment or omission (Claim XIII.A), and negligent misrepresentation (Claim XIV.A), are dismissed as barred by the economic loss rule.

California Plaintiff raises the same allegations for her fraudulent inducement claims as Florida Plaintiff: Defendant "actively concealed" the fire extinguisher defect from California Plaintiff by making "contrary representations about the safety and industry-leading quality of" the fire extinguishers "in every communication it had with consumers, including Plaintiff[]." (SAC (Doc. 33) ¶¶ 260-61, 263.) California Plaintiff alleges that she purchased the fire extinguisher based on these representations, and would not have purchased them if "the omitted information about the defective Fire Extinguishers [was] disclosed." (Id. ¶ 272.) California Plaintiff has sufficiently alleged that Defendant's fraudulent concealment and intentional misrepresentation as to the quality of the fire extinguisher induced her to purchase it. Therefore,

- 18 -

the economic loss rule does not bar California Plaintiff's fraudulent inducement by concealment (Claim IX.A) and fraudulent inducement by misrepresentation (Claim X.A) claims.

## 2. <u>Recall Allegations and Remaining Damages Claims</u>

Defendant argues that Plaintiffs "fail to allege recoverable remedies under state law" in light of Defendant's recall program. (Def.'s Br. (Doc. 38) at 18.) Specifically, Defendant argues that "the ongoing existence of the recall means that [P]laintiffs have no recoverable damages or viable claims for restitution as a matter of state substantive law." (<u>Id.</u> at 19.) In response, Plaintiffs contend that "whether the recall is in any way sufficient to provide Plaintiffs with the benefit of their bargain is very much a fact in dispute, and thus cannot be decided on a Rule 12(b)(6) motion." (Pls.' Resp. (Doc. 43) at 12–13.)

In Defendant's view, Plaintiffs' "damages theory is that they were deprived of the benefit of the bargain because they paid for fire extinguishers that they 'would not have purchased' absent Kidde's alleged 'material misrepresentations and omissions.'" (Def.'s Br. (Doc. 38) at 19.) Therefore, "because the recall makes a replacement unit available for free, [P]laintiffs have no cognizable damages . . . as a matter of state law." (<u>Id.</u> at 20.)

Defendant relies largely on a Southern District of Florida case which held, at summary judgment, that California and Florida products liability plaintiffs'

> benefit-of-the-bargain damages are properly measured as the lesser of (1) the cost of repair or (2) the difference between the fair market value as warranted and the fair market value of the [product] as sold, reduced according to Plaintiffs' ability to mitigate or avoid damages. . . . [T]hat means evidence of Defendants' post-sale repairs is not only relevant to the calculation of Plaintiffs' damages, but eliminates those damages altogether.

In re Takata Airbag Prod. Liab. Litig., No. 14-cv-24009, 2022 WL 17546365, at *1 (S.D. Fla. Nov. 10, 2022). Importantly, however, the Takata court made this finding at the summary judgment stage, after sufficient discovery had been conducted to determine that the defendant airbag manufacturer "ha[d] either replaced or offered to replace Plaintiffs' allegedly defective airbags free of charge," leading the court to determine that the plaintiffs could not recover any damages as a matter of law. Id. at *2.

Here, at the motion to dismiss stage, Plaintiffs' allegations as to the inefficacy of Defendant's recall must be taken as true. Plaintiffs specifically allege that several consumers attempting to participate in Defendant's recall have been "either unable to establish contact with Kidde despite repeated attempts or encountered issues with the website or

customer service." (SAC (Doc. 33) ¶ 74.) Plaintiffs then cite to several consumer reports detailing unresponsive web pages and long wait times for replacement units that never arrive or, when they do arrive, are either already damaged or are the same model units that have been recalled. (See, e.g., id. ¶¶ 74-102.)

