# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JANET TAYLOR, and JAMES ) 
NEWLANDS, individually and on )
behalf of all others similarly situated, )
)
Plaintiffs, )
)
v. ) 1:21CV839
)
WALTER KIDDE PORTABLE )
EQUIPMENT, INC., )
)
Defendant. )

## ORDER AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Janet Taylor and Margaret E. Newlands' Motion to Substitute Party (Docket Entry 78 ("Motion for Substitution")) and Defendant's Motion for Sanctions for Willful Destruction of Evidence (Docket Entry 83 ("Motion for Sanctions")). For the following reasons, the undersigned recommends that this Court defer ruling on the Motion for Substitution as stated herein and orders that the Motion for Sanctions be denied.

## I.    BACKGROUND

The District Court's March 29, 2024, Order summarizes this action's relevant underlying factual background:

> Defendant Walter Kidde Portable Equipment, Inc. ("Defendant") is a corporation headquartered in Mebane, North Carolina, that manufactures and distributes fire extinguishers. (Second Amended Class-Action Complaint ("SAC") [(Docket Entry 33)] ¶ 24.)[1]  In a variety of different marketing

---

[1] All citations herein to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

1

materials, Defendant has claimed that its fire extinguishers are high quality. (*See, e.g.*, *id.* ¶¶ 10-11, 19, 28-44, 47.) Contrary to those representations, many of Defendant's fire extinguishers had a significant defect "involving their tendency of their nozzles to frequently become detached, clogged, or require excessive force to discharge causing a failure to activate during a fire emergency." (*Id.* ¶ 48.) Defendant knew of this defect as early as 2005 but did not fully disclose it to federal regulators until August 2017.[2] (*See id.* ¶¶ 4, 69, 103.)

In November 2017, Defendant issued a comprehensive recall for fire extinguishers containing the defect. (*See, e.g.*, *id.* ¶ 3.) The recall included nearly 38 million units, among them [certain] H110G models.[3] (*Id.* ¶¶ 56, 71.) Defendant's recall program is flawed because many consumers (1) have not heard of it, (2) were unable to establish contact with Defendant about the recall, (3) experienced delays in securing replacement products, or (4) received inadequate replacements. (*See, e.g.*, *id.* ¶¶ 72-102.)

Plaintiff Janet Taylor [("Taylor")] lives in California and [originally alleged that she] purchased one of Defendant's H110G models from a Walmart store in 2016. (*Id.* ¶ 9.) She did not hear of the recall until sometime in 2021. (*Id.* ¶ 16.) In the spring of 2021, a fire broke out in her garage. (*Id.* ¶ 15.) She followed the instructions of how to use her H110G fire extinguisher, but when she squeezed the handle to activate the flame-retardant spray, only a "small drizzle" came out. (*Id.*) She eventually extinguished the fire by other means, and she does not allege the fire caused any physical injury or property damage. (*See id.* ¶¶ 15-16.) Plaintiff James Newlands [("Mr. Newlands")] … live[d] in Florida and purchased two H110G fire extinguishers from a Lowe's store in 2012. (*Id.* ¶ 17.) The extinguishers were defective, but [Mr. Newlands did] not allege that he ever attempted to use either of the extinguishers. (*See id.* ¶ 21.) [Mr. Newlands] did not hear of the recall until sometime in 2021[.] (*Id.* ¶ 23.)

(Docket Entry 46 at 4-6.)

On October 28, 2021, Taylor and Mr. Newlands initiated the instant action. (Docket Entry 1.) Taylor and Mr. Newlands filed the SAC, which is currently the operative pleading in this action, on November 21, 2022. In the SAC Taylor and Mr. Newlands brought what

---

[2] In 2021, Defendant was ordered to pay a $12 million civil penalty for failing to timely inform federal regulators about the defect. (*See* SAC ¶ 71.)

[3] In 2015, Defendant instituted a smaller recall for nearly 4.6 million units. (SAC ¶ 61.) Demonstrated by the need for the much larger 2017 recall, Defendant's 2015 recall was far too narrow. (*Id.* ¶ 62-63.)

the Court construed as twenty-four state-law claims under California and Florida laws, and one federal claim. (Docket Entry 46 at 6.) Defendant moved to dismiss the SAC. (Docket Entry 37; *see also* Docket Entry 38.) The Court granted said motion as to all but seven of their claims. The following claims survive:

- III (California Breach of Implied Warranty under California Song-Beverly Act),
- VI (Florida Implied Warranty),
- IX.A (California Fraudulent Inducement — Concealment),
- IX.B (Florida Fraudulent Inducement — Concealment),
- X.A (California Fraudulent Inducement — Intentional Misrepresentation),
- X.B (Florida Fraudulent Inducement — Intentional Misrepresentation), and
- XV.B (Florida Quasi-Contract / Unjust Enrichment).

(Docket Entry 46 at 2-4, 36.) Thereafter, Defendant filed an Answer (Docket Entry 48) and this Court issued an Order approving the parties' amended Joint Rule 26(f) Report and Local Rule 5.5 Report (Docket Entry 54).

On August 26, 2024, Defendant filed a Suggestion of Death and Request for a Hearing ("Suggestion of Death") in which, pursuant to Federal Rule of Civil Procedure 25 ("Rule 25"), it notified the Court of its belief that Mr. Newlands passed away on January 7, 2023; made arguments about its concerns regarding the filings made by counsel for Mr. Newland during the 18 months since his death; and requested a status conference pursuant to Federal Rule of Civil Procedure 16. (Docket Entry 61.) Taylor filed a Response thereto, acknowledging Mr. Newlands' death and "ask[ing] the Court for leave to amend the operative Complaint to remove all facts specific to Mr. Newlands, drop all claims arising under Florida law, and then move to dismiss Mr. Newlands' claims against Defendant." (Docket Entry 62 at 5.) Defendant filed a Reply to said Response consenting to the dismissal of Mr. Newlands' claims and all claims arising under Florida law as forecasted by Plaintiffs, but reiterating its request for a status conference should such dismissal

3

not be made immediately. (Docket Entry 63.) Taylor subsequently filed a Motion to voluntarily dismiss Mr. Newlands' claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) ("Motion to Voluntarily Dismiss"). (Docket Entry 65; *see also* Docket Entry 66.)

A status conference was held on October 2, 2024, wherein the parties discussed Defendant's Suggestion of Death and the Motion to Voluntarily Dismiss. (Minute Entry dated 10/02/2024.) The parties were instructed to file supplemental briefs, and counsel for Plaintiffs was instructed to include a certification to the Court regarding reasonable efforts to locate the successor or estate representatives of Mr. Newlands and an explanation of such efforts. (*Id.*)

Accordingly, Defendant filed a Supplement indicating it had located information suggesting that Mr. Newlands' spouse was Margaret Newlands ("Ms. Newlands") and that it was undertaking to serve the Suggestion of Death on her. (Docket Entry 68 at 2.) "On October 11, 2024, [P]laintiffs' counsel represented that they had located Mr. Newlands's sister, Ellen (Newlands) Pawelski, who indicated that Mr. Newlands's wife, [Ms.] Newlands, is in fact still alive and residing in Florida." (*Id.*)

> A Supplement was subsequently filed in which it was stated that
>
> Plaintiff's counsel was able to successfully reach Ms. Newlands by phone and had an initial conversation. … Plaintiff's counsel learned that Ms. Newlands was aware of her husband's participation in this lawsuit, but her husband had not involved her in any way. Plaintiff's counsel told Ms. Newlands about the Court's order and explained that her husband's passing raised some issues related to the lawsuit that needed to be resolved.

(Docket Entry 69 at 2.)

Defendant subsequently filed a Response to the Motion to Voluntarily Dismiss in which it took "no position as to this motion," but stated that it "does believe that dismissal of Mr. Newlands'[ ]claims is appropriate[,]" and made arguments regarding the propriety of

4

various motions and orders given his death. (*See* Docket Entry 70.) In pertinent part, Defendant argued that it did not appear that Taylor and her counsel had the legal authority to dismiss claims on behalf of Mr. Newlands. (*Id.*)

Defendant then filed a Second Supplemental Brief regarding its Suggestion of Death in which it argued that "plaintiff's counsel states that they have been able to contact [Ms. Newlands] and inform her of the Suggestion of Death. As a result, the Court may dismiss this case under [Rule] 25(a) after the 90-day clock expires." (Docket Entry 72 at 1-2.) Defendant argues that

> [t]he recent developments confirm that dismissal pursuant to Rule 25, rather than Rule 41(a)(2), is the proper avenue here. According to plaintiff's counsel, Ms. Newlands now has actual knowledge of the Suggestion of Death, starting the 90-day period for substitution under Rule 25. In the alternative, if the Court believes that Ms. Newlands'[ ]actual knowledge is insufficient, [Defendant] respectfully requests that the Court order plaintiff's counsel to formally serve Ms. Newlands with a copy of the Suggestion of Death and file a certificate of service confirming the same.