Defendant disputes Plaintiffs' allegations as to the adequacy of the recall program, stating that "[n]either plaintiff alleges participation in the recall, despite acknowledging its existence" and asserting that "the recall makes a replacement unit available for free." (Def.'s Br. (Doc. 38) at 15, 20.) Defendant insists that "[t]he cost to plaintiffs to replace their units is zero. . . . The recall remains open and available to this day. Plaintiffs need only fill out a brief form on a website and they will receive the benefit of their bargain: a working fire extinguisher." (Id. at 21.) Plaintiffs respond that, because of their allegations that the recall website did not work, Defendant failed to provide replacements for those who participated in the recall, and the recall replacements that were provided were insufficient, "whether the recall is in any way sufficient to provide Plaintiffs with the benefit of their bargain is very much a fact in dispute, and thus cannot be decided on a Rule 12(b)(6) motion." (Pls.' Resp.

(Doc. 43) at 12–13 (citing <u>Andrew v. Clark</u>, 561 F.3d 261, 267 (4th Cir. 2009)).)

This court agrees with Plaintiffs that factual issues exist as to the efficacy of Defendant's recall program and, therefore, Plaintiffs have plausibly alleged facts to suggest the recall program may not reasonably result in the benefit of Plaintiffs' bargain. Whether Plaintiffs' allegations are true, or whether Defendant can present evidence to rebut Plaintiffs' allegations, are matters to be addressed at summary judgment.

### a. <u>Florida Claim: Breach of Implied Warranty</u>

Defendant argues that Florida Plaintiff's implied warranty claim fails for lack of privity and lack of manifestation of any defect. (Def.'s Br. (Doc. 38) at 28–32.) Florida Plaintiff disagrees, arguing that "the better-reasoned authority recognizes the third-party beneficiary exception to privity." (Pls.' Resp. (Doc. 43) at 19.)

"To state a legally cognizable claim for breach of implied warranty of merchantability (Fla. Stat. § 672.314) or breach of the implied warranty of fitness for a particular purpose (Fla. Stat. § 672.315), Plaintiffs must first allege that they had direct contractual privity with Defendants." <u>Hicks v. Bombardier Recreational Prods., Inc.</u>, --- F. Supp. 3d ----, 2023 WL 4763194, at *14 (S.D. Fla. July 26, 2023) (citing <u>Leon v. Cont'l</u>

- 22 -

AG, 301 F. Supp. 3d 1203, 1223 (S.D. Fla. 2017)). Further, "[t]he Florida Supreme Court has held that implied-warranty claims require a contractual relationship to meet the privity requirement." Id. (citing David v. Am. Suzuki Motor Corp., 629 F. Supp. 2d 1309, 1323 (S.D. Fla. 2009)).

Federal courts applying Florida law are split as to whether the third-party beneficiary exception applies to implied warranty claims. Some have held that Florida law allows a plaintiff to "pursue a claim of breach of implied warranty through third-party beneficiary law." Sanchez-Knutson v. Ford Motor Co., 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014); see also Pegasus Aviation IV, Inc. v. Aircraft Composite Techs., Inc., No. 16-cv-21255, 2016 WL 3390122, at *5 (S.D. Fla. June 17, 2016) ("Plaintiff can state a claim for . . . breach of implied warranty of merchantability, even without direct privity, as long [as] Plaintiff adequately alleges that it was a third party beneficiary[.]"); Carder v. Graco Children's Prods., Inc., 558 F. Supp. 3d 1290, 1319 (N.D. Ga. 2021) (applying Florida law).

Other courts disagree and criticize these decisions for being insufficiently grounded in Florida state court jurisprudence. See Rife v. Newell Brands, Inc., 632 F. Supp. 3d 1276, 1303-05 (S.D. Fla. 2022); Johnson v. Nissan N. Am., Inc.,

- 23 -

No. 17-cv-00517, 2018 WL 905850, at *5 (N.D. Cal. Feb. 15, 2018)
(rejecting and criticizing the line of cases finding a third
party beneficiary exception under Florida law as "relying on
another federal case from Louisiana that in turn cited a Florida
case arising in a different context"); In re Seagate Tech. LLC
Litig., No. 16-cv-00523, 2017 WL 3670779, at *9 (N.D. Cal. Aug.
25, 2017) ("The district court's decision in Sanchez-Knutson
[fails to] cite[] any Florida authority holding the third-party
beneficiary exception applicable in a consumer products
context.").