(*Id.* at 4.) Defendant also argues that "Ms. Newlands knew about the lawsuit at the time of Mr. Newlands'[ ]passing almost two years ago and made no efforts to intervene or otherwise preserve the rights of Mr. Newlands'[ ]estate as they pertained to this lawsuit." (*Id.* at 5-6.)

Plaintiff subsequently filed another Supplement relating to Defendant's Suggestion of Death. (Docket Entry 73.) Therein, Plaintiff argues that "because a proper representative of Mr. Newland[s'] claims has been identified in [Ms.] Newlands, Rule 25 should be followed." (*Id.* at 2.) More specifically, Plaintiff argues that "Ms. Newlands may qualify as a proper substitute for Mr. Newlands under Rule 25 … she is a proper party because she is the sole named beneficiary of Mr. Newlands' will, and everything of his was passed directly to her." (*Id.* at 4.) Accordingly, Plaintiff also filed a Motion to Withdraw the Motion to Voluntarily

Dismiss ("Motion to Withdraw") (Docket Entry 74) and a Notice certifying that Ms. Newlands was served with a Suggestion of Death on October 26, 2024 (Docket Entry 75).

On January 20, 2025, Taylor and Ms. Newlands filed the motion to substitute Ms. Newlands for Mr. Newlands in the instant action pursuant to Rule 25(a). (Docket Entry 78.) This Motion is one of two currently before the Court and is discussed in greater detail below.

The next day, this Court issued a Text Order terminating as moot Defendant's Suggestion of Death, granting Taylor's Motion to Withdraw and thereby withdrawing the Motion to Voluntarily Dismiss. (Text Order dated 1/21/2025 (finding, among other things, that the filings represented that Taylor conceded that Rule 25 controls).)

On January 28, 2025, the parties filed a joint Motion to Vacate Federal Rule of Civil Procedure 56 ("Rule 56") Deadlines ("Motion to Vacate"). (Docket Entry 79.) On February 4, 2025, Defendant filed a Notice of Intent to file a Motion for Summary Judgment. (Docket Entry 80.) The next day, this Court issued an Order granting the Motion to Vacate to the extent that the deadlines for motions pursuant to Rule 56 are vacated during the pendency of the Motion for Substitution, and setting various motion deadlines if the Motion for Substitution is denied, or, alternatively, setting various discovery and motion deadlines if said Motion is granted; and providing that the Court retains discretion to shorten deadlines due to the age of the instant action. (Docket Entry 81.)

On February 10, 2025, Defendant filed a Response in Opposition to the Motion for Substitution (Docket Entry 82), to which Counsel for Plaintiffs subsequently filed a Reply (Docket Entry 85). On February 11, 2025, Defendant filed a Motion for Sanctions for Willful Destruction of Evidence ("Motion for Sanctions") (Docket Entry 83; *see also* Docket Entry

6

84) to which Plaintiffs subsequently filed a Response (Docket Entry 87), to which Defendant

filed a Reply (Docket Entry 88). This Motion is the second of two currently before the Court

and is discussed in greater detail below. Finally, court-ordered mediation was held on April

10, 2025, but it ultimately resulted in an impasse. (Docket Entry 89.)

## II.    ANALYSIS

### A.  Motion for Substitution of Ms. Newlands for Mr. Newlands

#### i.  Relevant Legal Standards

Rule 25(a)(1) provides as follows:

> If a party dies and the claim is not extinguished, the court may order substitution
> of the proper party. A motion for substitution may be made by any party or by
> the decedent's successor or representative. If the motion is not made within 90
> days after service of a statement noting the death, the action by or against the
> decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).[4] It is undisputed that Mr. Newlands' claim is not extinguished and that the

motion was timely. The only issue before the Court is whether Ms. Newlands is a proper substitute.

To determine who qualifies as either a "successor" or "representative" and is thus a "proper

party" for substitution, courts consider applicable state law. *Logan v. Smith*, No. 3:07-CV-1156-J-

JBT, 2016 WL 9115544, at *2 (M.D. Fla. Feb. 8, 2016) (unpublished) (citing *Hess v. Eddy*, 689 F.2d

---

[4] In 1963, the Supreme Court amended Rule 25(a)(1). *In re Baycol Prods. Litig.*, 616 F.3d 778, 783 (8th Cir. 2010). "The purpose of the 1963 amendments to Rule 25, which replaced a harsher prior rule regarding proper party plaintiffs, was 'to liberalize the rule and to allow flexibility in substitution of parties.'" *Id.* (collecting cases). The language of Rule 25(a)(1) is permissive; "[t]he decision whether to substitute parties lies within the discretion of the trial judge and he may refuse to substitute parties in an action even if one of the parties so moves." *Id.* (citing *Froning's, Inc. v. Johnston Feed Serv., Inc.,* 568 F.2d 108, 110 n.4 (8th Cir. 1978)). However, the Advisory Committee on the 1963 amendments to Rule 25 intended that motions to substitute be freely granted. *See* Fed. R. Civ. P. 25, advisory committee note of 1963 ("A motion to substitute made within the prescribed time will ordinarily be granted, but … it may be denied … in the exercise of a sound discretion if made long after the death … and circumstances have arisen rendering it unfair to allow substitution.").

977, 980 (11th Cir. 1982), *abrogated on other grounds by Wilson v. Garcia*, 471 U.S. 261 (1985)); *see also Baycol*, 616 F.3d at 787; *Wang v. Shun Lee Palace Rest.*, No. 17-CV-840 (VSB) (VF), 2025 WL 33482, at *3 (S.D.N.Y. Jan. 3, 2025); *Knauer v. Johns-Manville Corp.*, 638 F. Supp. 1369, 1387 (D. Md. 1986).[5]

Under Florida law, the following standards apply. If a personal representative has been appointed to represent the interests of a decedent, then said representative is a proper party for substitution. *Metcalfe v. Lee*, 952 So. 2d 624, 630 (Fla. 4th DCA 2007); *Boyer v. Boyer*, 182 So. 222, 223 (Fla. 1938) (concluding that, under Florida law, only a "legal representative" of the decedent is a proper party for substitution); *Schaeffler v. Deych*, 38 So. 3d 796, 800 (Fla. 4th DCA 2010) ("Generally, if the decedent's estate has been opened, then the personal representative should be substituted in place of the decedent; however, '[i]f no estate has been opened, then another appropriate representative, such as a guardian ad litem, will need to be substituted.' "[6] (citing

---

[5] *But see Janvey v. Adams & Reese, LLP*, No. 3:12-CV-0495-N, 2014 WL 12834493, at *3 (N.D. Tex. Oct. 3, 2014) (unpublished) (explaining that courts have generally interpreted Rule 25 to provide for substitution only of the decedent's legal representatives, but also noting that there is substantial support for interpreting Rule 25 to include primary distributees as proper parties for substitution; stating, "[i]t is … not clear whether the Court need look to state law at all in attempting to define 'successor.' "); *Perron on behalf of MFJ v. Travis*, No. CV 20-221-BAJ-EWD, 2023 WL 372064, at *2 (M.D. La. Jan. 24, 2023) (unpublished) ("Courts are split on whether to apply state law or federal law in determining proper parties for substitution.") (collecting cases); *Tabourne v. Tabourne*, No. CV 22-02358-ES-AME, 2023 WL 8664616, at *4 (D.N.J. Dec. 15, 2023) (unpublished) (same).

[6] *But see Gomez v. Fradin*, 199 So. 3d 554, 556 (Fla. Dist. Ct. App. 2016) (Warner, J., concurring specially) ("[The finding in *Vera* that a guardian ad litem must be substituted in the absence of an estate] appears to be dicta in the opinion, unsupported by any citation to authority. A guardian ad litem is not a legal representative of an estate. 'Guardian ad litem' means a person who is appointed by the court having jurisdiction of the guardianship, or a court in which a particular legal matter is pending to represent a ward in that proceeding. § 744.102(10), Fla. Stat. (2016). More importantly, nothing in rule 1.260 provides that the trial court has authority to appoint a representative of the deceased. The rule merely requires that the decedent be substituted by 'successors or authorized representatives.' Fla. R. Civ. P. 1.260(a)(1). In the case of a decedent, that requires the action of the probate court to open an estate and appoint a personal representative for the decedent."); *see also 9 Kings Hong Kong Ltd. v. Frederick*, No. 21-81109-CV, 2022 WL 22872013, at *3 (S.D. Fla. May 9, 2022) (unpublished) (tacitly acknowledging ambiguity in determining proper party for substitution under Rule 25 in Florida).