At this stage of the proceedings, Florida Plaintiff has
stated sufficient facts to allege that he falls within the
third-party beneficiary exception under Florida law because he
alleges the "when, how, and from whom," Carder, 558 F. Supp. 3d
at 1319, Florida Plaintiff purchased his fire extinguisher, (SAC
(Doc. 33) ¶ 17 ("In 2012, [Florida Plaintiff] purchased two
Kidde model H110G fire extinguishers with plastic handles from a
brick-and-mortar Lowe's located in Orlando, Florida.")).
Moreover, the SAC makes allegations regarding the "end-user" or
ultimate consumers of the Fire Extinguishers, (id. ¶ 217), that
are similar to allegations made in cases where courts have found
the third-party beneficiary exception adequately pled under
Florida law, see Sanchez-Knutson, 52 F. Supp. 3d at 1234; accord

Pegasus Aviation, 2016 WL 3390122, at *4. Therefore, Florida Plaintiff's implied warranty claim (Claim VI) is not dismissed.

   **b.**  **California Claim: Breach of Implied Warranty under the Song-Beverly Act**

   Defendant does not make the same argument for lack of privity regarding California Defendant's implied warranty claim under the Song-Beverly Act. (See Def.'s Br. (Doc. 38) at 5, 18–22) (mentioning the Song-Beverly Act only to recount the court's earlier disposition of Plaintiffs' First Amended Class-Action Complaint)). To do so would be futile, because the Song-Beverly Act does not require vertical privity. See Cal. Civ. Code § 1792 ("Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."). See also In re Seagate Tech. LLC Litig., 233 F. Supp. 3d 776, 786 (N.D. Cal. 2017) ("[A] California implied warranty claim under the Song-Beverly Act . . . does not require privity."). Defendant does not present any further argument for dismissal of California Plaintiff's Song-Beverly Act claim, therefore that claim (Claim III) is not dismissed.

- 25 -

## C.    <u>Claims for Equitable Relief</u>

### 1. <u>Florida Claim: Unjust Enrichment</u>

Defendant argues that Florida Plaintiff's claim for unjust enrichment should be dismissed because he not only fails to plausibly allege that he lacks adequate legal remedies, but also because "he does not allege the direct benefit required by Florida law." (Def.'s Br. (Doc. 38) at 13.)

"Florida courts have long recognized a cause of action for unjust enrichment 'to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity.'" <u>State Farm Fire & Cas. Co. v. Silver Star Health & Rehab</u>, 739 F.3d 579, 584 (11th Cir. 2013) (quoting <u>Butler v. Trizec Props., Inc</u>, 524 So. 2d 710, 711 (Fla. Dist. Ct. App. 1988)). Further, "[a]lthough '[i]t is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist[,] . . . that rule does not apply to unjust enrichment claims.'" <u>Tracfone Wireless, Inc. v. Simply Wireless, Inc.</u>, 275 F. Supp. 3d 1332, 1341 (S.D. Fla. 2017) (quoting <u>Marty v. Anheuser-Busch Cos.</u>, 43 F. Supp. 3d 1333, 1349 (S.D. Fla. 2014)).

To establish a claim for unjust enrichment under Florida law, Florida Plaintiff must show that (1) he conferred a benefit

- 26 -

on Defendant, who had knowledge of that benefit; (2) Defendant voluntarily accepted and retained the benefit conferred; and (3) "the circumstances are such that it would be inequitable for [Defendant] to retain the benefit without paying the value thereof [to Florida Plaintiff]." Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1337 (11th Cir. 2012); see also Hillman Constr. Corp. v. Wainer, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994).