8

*Vera v. Adeland*, 881 So. 2d 707, 710 (Fla. Dist. Ct. App. 2004)); *see also Ballard v. Wood*, 863 So. 2d 1246, 1249 (Fla. 5th DCA 2004) (holding that trial court's failure to substitute guardian ad litem for incompetent defendant nullified subsequent proceedings); *Padgett v. Snyder*, No. 2:17-CV-14099, 2018 WL 3536316, at *4 (S.D. Fla. July 23, 2018) ("Ms. Padgett is not the appropriate party for substitution because there is nothing in the record to demonstrate that Ms. Padgett is Plaintiff's legal representative. Although the Court is sympathetic to Ms. Padgett's predicament, her status as Plaintiff's next of kin and successor qualifies her to move for substitution but not to be substituted as a proper party."); *cf. Metcalfe*, 952 So. 2d at 628 (discussing legal definition of "successors" as it pertains to Fla. R. Civ. P. 1.260(a)(1), a state rule that parallels Rule 25(a)).

Where a proposed substitute has not been appointed as the legal representative for the decedent's estate, they are not an appropriate party for substitution. *Logan*, 2016 WL 9115544 at *2. This is true whether the proposed substitute is awaiting an order of appointment, *Commodity Futures Trading Comm'n v. Larralde*, No. 6:23-CV-1445-WWB-DCI, 2024 WL 245808, at *1 (M.D. Fla. Jan. 23, 2024) (unpublished), or where no estate for said decedent has been opened at all. *Logan*, 2016 WL 9115544 at *2; *Eusepi v. Magruder Eye Inst.*, 937 So. 2d 795, 798 (Fla. Dist. Ct. App. 2006) ("[W]here the estate is not in existence at the time the court considers the motion [for substitution], the court should not enter an order granting the motion."). A proposed substitute's status as decedent's relative, apparent sole heir, and joint owner of his property does not make her his legal representative. *See id.* Nor is a perfunctory contention that a proposed substitute is the "surviving spouse" alone sufficient to make her a "successor" under Rule 25. *Larralde*, 2024 WL 245808 at *1-2; *see also Dukes v. Strand*, No. 3:15-CV-3600-BT, 2019 WL 2567687, at *2 (N.D. Tex. June 21, 2019) (unpublished) ("a surviving relative

9

with no other legal relationship to the deceased plaintiff is not necessarily a proper party") (collecting cases). Absent a demonstration of an applicable state-law basis for relief under Rule 25, a Court need not grant a motion for substitution. *See id.*[7]

The undersigned acknowledges the decision in *Rende v. Kay*, 415 F.2d 983, 984 (D.C. Cir. 1969), wherein the court recognized that the addition of the word "successor" in Rule 25(a)(1) could encompass "the distributee of an estate that had been distributed" as a proper party, and the line of cases that adhere to that finding. *See, e.g., Gronowicz v. Leonard*, 109 F.R.D. 624, 626 (S.D.N.Y. 1986); *Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F.Supp. 713, 716 (S.D.N.Y. 1993); *Ashley v. Ill. Cent. Gulf R.R. Co.*, 98 F.R.D. 722, 724 (S.D. Miss. 1983); *McSurely v. McClellan*, 753 F.2d 88, 98-99 (D.C. Cir. 1985).

"Together, these cases demonstrate, *under certain circumstances*, a person may be a "successor" under Rule 25(a)(1) if she is (1) the primary beneficiary of an already distributed estate, ... (2) named in a will as the executor of the decedent's estate, even if the will is not probated, ...or (3) the primary beneficiary of an unprobated intestate estate which need not be probated[.] *Baycol*, 616 F.3d at 785 (citations omitted) (emphasis added). Ultimately, however, none of these cases applied Florida-state law to the proper-party issue, and therefore they are inapposite to the instant action. *Wallace ex rel. Wallace v. Novartis Pharms. Corp.*, 984 F. Supp. 2d 377, 382 nn.3, 5 (M.D. Pa. 2013).

---

[7] The Court notes that cases applying Florida law have found that an action wherein a motion for substitution has been timely filed that lacks a proper legal representative should be abated until the estate or a proper legal representative is substituted. *Cope v. Waugh*, 627 So. 2d 136, 136 (Fla. 1st DCA 1993); *see also Floyd v. Wallace*, 339 So. 2d 653, 654 (Fla. 1976). Where there is no showing that a putative substitute's failure to open an estate was willful or deliberate, and where confusion exists as to which party is to open said estate, a court should abate rather than dismiss the action. *Mattick v. Lisch*, 304 So. 3d 32, 33 (Fla. Dist. Ct. App. 2018).

10

A court may exercise its discretion to permit a party moving for substitution to first move a probate court to be formally appointed a representative of the decedent's estate. *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1313 (S.D. Fla. 2019), *report and recommendation adopted*, No. 18-20829-CIV, 2019 WL 2254962 (S.D. Fla. Mar. 21, 2019) (dismissal inappropriate where "Plaintiff is actively seeking appointment to be the personal representative of the estate[;]" courts could stay proceedings for another court to appoint a personal representative or dismiss the case "where appointment as personal representative is speculative or unsuccessful"); *see also Legard v. EQT Prod. Co.*, No. 1:10CV00041, 2012 WL 933192, at *2 (W.D. Va. Mar. 20, 2012) (unpublished), *objections overruled sub nom. Adkins v. EQT Prod. Co.*, No. 1:10CV00041, 2012 WL 4458235 (W.D. Va. July 24, 2012) (finding that it was proper to permit plaintiffs to present themselves to the court to pursue the claim as class representatives, that motion for substitution could properly be granted prior to class certification where no real prejudice would befall defendant, and granting motion for substitution) (citing *Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259 (4th Cir.1981); *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F.Supp. 1404, 1409 (D. Md. 1984)); *Universitas Educ., LLC v. Granderson*, 98 F.4th 357, 375 (1st Cir. 2024) (proper for party to seek substitution even though nearly six years had passed since decedent's death); Fed. R. Civ. P. 25 advisory committee's note to 1963 amendment ("The amended rule establishes a time limit for the motion for substitution based not upon the time of the death, but rather upon the time information of the death as provided by the means of a suggestion of death upon the record, i.e., service of a statement of the fact of the death.") (internal citations omitted).[8]

---

[8] *See also In re Aredia & Zometa Prods. Liab. Litig.*, No. 03-06-0519, 2013 WL 4830912, at *1 (M.D. Tenn. Sept. 10, 2013) (unpublished) (granting motion for substitution and overruling Magistrate Judge's decision to dismiss said motion based on counsel's failure to keep in touch with his client, realize client

## ii. Discussion

"Plaintiff … Taylor and [Ms.] Newlands … move this Court to enter an order substituting [Ms.] Newlands, in her capacity as sole beneficiary to [Mr.] Newlands' estate and widow of [Mr.] Newlands, in place of plaintiff [Mr.] Newlands pursuant to Fed. R. Civ. P. 25(a)." (Docket Entry 78 at 1.) They argue that Plaintiff Taylor's counsel conducted an investigation and discovered that Mr. Newlands, who was a resident of Florida at the time of his death, was survived by his wife and that the two did not have any children. (*Id.* ¶ 4.) They further argue that Taylor timely served the Suggestion of Death on Ms. Newlands, that Mr. Newlands' claims against Defendant survive his death pursuant to Fl. St. § 46.021, and that Ms. Newlands (as the sole beneficiary to Mr. Newlands' will, because the assets were fully distributed, and because there was no need for the will to be probated) is Mr. Newlands successor or representative, such that substitution is appropriate under Rule 25(a). (*See id.* ¶¶ 6-14; *see also* Declaration of Margaret E. Newlands ("Newlands Decl.").)