Florida law is less than clear with regard to how a plaintiff may show a "direct benefit" as part of an unjust enrichment claim. Some courts have held that a plaintiff "may confer a direct benefit through indirect contact with a defendant through an intermediary." In re Takata Airbag Prods. Liab. Litig., 462 F. Supp. 3d 1304, 1328 (S.D. Fla. 2020); see also Romano v. Motorola, Inc., No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (holding no direct contact required for a direct benefit to be conferred); Melton v. Century Arms, Inc., 243 F. Supp. 3d 1290, 1306-07 (S.D. Fla. 2017) (same). Others hold that an allegation of indirect contact is insufficient, and the phrase "direct benefit" must be construed narrowly. See Neurosurgical Consultants of S. Fla., LLC v. United Healthcare Servs., Inc., No. 9:22-cv-81727, 2023 WL 2487257, at *7 (S.D. Fla. Feb. 21, 2023); John C. Nordt, III,

<u>M.D. & Assocs., P.A. v. Colina Ins. Ltd.</u>, No. 17-21226-CIV, 2018
WL 2688793, at *3-4 (S.D. Fla. Apr. 13, 2018).

At the motion to dismiss stage, this court finds that
Florida Plaintiff plausibly alleges a claim for unjust
enrichment under either interpretation of "direct benefit."
Based on the facts alleged, Florida Plaintiff conferred a direct
benefit to Defendant in the form of monetary payment for the
fire extinguishers that he purchased, Defendant knew of that
benefit, voluntarily accepted and retained that benefit, and in
these circumstances it would be inequitable for Defendant to
retain that monetary benefit because of the fire extinguishers'
defect. Accordingly, Florida Plaintiff's unjust enrichment claim
(Claim XV.B) is not dismissed.

    **2.** <u>**California Claims: Unfair Competition Law, False**</u>
<u>**Advertising Law, and Unjust Enrichment**</u>

Defendant argues that California Plaintiff's equitable
California Unfair Competition Law ("UCL"), California False
Advertising Law ("FAL"), and unjust enrichment claims fail
because California Plaintiff does not plausibly allege that she
lacks adequate legal remedies. (Def.'s Br. (Doc. 38) at 36.)

"In order to obtain equitable relief, Plaintiffs must lack
an 'adequate remedy at law.'" <u>Brown v. Food for Life Baking Co.,</u>
<u>Inc.</u>, 658 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (quoting <u>Mort v.</u>

- 28 -

U.S., 86 F.3d 890, 892 (9th Cir. 1996)). At the motion to dismiss stage, "where it is not apparent whether the remedies at law are sufficient, equitable restitution may be pled in the alternative." Id. at 743 (finding that Sonner v. Premier Nutrition Corp., 971 F.3d 834 (9th Cir. 2020) "is not a bar to restitution at this stage" because the unavailability of the Sonner plaintiff's adequate remedy at law resulted from the plaintiff choosing to dismiss a claim after surviving summary judgment and less than two months before trial was scheduled).

That said, "[t]he relevant question, however, is not whether [a plaintiff] has pleaded legal remedies, but whether he could have sought an adequate legal remedy." Guzman v. Polaris Indus. Inc., No. 8:19-cv-01543, 2021 WL 2021454, at *11 (C.D. Cal. May 12, 2021), rev'd on other grounds, No. 21-55520, 2022 WL 4547785 (9th Cir. Sept. 29, 2022) (citing Sonner, 971 F.3d at 844; Rhynes v. Stryker Corp., No. 10-cv-5619, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011)). Accordingly, a plaintiff who seeks legal damages "based on the same alleged misrepresentations at the heart of" her equitable UCL or FAL claims "indicates that an adequate remedy at law exists in the form of damages." Id.