In its Response in opposition to the Motion for Substitution, Defendant argues that Ms. Newlands is not a proper party for substitution under Florida State law and that the Motion for Substitution "is [p]articularly [i]mproper [i]n [t]he [c]ircumstances [o]f [t]his case." (Docket Entry 82 at 1-2.) Defendant argues that "Ms. Newlands acknowledges that she has not opened any estate for Mr. Newlands," and disputes her argument that a surviving spouse under Florida law automatically equals successor for Rule 25 purposes. (*Id.* at 5-13.) Defendant further argues that "counsel had no authority to act for the

---

died, promptly open an estate, obtain the appointment of a personal representative, and substitute said representative in the action).

deceased Mr. Newlands" during the 18 months between Mr. Newlands' death and counsel's acknowledgement of said death; specifically it argues that the Response filed in opposition to Defendant's Motion to Dismiss (Docket Entry 43) "was filed without authority." (*Id.* at 6, 13.) Defendant then suggests that Plaintiff's counsel failed to undertake a reasonable inquiry as required by Federal Rule of Civil Procedure 26 ("Rule 26") prior to serving initial disclosures on behalf of Mr. Newlands. (*Id.*) Defendant also suggests that Plaintiff's counsel violated North Carolina Rule of Professional Conduct 1.4(a)(3) ("Rule 1.4(a)(3)"), and argues that, taken together, these failings merit dismissal of the Motion for Substitution. (*Id.* at 14-17.) Again, Plaintiffs filed a Reply in opposition to Defendant's Response in which they dispute the contentions therein. (Docket Entry 85.)

### 1. The Motion for Substitution should not be dismissed.

At the outset, the Court finds that Defendant fails to cite any law that supports its contention that failure to speak with a client for 18 months merits dismissal of a Motion for Substitution. Defendant relies on *Schaeffler v. Deych* for the proposition that "[f]ailure to substitute the proper representative or guardian nullifies subsequent proceedings." 38 So. 3d 796, 800 (Fla. Dist. Ct. App. 2010). That reliance is misplaced. The quote from *Schaeffler* cites to *Ballard v. Wood*, 863 So. 2d 1246, 1249 (Fla. Dist. Ct. App. 2004), which in turn relies on *Cope v. Waugh*, 627 So. 2d 136 (Fla. 1st DCA 1993), which ultimately relies on *Floyd v. Wallace*, 339 So. 2d 653 (Fla. 1976). Each of these cases analyzed Fla. R. Civ. P. 1.260, which is a Florida Rule of Civil Procedure governing substitution of parties after death or incompetency whose language is substantially similar to that of Rule 25. *Valle v. Singer*, No. 3:11-CV-700-J-34TEM, 2011 WL 13186681, at *8 n.17 (M.D. Fla. Dec. 7, 2011) (unpublished) ("Florida law provides that a

13

survivor action must be prosecuted 'in the name of the person prescribed by law.' Fla. Stat. §
46.021. Rule 1.260(a), Florida Rules of Civil Procedure (Fla. Rule(s)), sets forth Florida's
*procedures* for substitution of parties upon the death of a party to a lawsuit. 'It is almost identical
to Federal Rule 25.' Fla. Rule 1.260 (Author's Comment—1967)." (emphasis added)).

"Under the familiar *Erie* doctrine, [federal courts exercising diversity jurisdiction] apply
state substantive law and federal procedural law when reviewing state-law claims." *Kerr v.
Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016); *Eerie R.R. Co. v. Tompkins*, 304
U.S. 64, 72-73, (1938). Relatedly, in diversity cases, when a state procedural rule conflicts with
a federal procedural rule, the federal rule is controlling. *Hanna v. Plumer*, 380 U.S. 460, 471,
(1965). Here, the single federal claim brought by Plaintiffs has been dismissed, and diversity
is the only remaining basis for jurisdiction. (Docket Entry 46.) Thus, the federal procedural
rule, Rule 25—not the state rule, Fla. R. Civ. P. 1.260—controls, and Defendant's contention
that the proceedings subsequent to Mr. Newlands' death were nullified is unavailing. If there
were allegations or evidence that Plaintiff willfully misrepresented anything material to this
Court, attempted falsely feign ignorance of Mr. Newlands' death, or ever acted in any way
contrary to his interests, more consideration would be due Defendant's argument. *Cf. Barrett
v. Medicredit, Inc.*, No. 3:17-CV-3251-B, 2019 WL 1327072, at *12 (N.D. Tex. Mar. 25, 2019)
(unpublished). But Defendant provides neither, and said argument thus fails.[9]

---

[9] Moreover, a Florida State Court has ruled against automatic dismissal pursuant to Rule 1.260, which
is consonant with the flexibility in Rule 25 discussed above. *Stroh v. Dudley*, 476 So. 2d 230, 231 (Fla. Dist. Ct.
App.), *cause dismissed*, 482 So. 2d 348 (Fla. 1985) ("We hold that Rule 1.260 (a)(1) does not require mandatory,
non-discretionary dismissal even in light of the terminology 'shall be dismissed as to the deceased party.' The
law of this State is that this provision should be liberally interpreted and applied to allow substitution after
90 days upon a showing of excusable neglect, inadvertence or mistake.") (citations omitted).

14

Defendant's attempt to rely on Rule 26 and Rule 1.4(a)(3) as a basis for denying the Substitution Motion is also misplaced.[10] Defendant identifies no authority showing that either Rule can be or has ever been used as a basis for dismissal of a substitution motion, or for denial of any motion for that matter. The Court acknowledges Defendant's position that a diligent attorney should keep in frequent enough contact with his clients to enable him to know about the passing of his client before 18 months has passed. *Cf. In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760, 2014 WL 199844, at *4 (M.D. Tenn. Jan. 17, 2014), *report and recommendation adopted*, No. 3-06-MD-1760, 2014 WL 509507 (M.D. Tenn. Feb. 7, 2014) (unpublished) ("The Magistrate Judge cannot help noting that these substitution issues could be easily avoided if Plaintiff[']s counsel kept in closer contact with the clients and advised them on the need for a will and assisted whoever the client wanted to administer their estate in filing for probate and appointment as administrator or executor either directly or through a local attorney as appropriate.").

However, Plaintiff argues that that they did in fact attempt to contact Mr. Newland "regularly throughout the case and, as is typical in class actions, sometimes he did not respond. (Docket Entry 85 at 8.) They also dispute Defendant's characterization of their inquiry as unreasonable under Rule 26(g), arguing that "counsel conducted this reasonable inquiry as part of the earliest stages of the litigation, and thus had no reason to contact Mr. Newlands to confirm information that had already been gathered." (*Id.* at 9.) Plaintiffs also dispute that they lacked authority to act on behalf of Mr. Newlands after his passing, arguing that "[a]ppearing for the

---

[10] Upon alleged violation of the North Carolina Rules of Professional Conduct, the State Bar has discretion to initiate disciplinary proceedings. *See, e.g., N.C. State Bar v. Britt*, 243 N.C. App. 207, 778 S.E.2d 475 (2015) (alleging violation of, *inter alia*, Rule 1.4(a)(3)). Rule 26(g)(3) provides for sanctions for improper certification; Defendant has not moved for sanctions on that basis in this action. *See* Fed. R. Civ. P. 26(g)(3).

15

initial pretrial conference, agreeing to a designated mediator, and agreeing to a scheduling order are all standard actions attorneys regularly manage on behalf of their clients, and none of these constitute major case status updates that would require client sign-off." (*Id.*)

Defendant makes no allegation or argument that Plaintiff's counsel ever acted dishonestly or maliciously; the undersigned thus sees no reason why Plaintiff's contention that "Counsel acted as diligently as possible under this set of circumstances" (*id.* at 9-10) should not be taken at face value. Moreover, dismissal of the Substitution Motion under these circumstances would contravene the liberalization of Rule 25 and risk inappropriately permitting this matter to be disposed of on a technical procedural basis as opposed to on its merits. *Invs. Title Ins. Co. v. Davidson*, No. 3:08-CV-00243-FDW, 2008 WL 2626651, at *1 (W.D.N.C. June 20, 2008) ("justice is better served when controversies are decided on their merits rather than procedural technicalities." (citing *In re SPR Corp.*, 45 F.3d 70, 73 (4th Cir.1995)); *Baycol*, 616 F.3d at 785. Thus, ultimately, the undersigned finds Defendant's argument meritless, that the Motion for Substitution is not improper given the circumstances of this case, and that the purported bases for dismissal pursuant to Rule 25 and Rule 1.4(a)(3) fail.

### 2. This action should be stayed to permit Ms. Newlands to pursue probate proceedings.

The undersigned notes that the pertinent facts here appear to match those in *Rieck v. City of Daytona Beach*. No. 6:22-CV-454-RBD-EJK, 2023 WL 3726891, at *1 (M.D. Fla. May 30, 2023) (unpublished). There, the Court granted Petitioner Diane Rieck's motion for substitution, reasoning

> Petitioner Diane Rieck has not identified any legal interest that she has as successor, representative, or beneficiary. However, the Court acknowledges that Rule 25 is to be construed liberally to allow substitution in cases where the decedent's intent was clear. ... Here, it can be inferred that Thomas Rieck

16

> intended for his wife, Diane Rieck, to act as his substitute given that Diane Rieck
> was his sole beneficiary[.]