Here, California Plaintiff has alleged that available legal remedies "are inadequate because they are not equally prompt and

- 29 -

certain and in other ways efficient as equitable relief . . .
because the standard that governs restitution is different than
the standard that governs damages." (SAC (Doc. 33) ¶¶ 171, 197.)
California Plaintiff further alleges that "the Court may award
restitution even if it determines that Plaintiff fails to
sufficiently adduce evidence to support an award of damages,"
"[d]amages and restitution are not the same amount," and
"significant differences in proof and certainty establish that
any potential legal claim cannot serve as an adequate remedy at
law." (Id.) These conclusory statements do not circumvent the
fact that California Plaintiff brings claims for damages under
the Song-Berly Act and claims for restitution under the UCL
and the FAL based on the same allegations, without offering
explanation as to how her restitution claims "arise from a
distinct theory of liability" from her damages claims. See
Guzman, 2021 WL 2021454, at *12.

Further, California Plaintiff fails to "add any factual
allegations to explain how monetary damages are inherently
inadequate to redress her alleged harm and still has not
demonstrated that there is an inherent limitation of the legal
remedy." Nacarino v. Chobani, LLC, 668 F. Supp. 3d 881, 893
(N.D. Cal. 2022) (emphasis added). "[I]n the Ninth Circuit, the
relevant test is whether an adequate damages remedy is

- 30 -

available, not whether the plaintiff elects to pursue it, or whether she will be successful in that pursuit," Mullins v. Premier Nutrition Corp., No. 13-cv-01271, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018), aff'd sub nom. Sonner, 971 F.3d at 834. Therefore, California Plaintiff's UCL (Claim II) and FAL (Claim IV) restitution claims are dismissed due to her failure to allege lack of an adequate legal remedy.

"Courts consistently have held that unjust enrichment is not a proper cause of action under California law."[6] In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., and Prods. Liab. Litig., 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010) (collecting cases). This is because "[t]he phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." Melchior v. New Line Prods., Inc., 131 Cal. Rptr. 2d 347, 357 (Cal. Ct. App. 2003). Instead, "[u]njust enrichment is 'a general principle, underlying various legal doctrines and remedies,' rather than a remedy itself." Id. (quoting Dinosaur Dev., Inc. v. White, 265

---

[6] Instead, California "recognizes the principal behind unjust enrichment by requiring 'restitution if [a defendant] is unjustly enriched at the expense of another.'" In re Takata Airbag Prods. Liab. Litig., 464 F. Supp. 3d 1291, 1316 (S.D. Fla. 2020).

Cal Rptr. 525, 537 (1989). Accordingly, California Plaintiff's
claim for unjust enrichment (Claim XV.A) is dismissed.

### D. **Claims for Injunctive Relief: California Consumers Legal Remedies Act and California False Advertising Law**

Defendant alleges that California Plaintiff "do[es] not
allege the imminent future harm required for [the] injunctive
relief" sought through the California Consumers Legal Remedies
Act and the California False Advertising Law. (Def.'s Br. (Doc.
38) at 8.) Defendant argues that California Plaintiff "allege[s]
only that [she] 'hopes to eventually trust Kidde's marketing' .
. . [b]ut injunctions do not issue based on allegations about
hopes and dreams." (Id. at 44.) Further, Defendant argues,
California Plaintiff is "not alleged to have been in the market
for fire extinguishers from Kidde since the mid-2010s." (Id.)
California Plaintiff responds that her allegations that she
hopes to trust Kidde's marketing in the future "are sufficient
to establish [her] standing to seek injunctive relief." (Pls.'
Resp. (Doc. 43) at 33.)

"Several other circuits have considered whether a
previously [but no longer] deceived consumer has standing to
seek injunctive relief and have held they do not." Davidson v.
Kimberly-Clark Corp., 889 F.3d 956, 970 n.5 (9th Cir. 2018)

(collecting cases from the Seventh, Second, and Third Circuits).
However,

> [s]ome courts have questioned this premise. As the
> Ninth Circuit has explained, "[k]nowledge that the
> advertisement or label was false in the past does not
> equate to knowledge that it will remain false in the
> future." . . . [A] plaintiff could plausibly allege
> "that she might purchase the product in the future,
> despite the fact it was once marred by false
> advertising or labeling, as she may reasonably, but
> incorrectly, assume the product was improved."