*Id.* (citing *Cables v. Smi Sec. Mgmt., Inc.*, No. 10-24613-CIV, 2012 WL 12863352, at \*1 (S.D. Fla. July 16, 2012) (unpublished) (citing *Baycol*, 616 F.3d at 785). This recent decision from a Florida federal court ultimately relies on *Baycol*, which, as stated above, the undersigned interprets as a decision requiring the application of state law. The analysis above concludes that Florida state law does not explicitly provide for substitution of a widow named as a distributee where no estate has been opened and where said widow has not been appointed the legal representative of the decedent. *Cf. Valle v. Singer*, 2011 WL 13186681 at \*8 (also relying on *Baycol* to support the finding that substitution may be by a distributee of a decedent's estate, as a "successor" and ultimately finding that the proposed substitute "has failed to allege or establish that he is [plaintiff's] personal representative, or that he in any way has the requisite capacity, under Florida law, to prosecute by substitution [plaintiff's] claim); *cf. United States v. Est. of Schoenfeld*, 344 F. Supp. 3d 1354, 1367 (M.D. Fla. 2018) (also relying on *Valle*, *Baycol,* and ultimately on the line of cases beginning with *Rende*, 415 F.2d 983, which, again, do not apply here because they ultimately do not apply Florida-state law to the proper-party issue, for proposition that distributee of distributed estate is proper party for substitution of decedent; finding that sole distributee had capacity to be sued under Rule 17).

Here, unlike in *Rieck*, the undersigned cannot state unequivocally that Mr. Newlands' intent was clear. The Court acknowledges Ms. Newlands' declaration that Mr. Newlands "died with a will[,]" that the "will was not probated[,]" that he "had no children[,]" that she is "his closest living heir," and that "[a]ll assets passed to me, as every asset at issue was jointly held, or had me as a named beneficiary." (Newlands Decl., Docket Entry 78-1 ¶¶ 3-5.) However, ultimately there are no allegations of any facts suggesting that Mr. Newlands ever explicitly

Case 1:21-cv-00839-WO-JLW   Document 90   Filed 05/28/25   Page 17 of 34

wished to designate Ms. Newlands as his substitute in this action should he pass away. (*See, e.g.*, Docket Entry 69 ("Plaintiff's counsel learned that Ms. Newlands was aware of her husband's participation in this lawsuit, but her husband had not involved her in any way.").)

Ms. Newlands has not refuted Defendant's argument that she "knew about [this action] at the time of Mr. Newlands's passing [more than] two years ago and made no efforts [at that time] to intervene or otherwise preserve the rights of Mr. Newlands's estate as they pertained to this lawsuit." (*See* Docket Entry 72 at 5-6; *see also* Docket Entry 82 at 9-10.) However, Defendants have not convincingly argued that any circumstances have arisen rendering it prejudicial or unfair to allow substitution (*see generally* Docket Entry 82), and it is still within the discretion of the Court to grant the Motion for Substitution. *Schein v. Norwegian Cruise Line Ltd.*, No. 08-23509-CIV, 2009 WL 737114, at *2 (S.D. Fla. Mar. 18, 2009) (unpublished); *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) (noting that under Rule 25, "the court 'may' order substitution but it is under no duty to do so"); *Gilmore v. Lockard*, No. 112CV00925NONESABPC, 2020 WL 3288417, at *3 (E.D. Cal. June 18, 2020) (unpublished) (exercising discretion in plaintiff's favor to allow substitution).

The Court is sympathetic to the statement that Ms. Newlands "seeks to honor [Mr. Newlands'] decision to participate in this case by substituting into the case as a Plaintiff herself." (Docket Entry 85 at 4.) Moreover, the Court is inclined to agree with the reasoning and determination made in *Rieck*. 2023 WL 3726891. Nevertheless, given the apparent existence of at least one living relative of Mr. Newlands (his sister, Ellen (Newlands) Pawelski (Docket Entry 68 at 2)), it would be inappropriate at this juncture to infer that Mr. Newlands intended for Ms. Newlands to act as his substitute merely because she was his sole beneficiary, since the Court "lacks the requisite facts necessary to make this determination, based on the present record." *See 9 Kings Hong Kong Ltd.*,

2022 WL 22872013 at *3. Accordingly, pursuant to the discretion conferred by Rule 25 and in recognition of Rule 25's liberalization to create flexibility in substitution of parties, the Court will recommend that the instant action be stayed for no more than sixty days in order to permit Ms. Newlands to pursue probate proceedings should she desire to do so.[11] *Kennedy*, 385 F. Supp. 3d at 1313; *see also Baycol*, 616 F.3d at 783; *see also* Fed. R. Civ. P. 25, advisory committee note of 1963.

### B. Motion for Sanctions for Spoliation

#### i. Relevant Legal Standards

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir.2001)). "The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). Moreover, "a court must find some degree of fault to impose sanctions." *Id.* "[W]hen imposing spoliation sanctions, 'the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct.' But dismissal should be avoided if a lesser sanction will perform the necessary function." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.1995)).

---

[11] *Accord Silas v. Sheriff of Broward County*, 55 F.4th 872, 874-77 (11th Cir. 2022) (discussing plaintiff's having been permitted to pursue being made a proper party for substitution under applicable state law by seeking to open an estate for the decedent and to be appointed as the personal representative of said estate as permitted by applicable state law); *Pedrosa v. BNSF Ry. Co.*, No. CV 21-9234-DMG (SKX), 2022 WL 20582031, at *2 (C.D. Cal. Sept. 15, 2022) (unpublished) (deferring ruling on motion to substitute and staying action pending resolution of widow's request for appointment as her late husband's personal representative in state probate court); *see also Logan*, 2016 WL 9115544, at *3.

Federal Rule of Civil Procedure 37(b) provides that when a party fails to obey an order to provide or permit discovery, the court "may issue further just orders" that may include prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence. Fed. R. Civ. P. 37(b)(2)(A)(ii). In evaluating the "spoliator's conduct" to determine the level of "egregious[ness]," *id.*, courts focus on the culpability of the spoliator's state of mind. *See, e.g., Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529-31 (D. Md. 2010). "In the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently culpable mindset." *Id.* at 529.

### ii. Discussion

#### 1. The Parties' Arguments

Defendant moves for sanctions[12] against Taylor following her "willful destruction of five fire extinguishers" (the "Discarded Fire Extinguishers") "for which she seeks compensation in this litigation." (Docket Entry 83 at 1.) Defendant argues that Plaintiff alleged that she bought a H110G model fire extinguisher "in or around September 2016[.]"[13] (Docket Entry 84 at 3.) Defendant further argues that

---

[12] Defendant purports to bring said motion "[p]ursuant to Federal Rule of Civil Procedure 7(b), LR 7.1, and the Court's inherent authority[.]" (Docket Entry 83 at 1.) Neither Rule cited addresses sanctions or evidence in any way and Defendant offers no explanation as to why these authorities were cited. As such, the Court will disregard them and apply the relevant legal standards.

[13] Taylor stated that the "fire extinguisher currently in [her] possession is a model H110G (No.E67610405 SN: 1411317175)." (Docket Entry 84-1 at 19.) The digits of this serial number indicate that this fire extinguisher was manufactured on November 13, 2017, meaning that Taylor cannot have purchased the extinguisher in September 2016. (Docket Entry 84 at 5.)

[Taylor] claimed that her H110G fire extinguisher was subject to the 2017 Recall and that it failed during a garage fire in 2021 as a result of a defect implicated in the 2017 Recall. (Doc. 33).

[She] did not base her claims on any additional fire extinguishers. Nor did [she] plead any additional fire extinguishers. (Doc. 33).

[Her] theory of defect relied solely on the 2017 Recall's existence. (Doc. 33).

[She] has pursued this litigation since October 2021 based only on the performance of her H110G. From this single allegation, she has sought to represent a nationwide class of consumers who purchased fire extinguishers subject to the 2017 Recall. …

[In] response to [Defendant's] discovery requests, [Taylor] admitted that her H110G fire extinguisher was in fact not subject to the 2017 Recall. [(Docket Entry 84-1 at 7, 82.)]

[Instead, Taylor] identified [the Discarded Fire Extinguishers].[14] (Docket Entry 84-1 at 18-19.)]

[The Discarded] Fire Extinguishers do not appear in any version of her complaint or in any prior briefing.

[Taylor] testified that she intentionally disposed of the [fire extinguishers] after she was aware of the 2017 Recall, after she had retained counsel in this matter, and after her counsel had asked her to take photographs of the five [discarded] fire extinguishers. [(Docket Entry 84-1 at 83-96, 99-100.)]