Rife v. Newell Brands, Inc., 632 F. Supp. 3d 1276, 1295 (S.D.
Fla. 2022) (quoting Davidson, 889 F.3d at 969, 970). That said,
"the plaintiff must at least 'allege[] an[] intent to purchase
[the] product in the future.'" Id. (quoting Nunez v. Saks Inc.,
771 F. App'x 401, 402 (9th Cir. 2019)); see also Guzman, 2021 WL
2021454, at *10 ("Though a previously deceived plaintiff suing
under the UCL, FAL, and CLRA may have standing to seek
injunctive relief, the plaintiff must still show that he faces
an imminent or actual threat of future harm caused by the
defendant's allegedly false advertising and that there is a
sufficient likelihood that he will again be wronged in a similar
way." (cleaned up)).

Here, California Plaintiff alleges that "[i]n light of
Kidde's pioneering legacy in fire and safety equipment, [she]
hopes to eventually trust Kidde's marketing, and hopes than an
injunction requiring Kidde to more effectively alert consumers

- 33 -

that they are at risk due to their fire extinguishers, will contribute to this goal." (SAC (Doc. 33) ¶ 16.) In her response, California Plaintiff adds that she "wish[es] to be able to rely on Kidde's marketing of fire extinguishers but cannot do so in the absence of an injunction requiring Kidde to be truthful[.]" (Pls.' Resp. (Doc. 43) at 34.) These allegations, California Plaintiff contends, "establish an injury — the inability to rely on Kidde's representations in the future, [Davidson, 889 F.3d at 971–72] — that would be redressed by an injunction requiring Kidde to make truthful representations on its products." (Id.)

In Davidson, which dealt with allegedly misleading packaging for "flushable" wipes, the plaintiff

> "continue[d] to desire to purchase wipes that are suitable for disposal in a household toilet," and "would purchase truly flushable wipes manufactured by [Kimberly-Clark] if it were possible to determine prior to purchase if the wipes were suitable to be flushed." Davidson regularly visits stores that sell Kimberly-Clark's flushable wipes but is unable to determine, based on the packaging, whether the wipes are truly flushable.

Davidson, 889 F.3d at 962. Determining that these allegations were sufficient to establish standing for injunctive relief, the Ninth Circuit explained that Davidson "properly alleged that she faces a threat of imminent or actual harm by not being able to rely on Kimberly-Clark's labels in the future." Id. at 967.

Establishing that injunctive relief <u>can</u> be available for a consumer "who learns after purchasing a product that the label is false," the Ninth Circuit explained that "[i]n some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." <u>Id.</u> at 969-70 (citing <u>Ries v. Ariz. Beverages USA LLC</u>, 287 F.R.D. 523, 533 (N.D. Cal. 2012); <u>Lilly v. Jamba Juice Co.</u>, No. 13-cv-02998, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015)).

Here, California Plaintiff seeks "an injunction that requires Kidde to more effectively alert consumers that they are at risk due to their fire extinguishers" so that she might "eventually trust Kidde's marketing." (SAC (Doc. 33) ¶ 16.) She does not allege that she intends to purchase a fire extinguisher from Defendant in the future. Under <u>Davidson</u>, these sparse and generalized assertions do not rise to the level of "plausible allegations" that California Plaintiff "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." <u>Davidson</u>, 889 F.3d 970. As a result, California Plaintiff does not adequately allege that she has standing to bring claims for

injunctive relief under the CLRA (Claim I) or the California FAL (Claim IV). Accordingly, these claims are dismissed.

V. **CONCLUSION**

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant Walter Kidde Portable Equipment, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Class-Action Complaint, (Doc. 37), is **GRANTED IN PART** and Claims I, II, IV, V, VII, VIII, XI, XII, XIII, XIV, XV.A, and XVI are **DISMISSED**.

This the 29th day of March, 2024.

_____
United States District Judge

- 36 -