[Taylor] also testified that she intends to seek compensation for these five unpled and previously undisclosed [Discarded Fire Extinguishers. (Docket Entry 84-1 at 82.)]

(Docket Entry 83 ¶¶ 2-11.)

    In its Memorandum in support of said Motion,[15] Defendant argues that Taylor's

"central" allegation "that she purchased an H110G fire extinguisher that was subject to the recall

---

[14] Taylor identified these as follows: FA110G SN: 03472452058 ("Extinguisher 1"), FX340SC-2 SN: 1045222151 ("Extinguisher 2"), FA340SC-2 SN: 1046222151 ("Extinguisher 3"), FA5G SN: 0322181164 ("Extinguisher 4"), and FA5G SN: 0502181164 ("Extinguisher 5"). (Docket Entry 84-1 at 19.)

[15] To said Memorandum, Defendant attaches a Declaration of Cynthia Love in support of its Motion for Sanctions (Docket Entry 84-1 at 1-4), Taylor's Responses to Defendant's First Set of

and therefore defective … was false." (Docket Entry 84 at 2.)  It further argues that "the most straightforward way to resolve this issue is to hold Taylor to the allegations of [the SAC].  Taylor, however, has refused to disclaim reliance on these newly identified extinguishers in this litigation."  (*Id.*)  Defendant then argues that "Taylor's disposal of the … [f]ire [e]xtinguishers is textbook spoliation."  (*Id.* at 3.)  Defendant goes on to argue that

> Taylor's willful destruction of the extinguishers has prejudiced [Defendant's] ability to defend against her claims with respect to those extinguishers.  Had Taylor preserved this critical evidence, [Defendant] would have been able to test those extinguishers to evaluate whether they worked as intended—a fact that goes to the heart of many of Taylor's claims.  But [Defendant] is unable to test, evaluate, or even view these devices.  [Defendant] therefore seeks … an order barring Taylor from introducing evidence related to the [Discarded] Fire Extinguishers.

(*Id.*)  Defendant argues that "[w]hen the Court addressed Kidde's motion to dismiss, it expressly relied on Ms. Taylor's [false] allegation that she 'purchased the [H110G] model in 2016' and '[t]hat model was recalled in 2017.' "  (*Id.* at 4 (citing Docket Entry 25 at 11).)  Defendant further argues that Taylor retained the Discarded Fire Extinguishers until at least March 2022, and then subsequently disposed of them in her family's dumpster.  (Docket Entry 84 at 6-8, 14.)

Defendant then argues that the once these facts came to light, the parties met and conferred twice, and that "counsel for Taylor committed to confirm whether or not Taylor intended to pursue claims based on the [Discarded] Fire Extinguishers."  (*Id.* at 9.)  Defendant argues that it "also requested that Taylor provide any facts that could help explain the

---

Discovery Requests (*id.* at 5-16), Taylor's Supplemental Response to Defendant's First Set of Discovery Requests (*id.* at 17-23), screenshots of messages and photographs and metadata of the Discarded Fire Extinguishers (*id.* at 24-50), an email chain between the parties' counsels regarding the Discarded Fire Extinguishers (*id.* at 51-58; 69-72; 73-74), correspondence regarding the Discarded Fire Extinguishers (*id.* at 59-64; 65-68), and a transcript of a deposition of Taylor on November 19, 2024 (*id.* at 76-102).

discrepancies between the allegations in [the SAC] and the facts that have emerged through discovery. … To date, Taylor has provided no further information." (*Id.* at 9-10.)

Defendant proceeds to argue that Taylor had a duty to preserve the Discarded Fire Extinguishers, that her disposal of said evidence was intentional, that said evidence was relevant, that the disposal has prejudiced Defendant, and that no sanction lesser than barring the introduction of evidence related to the Discarded Fire Extinguishers will cure this alleged prejudice. (*See id.* at 11-22.) Specifically, Defendant argues that "Taylor's actions have stymied Kidde's ability to show that the [Discarded Fire Extinguishers] could operate as intended, causing Kidde irreparable prejudice." (*Id.* at 19.) Ultimately, Defendant "moves for sanctions prohibiting Taylor from introducing any evidence related to the [Discarded] Fire Extinguishers, which she willfully destroyed in violation of her preservation obligations." (*Id.* at 10, 22.)

Taylor filed a Memorandum in opposition to the Motion for Sanctions. (Docket Entry 87.)[16] Therein, she argues that

> Taylor did mistakenly dispose of five of her recalled Kidde fire extinguishers. [H]er disposal of those fire extinguishers was not in bad faith, but simply an honest mistake. Moreover, the disposal of the fire extinguishers will have no impact whatsoever on this case because Kidde has effectively conceded that those fire extinguishers are defective by initiating a nationwide recall. [Defendant] fails to demonstrate any real prejudice due to … Taylor's disposal of the recalled fire extinguishers. Plaintiff has produced photographs of the recalled fire extinguishers, responded to written discovery, and forthrightly answered questions about the fire extinguishers at her deposition. Kidde has not been harmed in any way by the accidental disposal of the recalled fire extinguishers.

(*Id.* at 2.)

---

[16] Taylor attaches a Declaration of Janet Taylor in support of her opposition to the Motion for Sanctions. (Docket Entry 87-1.)

23

Taylor goes on to argue that upon filing her original Complaint in this action, her "allegations were understandably focused on the Kidde H110G fire extinguisher that had failed during the fire in her garage." (*Id.* at 3.) Taylor then argues that

> After this litigation commenced, … Taylor provided the Kidde H110G fire extinguisher that failed during the fire to her attorneys. Taylor Decl. ¶ 6. She also disposed of the other Kidde fire extinguishers she owned because she mistakenly did not believe that they were necessary for this case. *Id.* ¶ 7. She also did not trust Kidde fire extinguishers any longer after what happened during the 2021 fire and was worried that if another fire started someone else might attempt to use the recalled fire extinguisher to put out the fire. *Id.* … Taylor did not realize that Kidde had recalled those fire extinguishers and that they should also have been provided to her counsel. *Id.* [She] took pictures of the fire extinguishers before she threw them out. *Id.*
>
> [Taylor] and her counsel did not learn that the other fire extinguishers had been recalled until discovery commenced last year. *Id.* ¶ 9. Similarly, it was not until discovery began that she learned that the Kidde H110G fire extinguisher that failed during the 2021 fire had not been recalled by Kidde. *Id.* ¶ 8. In fact, the Kidde H110G fire extinguisher was listed on the recall website as one of the recalled models. … Taylor did not realize this fire extinguisher was ineligible for the recall because (1) it failed in the same manner as the fire extinguishers listed in the recall when she attempted to use it to put out the garage fire; (2) it has the same model name as one of the fire extinguishers listed in the recall; (3) the metal handle has the look and feel of a plastic handle; and (4) the pull pin was discarded after she attempted to use the extinguisher so she could not compare it to the images of extinguishers supplied by Kidde in the recall notice. *Id.* ¶ 8. Moreover, [her] counsel were [sic] unaware the fire extinguisher was not part of the recall until discovery because there was an unfortunate typographical error in [her] initial intake notes which listed her Model H110G's 10-digit date code as 1411317165, indicating the fire extinguisher was manufactured in 2016 and therefore included in the recall. *Id.* ¶ 5. … Taylor had no intention of destroying evidence when she discarded the five recalled Kidde fire extinguishers. *Id.* ¶ 10.

Taylor goes on to argue that

> [Defendant] claims that it is prejudiced because it is "unable to test any allegation that the [Discarded] Fire Extinguishers were in fact defective." … But it is undisputed that Kidde recalled the fire extinguishers as defective. Whether … Taylor's fire extinguishers were defective or manifested a defect is not an issue in this case. Kidde recalled 37.8 million fire extinguishers because they are defective. Companies do not generally recall consumer safety products that are

24

not defective. Indeed, Kidde's recall website states that the recall [sic] fire extinguishers posed "a risk of failure to discharge." ... The recall website also describes the problem with the fire extinguishers as follows:

> Hazard: The fire extinguishers can become clogged or require excessive force to discharge and can fail to activate during a fire emergency. In addition, the nozzle can detach with enough force to pose an impact hazard.

The recall website also states that the recalled Kidde fire extinguishers "may not work properly in a fire emergency." ... [Defendant] cannot legitimately dispute that Ms. Taylor's fire extinguishers are defective. Indeed, no consumer would purchase a fire extinguisher that might not work in a fire. *See* Taylor Decl. ¶ 11 ("I would not have purchased any Kidde fire extinguisher if I had known that it may not work properly in a fire."). [Defendant] also claims that it has been deprived of learning whether Ms. Taylor's recalled fire extinguishers "had been used previously, had been stored improperly, or exhibited any other evidence of misuse or mishandling by the consumer." Mot. at 17. Once again, those are red herrings. Plaintiff has produced photographs showing the fire extinguishers, their serial numbers and their date codes, proving that she purchased them and that they were part of the recall. [She] has also provided detailed responses to Kidde's written discovery. [Defendant] also deposed ... Taylor and was able to ask her under oath how the fire extinguishers were stored, whether they had been used or anything else it wanted to know. [Defendant] has had ample opportunity to obtain evidence about the recalled fire extinguishers. ... Taylor's disposal of the recalled fire extinguishers will not impact [Defendant's] ability to defend itself in this case.

(*Id.* at 7-8 (some citations omitted) (emphasis removed).)

Taylor goes on to argue that she "did not gain an unfair litigation advantage" because neither party's "experts did [were able] to inspect the discarded fire extinguishers[.]" (*See id.* at 9.) Taylor further argues that "this is not an individual claim concerning a single defective fire extinguisher. In this class action, ... Taylor alleges that all of [Defendant's] recalled fire extinguishers were defectively designed." (*Id.*) Taylor also disputes Defendant's characterization of California law regarding defective product claims. (*See id.* at 9-11.) Taylor further argues that Defendant's proposed sanctions are unduly harsh and would unfairly impact the members of the class and the California subclass. (*See id.* at 11-12.)

Defendant filed a Reply in support of the Motion for Sanctions in which it reiterates arguments made in the Memorandum in support of the Motion for Sanctions and disputes the arguments made in Taylor's Response in opposition thereto. (*See generally* Docket Entry 88.) Specifically, Defendant argues that "[t]he inability to test a product is highly prejudicial in a case about whether that product is defective. The mere fact that a product was (potentially) subject to a recall does not establish that the product was defective[.]" (*Id.* at 2.) Defendant further argues that at most, "Taylor can assert that the [Discarded] Fire Extinguishers were part of a recalled line of products that may have been at risk of manifesting a defect. But because Taylor intentionally destroyed them, it is impossible for [Defendant] to show that Taylor's extinguishers were not defective." (*Id.* at 10.) Defendant goes on to argue that "Taylor cites no authority for the proposition that Kidde's recall constitutes an admission of a defect" and generally disputes Plaintiff's arguments regarding the law of defective products, spoliation, and class certification. (*See id.* at 10-17.) Defendant again "requests that the Court exclude all evidence related to the [Discarded] Fire Extinguishers." (*Id.* at 17.)

## 2. The Court's Decision

Here, the undersigned finds that the Motion for Sanctions is premature. "Spoliation motions should be 'filed as soon as reasonably possible after discovery of the facts that underlie the motion.'" *Groves Inc. v. R.C. Bremer Mktg. Assocs.*, No. 22 CV 50154, 2024 WL 4871368, at *5 (N.D. Ill. Nov. 22, 2024) (analyzing the issue of the proper timing of spoliation motions in detail and collecting cases) (citing *Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494 (D. Md. 2009)). However, "[i]f the parties are still in pretrial discovery and not near the date for filing summary judgment motions, some courts might find a spoliation motion premature." *Id.* (citing *Paul v. W.*

*Express, Inc.*, No. 6:20-CV-00051, 2021 WL 8083473, at *3 (W.D. Va. Oct. 27, 2021) (unpublished), *report and recommendation adopted*, No. 6:20CV00051, 2022 WL 838121 (W.D. Va. Mar. 21, 2022)). "This is particularly true if the summary judgment filing date is far in the future and no trial date is set." *Id.* (citing *Swindell Dressler Int'l Co. v. Travelers Cas. & Sur. Co.*, 827 F. Supp. 2d 498, 508 and n.13 (W.D. Pa. 2011) ("In order to properly determine if a spoliation inference or sanction is appropriate, the Court requires a complete factual predicate … Cases which have dealt with the issue of spoliation[ ]rely upon substantial factual records.") (collecting cases).

"A motion for sanctions for spoliation is more appropriate later in the case when the court is considering motions in limine and other trial administration topics." *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, No. CIV.A.05CV74594-DT, 2008 WL 5111894, at *2 (E.D. Mich. Dec. 2, 2008) (unpublished) (citing *Kia Motors America, Inc. v. Autoworks Distrib.*, 2007 WL 4372954, slip op. at *7 (D. Minn. Dec. 7, 2007) (denying without prejudice motion for sanctions for alleged failure to preserve evidence); *Thompson v. Jiffy Lube Int'l, Inc.*, 2007 WL 608343, slip op. at *4 (D. Kan. Feb. 22, 2007) (declining to rule on spoliation allegation because discovery currently limited to class certification issues, requested sanction too severe, and trial issues not sufficiently defined)). "A deferred ruling is especially preferred when the moving party has established only a suspicion of prejudice." *Almarri v. Gates*, 2008 WL 4449858, slip op. at *3 (D.S.C. Oct. 2, 2008).

"Federal courts have broad discretion in controlling their dockets. Courts also have a general duty to avoid deciding unnecessary issues. To that end, courts may sequence motion practice in an effort to avoid deciding unnecessary issues and will generally resolve trial related motions after it is clear that there will likely be a trial." *Kolas v. Wal-Mart Stores, Inc.*, No. 17-cv-1597, 2018 WL 11444060 (D. Nev. Mar. 23, 2018) (cleaned up); *see also PlayUp, Inc. v. Mintas*,

No. 221CV02129GMNNJK, 2024 WL 967904, at *1 (D. Nev. Feb. 6, 2024) (unpublished).

Where a proposed evidentiary sanction seeks to bar the allegedly spoliating party from presenting evidence, "a reasonable district judge may want the spoliation motion and summary judgment motion filed simultaneously and then, after reviewing the filings, decide which to address first." *Groves*, 2024 WL 4871368 at *6.[17]

Here, the undersigned acknowledges that the instant action is already more than three years old. However, several significant issues militate against granting the Motion for Sanctions at this juncture.

As a threshold matter, despite Defendant's contentions to the contrary, there is no conclusive evidence that the Discarded Fire Extinguishers were destroyed. "Discarding" or "disposing of" an item is not equivalent to "destroying" it.[18] It is undisputed that "Taylor threw the [Discarded] Fire Extinguishers in her family's dumpster." (Docket Entry 84 at 8, 14; Docket Entry 84-1 at 88-100.) Since the disposal of said extinguishers took place at "her family's dumpster[,]" presumably on Taylor's own property, the extinguishers could potentially still within her control and may not be subject to disturbance by others, and are thus possibly not destroyed. Therefore, the undersigned will permit Taylor to endeavor to cure the alleged spoliation by seeking to recover the Discarded Fire Extinguishers. *Cf. N. Am. Sci. Assocs., LLC v. Conforti*, No. 24-CV-

---

[17] Moreover, some "judges might want to simply take up a spoliation issue at trial while hearing evidence before deciding whether to give a jury adverse inference instructions because of a spoliation issue." *Groves*, 2024 WL 4871368 at *6 (collecting cases).

[18] The definition of "destroy" is "to ruin the structure, organic existence, or condition of[,]" *Destroy*, Merriam-Webster, https://www.merriam-webster.com/dictionary/destroyed; whereas the definition of "discard" is "to get rid of especially as useless or unwanted[,] *Discard*, Merriam-Webster, https://www.merriam-webster.com/dictionary/discard, and the definition of "dispose of" is "to get rid of." *Dispose of*, Merriam-Webster, https://www.merriam-webster.com/dictionary/dispose.

287 (JWB/ECW), 2024 WL 4903753, at *31 (D. Minn. Nov. 27, 2024) ("[G]iven that discovery is not complete and [given the absence of a finding] of intent to deprive as to the [evidence at issue], not to mention the incomplete record as to prejudice and whether some of the evidence at issue can be restored or replaced through additional discovery, it would be premature to award sanctions under the Court's inherent authority."); *Ol Priv. Couns., LLC v. Olson*, No. 2:21-CV-00455, 2024 WL 1973340, at *2 (D. Utah May 3, 2024) ("[Defendant's] request for sanctions is premature as it is unclear whether the information in question is lost completely or remains obtainable through other means."). Any such efforts to cure, whether successful or failed, should be addressed, including the change in condition, if any, of said fire extinguishers since their disposal, in future filings relating to Defendant's expected Motion for Summary Judgment.

Next, although the parties did apparently meet and confer as required by Local Rule 37.1 and cooperate in discovery as required by Federal Rule of Civil Procedure 37 (Docket Entry 84 at 9-10), Defendant represents that the effort is currently unresolved and ongoing, arguing that "Taylor has provided no further information" in response to Defendant's request that "Taylor confirm that she would not pursue any claims based on the Destroyed Fire Extinguishers[.]" (*See id.*) Plaintiff's Memorandum in Opposition to the Motion for Sanctions does not directly address the meet-and-confer issue or provide a clear answer to this request. (*See generally* Docket Entry 87.) "The good faith communication requirement is not merely technical but promotes the orderly resolution of discovery disputes[.]" *Mack v. Food Lion, LLC*, No. 5:23-CV-327-M, 2024 WL 4023782, at *2 (E.D.N.C. Aug. 29, 2024) (citing *Lloyd v. New Hanover Reg'l Med. Ctr.*, No. 7:06-CV-130-D, 2009 WL 674394, at *1 (E.D.N.C. Mar. 11, 2009)). "[T]he [C]ourt expects [Defendant] and opposing counsel to *fully exhaust* efforts to

29

resolve such disputes where they are able prior to filing discovery motions." *Id.* (emphasis added). "Accordingly, the motion for sanctions is denied as premature and for failure to comply with the [C]ourt's Local Rules." *Id.* The parties are directed to abide by these and all other applicable discovery rules moving forward. *See, e.g.*, M.D.N.C. LR 26.1(b)(1) ("The Court expects counsel to conduct discovery in good faith and to cooperate and be courteous with each other in all phases of the discovery process.").

Moreover, discovery is still incomplete, no definite deadlines have yet been established for filing summary judgment motions, and no trial date is set. Separate discovery phases for the issue of the recall and for the remaining merits and class discovery have been proposed and remain unresolved. (Docket Entry 53; Docket Entry 54; Text Order dated 12/03/2024.) No Motion for Summary Judgment has yet been filed and the deadlines for motions pursuant to Rule 56 are vacated pending the resolution of the Substitution Motion (Docket Entry 81), which this Order and Recommendation does not resolve. Thus, "the Court finds it is too early in the litigation to impose spoliation sanctions." *Henderson v. Fam. Dollar Stores of Georgia*, No. 1:22-CV-2424-SCJ, 2023 WL 3627881, at *2 (N.D. Ga. Feb. 14, 2023) (unpublished). Assuming that Defendant can meet its burden in establishing that spoliation occurred, it is still too early to determine whether the relevant factors discussed above weigh in favor of a spoliation sanction. *See id.* "At this stage, a determination of prejudice and whether the prejudice could be cured is purely speculative." *Id.*

Furthermore, the parties attempt to use their briefing on the sanction issue as a forum to argue the fundamental legal issue in this action. (*Compare* Docket Entry 87 at 6 ("Whether Ms. Taylor's fire extinguishers were defective or manifested a defect is not an issue in this case.")

30

*with* Docket Entry 88 at 2, 8 ("[This] case [is] about whether [the] product is defective."). A motion for sanctions is an improper vehicle for the parties to attempt to litigate the underlying merits of a pending action. *Perez v. Great Wolf Lodge of the Poconos*, No. 3:12-CV-1322, 2015 WL 4066633, at *7 (M.D. Pa. June 15, 2015), *report and recommendation adopted as modified sub nom. Perez v. Great Wolf Lodge of the Poconos, LLC*, No. 3:12·CV·1322, 2015 WL 4066889 (M.D. Pa. July 2, 2015) (unpublished) ("[I]t would be inappropriate to litigate the entire merits of this case in the context of this sanctions motion."); *Cont'l Recs., LLC v. Royalty Fam., Inc.*, No. CV2305797PABFMX, 2023 WL 9319230, at *3 (C.D. Cal. Dec. 13, 2023) (unpublished) ("Determining [the issues raised in a motion for sanctions] would be inappropriate at this stage of the litigation because it would require that the Court adjudicate the merits of the action without the benefit of an evidentiary record.") (citations omitted).

Substantive legal arguments about the issues at the heart of the action should be relegated to the briefing regarding the upcoming dispositive motion (*see* Docket Entry 80 (Defendant's notice of its intention to file a Motion for Summary Judgment)). *Energy Monster v. Monster Energy Co.*, No. EDCV202528JGBSPX, 2021 WL 3598862, at *7 (C.D. Cal. Apr. 23, 2021) (unpublished) (denying motion for sanctions that attempts to "dispose of" certain claims in lieu of filing motion for summary judgment; *Allscripts Healthcare, LLC v. DR/Decision Res., LLC*, 495 F. Supp. 3d 47, 51-52 (D. Mass. 2020) ("[A sanctions] motion is not a proper substitute for a dispositive motion … the better course is to adjudicate the merits of a party's claims through summary judgment and address the issue of … sanctions at the end of the litigation."). Lastly, the Court notes that, given the incomplete record, Defendant's arguments amount to no

more than suspicions of fault, abuse of the judicial process, and prejudice by Taylor, which suggests that deferral is appropriate. *See Almarri*, 2008 WL 4449858 at *3.

Accordingly, instead of expending resources on Defendant's motion at this time when they could be used elsewhere, the Court denies the motion without prejudice. *Groves*, 2024 WL 4871368 at *7. The Court will defer the issue until the close of all discovery and the resolution of a forthcoming summary judgment motion, if one is indeed filed. *See id.* ("the parties, the Court, and other litigants seeking access to the Court's resources will benefit by holding the issue in abeyance until it needs to be decided. … [The motion for sanctions] is denied without prejudice. The Court will take up the issue at the appropriate time, if it ever even needs to address it. [Defendant] should [seriously consider] resolving this action without further court intervention. If [the parties] need help in this regard, [the Court] can assist with a settlement conference.").[19]

## III.   CONCLUSION

**IT IS THEREFORE RECOMMENDED** that this Court **DEFER** ruling on the Motion to Substitute Party (Docket Entry 78) and that this action be **STAYED**, for a maximum of sixty (60) days from the issuance of this order, to permit Ms. Newlands to pursue appointment as her late husband's personal representative in Florida probate court, should she desire to do so. Given the age of this action, the Court expects that Counsel for Ms. Newlands will move expeditiously in assisting her in any such pursuit. Should said request be granted, Counsel for Ms.

---

[19] *See also In re Hewlett-Packard Co.*, 50 F.3d 20 (Fed. Cir. 1995) ("prompt consideration of the motion for sanctions was inappropriate because '[e]valuating [the] ground … for the sanction request would necessarily involve the court in litigating the merits of the complaint, the very dispute that a settlement would eliminate as between the remaining parties. In view of the general desirability of settlement, the court declines to force the parties to litigate the merits of the complaint in the context of [a] party's sanction request because doing so may jeopardize voluntary resolution.").

Case 1:21-cv-00839-WO-JLW   Document 90   Filed 05/28/25   Page 32 of 34

Newlands is **DIRECTED** to file proof of such appointment with this Court. Should said request be denied, Counsel for Ms. Newlands is **DIRECTED** to file proof of such denial with this Court.

**IT IS FURTHER RECOMMENDED** that the Motion to Substitute Party (Docket Entry 78) be **GRANTED** without further notice upon filing of proof of such appointment with this Court. Alternatively, **IT IS FURTHER RECOMMENDED** that the Motion to Substitute Party (Docket Entry 78) be **DENIED** without further notice upon filing of proof of such denial with this Court.

Absent prompt filing of either such proof, **IT IS FURTHER RECOMMENDED** that Ms. Newlands **SHALL** file, within sixty (60) days of the issuance of this Order, either a (1) Notice providing a status report and indicating the progress and expected outcome of the probate proceedings or (2) Notice that she does not intend to institute or pursue such proceedings.

Should a Notice be received that Plaintiff does not intend to institute or pursue such proceedings, the undersigned **FURTHER RECOMMENDS** that the Motion to Substitute Party (Docket Entry 78) be **DENIED** without further notice and that Mr. Newlands' claims against Defendant should be **DISMISSED with prejudice**.

Should no proof of appointment, proof of denial, or any such Notice be filed within the sixty-day deadline, the undersigned **FURTHER RECOMMENDS** that the Motion to Substitute Party (Docket Entry 78) be **DENIED** without further notice and that Mr. Newlands' claims against Defendant should be **DISMISSED with prejudice**.

**IT IS HEREBY ORDERED** that Defendant's Motion for Sanctions (Docket Entry 83) is **DENIED without prejudice** to future refiling, if at all, simultaneously with a motion for summary judgment, if any. The Court will rule on any Motion for Sanctions at the appropriate time.

33

The parties are **reminded** that the February 5, 2025, Order by this Court (Docket Entry 81) will take effect as stated therein upon the Motion to Substitute Party (Docket Entry 78) being granted or denied.


                                        /s/  Joe L. Webster
                                    United States Magistrate Judge


May 28, 2025
Durham, North Carolina